# Exhibit 3

============
MDL No. 18-0358
============

IN RE TEXAS OPIOID LITIGATION

=================================================
ON REVIEW BY THE MULTIDISTRICT LITIGATION PANEL
=================================================

**OPINION**

Justice Harvey Brown delivered the unanimous opinion of the MDL panel.

This motion to transfer arises out of eighteen Texas counties' separate lawsuits claiming they were each damaged by the improper marketing and distribution of prescription opioid medications. These lawsuits are similar to more than 150 lawsuits around the nation brought by cities, counties, and states against these manufacturers and distributors. We do not write on a clean slate; the Federal Judicial Panel on Multidistrict Litigation has already granted a similar motion, as have courts in New York, Connecticut, Pennsylvania, and Illinois.

Similar to the claims in the other courts, the counties generally allege that the manufacturers "overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed (directly and through key opinion leaders) these drugs to physicians" and that the distributors "failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates."[1]

---

[1] *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (U.S. J.P.M.L. 2017).

1

All the counties have asserted four causes of action: public nuisance, negligence, fraud, and unjust enrichment. Bexar County has also brought claims for violations of the Deceptive Trade Practices-Consumer Protection Act (DTPA), violations of the Texas Controlled Substances Act (TCSA), and civil conspiracy. The claimed damages include (1) money wrongfully paid for opioids; (2) costs for providing medical care, prescription drug purchases, and various treatments and programs for individuals suffering from opioid-related addiction or disease, including overdose and death; (3) costs for providing treatment, counseling, housing, and rehabilitation services; (4) costs for providing treatment of infants with opioid related medical conditions; and (5) costs associated with criminal justice, law enforcement, and public safety relating to or resulting from the opioid epidemic.

Thirteen companies involved in the manufacturing of pharmaceutical products containing opioids ask us to transfer sixteen cases pending against them as well as any future-filed tag-along cases.[2] Four distributors of these products have

---

[2] The Manufacturer Defendants include Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company, Inc.; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Knoll Pharmaceutical Company, a wholly-owned subsidiary of AbbVie Inc.; AbbVie Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; TEV Pharmaceuticals USA, Inc.; Insys Therapeutics, Inc.; and Insys Manufacturing, LLC (collectively, "Manufacturer Defendants").

filed a separate motion joining in that request.³ The Manufacturer Defendants and Distributor Defendants contend that we should transfer the cases to a single pretrial court under Rule 13 because (1) all of the cases involve "one or more common questions of fact," and (2) the "transfer would be for the convenience of the parties and witnesses" and "would promote the just and efficient conduct of the cases."⁴

Six of the counties concede that the cases "may meet the criteria for designating an MDL pretrial court."⁵ Only one county, Bexar County opposes the motions. Bexar County argues that the cases are not related. Alternatively, Bexar County asks that we appoint a three-judge panel to handle the cases statewide, with each region handling unique issues for its region.⁶

---

³   The Distributor Defendants include McKesson Corporation; AmerisourceBergen Corporation; AmerisourceBergen Drug Corporation; and Cardinal Health, Inc. (collectively "Distributor Defendants").

⁴   TEX. R. JUD. ADMIN. 13; *see* TEX. GOV'T CODE § 74.162.

⁵   Dallas, Delta, Falls, Hopkins, Travis, and Van Zandt counties.

⁶   Bexar County's lawsuit was not filed until after the Manufacturer Defendants filed their motion and therefore is not named in that motion. But Bexar County has filed an opposition to the motion, perhaps in recognition that the arguments here may well, as a practical matter, determine whether it would be subject to inclusion in the MDL as a tag-along defendant. The Distributor Defendants' motion also does not name the Bexar County lawsuit, but its response to Bexar County's motion argues that Bexar County should be included in the MDL. For judicial economy and to ensure that we consider all the arguments in opposition to an MDL, we are addressing Bexar County's objections as part of this MDL request.

We conclude that these sixteen lawsuits are related and that transfer would result in more efficient pre-trial of the related cases, and we therefore grant the motion to transfer.

## First Prong: Relatedness

Texas Rule of Judicial Administration 13 authorizes the MDL panel to transfer "related" cases to a single pretrial judge if "transfer would be for the convenience of the parties and witnesses and would promote the just and efficient conduct of the cases."[7] The threshold question under Rule 13.3 is whether the cases are "related."[8] The relatedness inquiry examines whether the cases involve "one or more common questions of fact."[9] It does not require proof that the common issues predominate.[10] "While the number of common fact questions necessary to cause cases to be related is not capable of a bright-line rule, cases involving complicated, numerous, or significant common fact questions are more likely to be considered related."[11]

---

[7] TEX. R. JUD. ADMIN. 13.3(a)(2).

[8] TEX. R. JUD. ADMIN. 13.3; *In re Deepwater Horizon Incident Litig.*, 387 S.W.3d 127, 128 (Tex. M.D.L. Panel 2011) ("Relatedness is a threshold question.").

[9] *See* TEX. R. JUD. ADMIN. 13.2(f); TEX. GOV'T CODE § 74.162.

[10] *In re Volkswagen Clean Diesel Litig.*, 516 S.W.3d 704, 708 (Tex. M.D.L. 2016); *In re State Farm Lloyds Hidalgo Cty. Hail Storm Litig.*, 434 S.W.3d 350, 353 (Tex. M.D.L. 2014).

[11] *In re State Farm Lloyds Hidalgo Cty. Hail Storm Litig.*, 434 S.W.3d at 353.

These cases involve a common nucleus of facts. The defendants contend, and none of the counties disagree, that the counties' allegations

> all implicate complicated factual issues, including the FDA's regulatory approval and oversight of prescription opioids, Defendants' promotional activities, Plaintiffs' ability to identify allegedly improper opioid prescriptions and the doctors that purportedly prescribed them, and the abuse and diversion of prescription opioids and impact of other illegal drugs such as heroin and illicit fentanyl on Plaintiffs' communities.[12]

Bexar County concedes that "there are commonalities that relate to the ultimate issue of liability" and that there may be "similar discovery on some issues," but nevertheless contends that "what separates the cases is far more notable. For instance, Plaintiff alleges that Defendants' promotional activities were tailored to specific markets" and that Bexar County's experience was unique because Defendants attempted to "exploit active and retired military personnel."

---

[12]  Similarly, the federal MDL stated that its cases all include the following common factual questions:

> the manufacturing and distributor defendants' knowledge of and conduct regarding the alleged diversion of these prescription opiates, as well as the manufacturers' alleged improper marketing of such drugs. Both manufacturers and distributors are under an obligation under the Controlled Substances Act and similar state laws to prevent diversion of opiates and other controlled substances into illicit channels. Plaintiffs assert that defendants have failed to adhere to those standards, which caused the diversion of opiates into their communities. Plaintiffs variously bring claims for violation of RICO statutes, consumer protection laws, state analogues to the Controlled Substances Act, as well as common law claims such as public nuisance, negligence, negligent misrepresentation, fraud and unjust enrichment.

*In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d at 1378.

But cases do not have to be identical to be part of an MDL. Indeed, no two cases—let alone sixteen cases—are ever identical.[13] Rule 13 does not require that the cases be identical or even that common issues predominate.[14] Thus, cases may be related for purposes of Rule 13 even though they involve "different causation and damages facts" or "different defendants."[15] Here, there is much overlap of the defendants and products because all the lawsuits make allegations regarding seven of the same prescription opioids and name seven of the same defendants.

Bexar County points out that its claims involve some different defendants and include some causes of action not asserted in the other fifteen lawsuits. But, while these are factors in evaluating whether cases are related, they are not dispositive on the issue.[16] Nor does the existence of plaintiff-specific damages suggest that the

---

[13] *In re Hurricane Rita Evacuation Bus Fire*, 216 S.W.3d 70, 72 (Tex. M.D.L. 2006).

[14] *In re Volkswagen Clean Diesel Litig.*, 516 S.W.3d at 708; *In re Hurricane Rita Evacuation Bus Fire*, 216 S.W.3d at 72.

[15] *In re Tex. Windstorm Ins. Ass'n Hurricanes Rita & Humberto Litig.*, 339 S.W.3d 401, 403 (Tex. M.D.L. 2009).

[16] *See, e.g.*, *In re Delta Lloyds Ins. Co. of Hous.*, 339 S.W.3d 384, 386 (Tex. M.D.L 2008) ("While the rule requires common questions of fact, strict identity of issues and parties . . . is not required . . . ."); *In re Hurricane Rita Evacuation Bus Fire*, 216 S.W.3d at 72 (recognizing "that not every defendant before us has been sued in every case" but granting transfer).

cases are not related; different plaintiffs frequently suffer different damages in MDL cases.[17]

Moreover, a pretrial court "is not required to treat different cases the same. On the contrary, the pretrial court should 'give individual consideration to the case-specific issues, while giving consistent, uniform treatment to the common and recurring issues.'"[18] Thus, the pretrial court has ample authority to distinguish common issues from unique issues in these cases.

## Second Prong: Efficiency

We next consider whether transfer to a single pretrial judge would "serve the convenience of the parties and witnesses" and "promote the just and efficient conduct of the litigation."[19] Rule 13 aims to further the goals of convenience, efficiency, and justice by (1) eliminating duplicative and repetitive discovery, (2) minimizing conflicting demands on witnesses, (3) preventing inconsistent

---

[17] *In re Cano Petroleum, Inc.*, 283 S.W.3d 179, 181 (Tex. M.D.L. 2008) (observing that each individual plaintiff will suffer individual damages but transferring cases because cases are related); *see In re Tex. Windstorm Ins. Ass'n Hurricanes Rita & Humberto Litig.*, 339 S.W.3d at 403 (noting that "each of these . . . cases will involve different . . . damages facts," but granting transfer).

[18] *In re Volkswagen Clean Diesel Litig.*, 516 S.W.3d at 709 (quoting *In re Ford Motor Co. Speed Control Deactivation Switch Litig.*, 285 S.W.3d 185, 190 (Tex. M.D.L. 2008); *see In re State Farm Lloyds Hurricane Ike Litig.*, 392 S.W.3d 353, 358–59 (Tex. M.D.L. 2012) (noting that pretrial judge will address common issues but "will also give individual attention to the unique issues and contentions in other cases.").

[19] *In re State Farm Lloyds Hurricane Litig.*, 387 S.W.3d 130, 133 (Tex. M.D.L. 2012) (quoting *In re Ad Valorem Tax Litig.*, 216 S.W.3d 83, 84 (Tex. M.D.L. 2006)).

7

decisions on common issues, (4) reducing unnecessary travel, and (5) creating judicial efficiency through the use of a single judge.[20] We conclude that these goals are readily satisfied by transfer of the lawsuits to an MDL judge.

The discovery in these cases will be complex, voluminous, and will overlap. A single pretrial judge will be able to manage the case to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary. The use of a single pretrial judge will also make it easier to coordinate with the federal MDL and other state MDLs, if necessary. We are confident the MDL judge can and will take any differences between the cases into account.

## Conclusion

We agree with the Federal Judicial Panel on Multidistrict Litigation that all of these lawsuits, like those in the federal courts, "implicate common fact questions as to the allegedly improper marketing and . . . diversion of prescription opiates into . . . counties . . . across [Texas]."[21] We conclude that the defendants have shown that the cases listed in their motion are "related" within the meaning of Rule 13 and that transferring them to one pretrial court would serve the convenience of the parties

---

[20] *See In re State Farm Lloyds Hurricane Ike Litig.*, 392 S.W.3d at 355–56; *In re Digitek® Litig.*, 387 S.W.3d 115, 116–17 (Tex. M.D.L. 2009).

[21] *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d at 1378–79.

and witnesses and the efficient conduct of the litigation. Accordingly, we grant the defendant's motion to transfer.

Several parties have suggested either specific judges or counties for consideration as the pretrial court. We have repeatedly stated that we disfavor such requests unless they are made jointly by all the parties.[22] The Counties are represented by at least fifteen law firms and government attorneys across the state,[23] while the defendants are represented by at least fourteen law firms across the country.[24] Given this geographic dispersion, we will by a separate order appoint a

---

[22]  *See, e.g., In re Digitek® Litig.*, 387 S.W.3d at 118 ("[W]e consider it improper for a motion to seek transfer to a certain court or county, as this motion and several others have done. . . . Such express requests are improper because Rule 13 is not meant to be a venue-changing or judge-selecting procedure."); *In re Petroleum Wholesale Litig.*, 339 S.W.3d 405, 409 (Tex. M.D.L. 2009) ("In this case, as in many of the motions to transfer recently filed, the movants have suggested transfer to a particular county and even a particular judge. We disfavor this practice. Consolidation of cases into a pre-trial court is not intended to facilitate forum shopping, nor the appearance of forum shopping."); *In re Alcon S'holder Litig.*, 387 S.W.3d 121, 125 (Tex. M.D.L. 2010) ("Even assuming that Novartis's motivation for suggesting a specific judge is pure, we nevertheless decline to grant the request. We have stated before that we disfavor movants recommending that we transfer to a particular county or judge.").

[23]  Their offices are in Cameron, Canton, Cooper, Dallas, Houston, Marlin, San Antonio, and Tyler.

[24]  The majority of the defense counsel have offices located in Houston, but they are also located in Austin, Dallas, Longview, Marshall, and Sulphur Springs, as well as Atlanta, Chicago, Cleveland, Los Angeles, Miami, Philadelphia, and Washington D.C.

pretrial judge from a major, centrally located Texas city that is easily accessible to the parties and the attorneys.

JUSTICE LANG-MIERS, JUSTICE PURYEAR, JUSTICE BUSBY AND JUDGE MOORE CONCUR.

_____

Harvey Brown, Justice

**OPINION DELIVERED**:  June 13, 2018