# Exhibit 5

3/29/2019 11:47 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 32351212
By: KATINA WILLIAMS
Filed: 3/29/2019 11:47 AM

CAUSE NO. DC-18-00290

| | | |
|---|---|---|
| COUNTY OF DALLAS | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | 116TH JUDICIAL DISTRICT |
| *v.* | § | |
| | § | |
| PURDUE PHARMA LP, *et al.* | § | |
| | § | |
| *Defendants.* | § | DALLAS COUNTY, TEXAS |

MDL PRETRIAL CAUSE NO. 2018-77098

| | | |
|---|---|---|
| COUNTY OF DALLAS | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | 152ND JUDICIAL DISTRICT |
| *v.* | § | |
| | § | |
| PURDUE PHARMA LP, *et al.* | § | |
| | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

## **DISTRIBUTORS' FIRST AMENDED RULE 91A MOTION TO DISMISS**

Craig Smyser
Texas Bar No. 18777575
csmyser@skv.com
Tyler G. Doyle
Texas Bar No. 24072075
tydoyle@skv.com
David Isaak
Texas Bar No. 24012887
disaak@skv.com
Razvan Ungureanu
Texas Bar No. 24085630
razvan@skv.com
Kristin Adler
Texas Bar No. 793233
kadler@skv.com
Michelle S. Stratton
Texas Bar No. 24085606
mstratton@skv.com
Crystal Robles
Texas Bar No. 24083754
crobles@skv.com
SMYSER KAPLAN & VESELKA L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
Phone:  713-221-2300
Fax:  713-221-2320

*Of Counsel*:

Mark H. Lynch
Christian J. Pistilli
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC  20001
Phone:  202-662-5342

Sonya D. Winner
Cortlin H. Lannin
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Phone:  415-591-6000

*Counsel for Defendant*
*McKesson Corporation*

Stan Perry
Texas Bar No. 15799920
sperry@reedsmith.com
Michael H. Bernick
Texas Bar No. 24078227
mbernick@reedsmith.com
Rachel A. Buchhorn
Texas Bar No. 24105552
rbuchhorn@reedsmith.com
REED SMITH LLP
811 Main Street, Suite 1700
Houston, Texas 77002-6110
Phone:  713-469-3800
Fax: 713-469-3899

*Counsel for Defendant
AmerisourceBergen Drug Corporation*

Michael W. Mengis, *attorney-in-charge*
Texas Bar No. 13941040
mmengis@bakerlaw.com
Matt R. Raley
Texas Bar No. 24051224
mraley@bakerlaw.com
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, Texas  77002
Phone:  713-751-1600
Fax:     713-751-1717

*Of Counsel*:

Enu Mainigi
emainigi@wc.com
F. Lane Heard
lheard@wc.com
Steven M. Pyser
spyser@wc.com
Ashley W. Hardin
ahardin@wc.com
WILLIAMS & CONNELLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Phone:  202-434-5000
Fax:     202-434-5029

*Counsel for Defendants Cardinal Health, Inc.
and Cardinal Health 110, LLC*

842113.1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ..................................................................................................... 1

REGULATORY BACKGROUND ............................................................................ 3

SUMMARY OF ARGUMENT ................................................................................. 5

STANDARD OF REVIEW ....................................................................................... 8

ARGUMENT .......................................................................................................... 9

I.       THE COUNTY'S CLAIMS FAIL FOR SEVERAL THRESHOLD
         REASONS. ................................................................................................... 9

         A.      The County Lacks Standing To Pursue Its Claims. ........................... 9

                 1.      The County fails to allege traceability. ................................... 10

                 2.      The County cannot recover for derivative harm. ..................... 13

         B.      The Municipal Cost Recovery Rule Bars the County from
                 Recovering Its Alleged Damages. ................................................... 15

                 1.      Absent legislative authority, courts lack the power to shift
                         the costs of local government expenditures from taxpayers
                         to tortfeasors. ....................................................................... 15

                 2.      The Texas Legislature has not authorized the County to
                         recover the expenditures it allegedly has incurred to
                         respond to opioid abuse. ....................................................... 17

         C.      The Texas Products Liability Act Bars the County's Claims
                 Against Distributors. ..................................................................... 18

                 1.      The County's lawsuit is a products liability action. ................ 19

                 2.      Distributors do not manufacture opioids, and none of the
                         TPLA exceptions apply. ......................................................... 21

         D.      The Economic Loss Rule Bars the County's Claims. ........................ 24

         E.      The County Fails To Plead Proximate Causation. ........................... 24

II.    THE NUISANCE CLAIM HAS NO BASIS IN LAW OR FACT. .................................28

III.   THE TEXAS CONTROLLED SUBSTANCES ACT CLAIMS HAVE NO
       BASIS IN LAW OR FACT. ..........................................................................................31

       A.    The TCSA Does Not Authorize the County To Recover Civil
             Penalties or Damages. ...........................................................................32

       B.    The TCSA's "Valid Medical Purpose" Requirement Does Not
             Apply To Distributors. ...........................................................................33

       C.    The TCSA Does Not Require Distributors To Track Suspicious
             Opioid Prescriptions and Halt Supply. ....................................................35

IV.    THE NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS HAVE NO
       BASIS IN LAW OR FACT. ..........................................................................................36

       A.    The County Fails To State a Claim for Negligence. ...............................36

             1.    The County does not properly allege that Distributors owed
                   it a duty. .......................................................................................36

             2.    The County does not adequately allege breach of any duty. ..........39

       B.    The County Fails To State a Claim for Gross Negligence. .....................40

V.     THE FRAUD CLAIM HAS NO BASIS IN LAW OR FACT. .........................................40

VI.    THE UNJUST ENRICHMENT CLAIM HAS NO BASIS IN LAW OR
       FACT. ............................................................................................................................43

VII.   THE CIVIL CONSPIRACY CLAIM HAS NO BASIS IN LAW OR
       FACT. ............................................................................................................................46

CONCLUSION ...............................................................................................................................48

CERTIFICATE OF SERVICE .......................................................................................................51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrosio v. Carter's Shooting Ctr., Inc.*,
    20 S.W.3d 262 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ...................................27

*Anthony v. Slaid*,
    52 Mass. 290 (1846) ..........................................................................................................13

*Arguelles v. Kellogg Brown & Root, Inc.*,
    222 S.W.3d 714 (Tex. App.—Houston [14th Dist.] 2007, no pet.)........................................27

*Asshauer v. Wells Fargo Foothill*,
    263 S.W.3d 468 (Tex. App.—Dallas 2008, pet. denied).......................................................13

*Baker v. Smith & Wesson Corp.*,
    2002 WL 31741522 (Del. Super. Ct. Nov. 27, 2002)............................................15, 16, 17, 18

*In re Baker*,
    404 S.W.3d 575 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding)...........................14

*Bd. of Supervisors of Fairfax Cty. v. U.S. Home Corp.*,
    1989 WL 646518 (Va. Cir. Ct. Aug. 14, 1989) ....................................................................16

*Benavides v. Cushman, Inc.*,
    189 S.W.3d 875 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ..........................................19

*Blythe v. Bumbo Int'l Tr.*,
    2013 WL 6190284 (S.D. Tex. Nov. 26, 2013), *aff'd*, 634 F. App'x 944 (5th
    Cir. 2015) ..........................................................................................................................22

*BMG Direct Mktg., Inc. v. Peake*,
    178 S.W.3d 763 (Tex. 2005).................................................................................................44

*Boggs v. Bottomless Pit Cooking Team*,
    25 S.W.3d 818 (Tex. App.—Houston [14th Dist.] 2000, no pet.)..........................................11

*Bolton v. Fisher*,
    528 S.W.3d 770 (Tex. App.—Texarkana 2017, pet. denied) .................................................28

*Brown v. De La Cruz*,
    156 S.W.3d 560 (Tex. 2004)................................................................................................33

*Cadle Co. v. Davis*,
    2010 WL 5545389 (Tex. App.—San Antonio, Dec. 29, 2010, pet. denied) ..........................42

*Canyon County v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) ................................................................16

*Carey v. Pure Distrib. Corp.*,
    124 S.W.2d 847 (Tex. 1939)................................................................25

*Caterpillar, Inc. v. Shears*,
    911 S.W.2d 379 (Tex. 1995)................................................................19

*Champaign County v. Anthony*,
    337 N.E.2d 87 (Ill. App. Ct. 1975) ......................................................16

*Chico Auto Parts & Serv. v. Crockett*,
    512 S.W.3d 560 (Tex. App.—El Paso 2017, pet. denied) ....................42

*City of Bridgeton v. B.P. Oil, Inc.*,
    369 A.2d 49 (N.J. Sup. Ct. 1976)........................................................16

*City of Chicago v. Beretta U.S.A., Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ..............................................17, 24, 30

*City of Dallas v. Sanchez*,
    494 S.W.3d 722 (Tex. 2016)............................................................9, 25

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*,
    719 F.2d 322 (9th Cir. 1983) (Kennedy, J.)........................................16

*City of Ingleside v. City of Corpus Christi*,
    469 S.W.3d 589 (Tex. 2015)................................................................18

*City of Laredo v. Webb County*,
    220 S.W.3d 571 (Tex. App.—Austin 2007, no pet.) ...........................17

*City of New Haven v. Purdue Pharma, L.P.*,
    2019 WL 423990 (Conn. Super. Ct. Jan. 8, 2019)..........................12, 14

*City of Pittsburgh v. Equitable Gas Co.*,
    512 A.2d 83 (Pa. Commw. Ct. 1986) ..................................................16

*City of San Antonio v. City of Boerne*,
    111 S.W.3d 22 (Tex. 2003)..................................................................17

*City of Uvalde v. Crow*,
    713 S.W.2d 154 (Tex. App.—Texarkana 1986, writ denied)...............29

*City of Waco v. Kirwan*,
    298 S.W.3d 618 (Tex. 2009)................................................................40

842113.1

*County of Erie v. Colgan Air, Inc.*,
    711 F.3d 147 (2d Cir. 2013)........................................................16

*County of San Luis Obispo v. Abalone All.*,
    223 Cal. Rptr. 846 (Cal. Ct. App. 1986) ......................................16

*Crosstex N. Tex. Pipeline, L.P. v. Gardiner*,
    505 S.W.3d 580 (Tex. 2016)........................................................28

*DeVoll v. Demonbreun*,
    2014 WL 7440314 (Tex. App.—San Antonio, Dec. 31, 2014, no pet.) ............................40, 42

*District of Columbia v. Air Fla., Inc.*,
    750 F.2d 1077 (D.C. Cir. 1984)................................................15, 16

*District of Columbia v. Beretta, U.S.A., Corp.*,
    872 A.2d 633 (D.C. 2005) (en banc) ............................................29

*E. States Health & Welfare Fund v. Philip Morris, Inc.*,
    188 Misc. 2d 638 (N.Y. Sup. Ct. 2000) ........................................13

*Eckhardt v. Qualitest Pharms., Inc.*,
    751 F.3d 674, 678 (5th Cir. 2014). ..............................................20

*Eckhardt v. Qualitest Pharms., Inc.*,
    889 F. Supp. 2d 901 (S.D. Tex. 2012) ..........................................20

*ERI Consulting Eng'rs, Inc. v. Swinnea*,
    318 S.W.3d 867 (Tex. 2010)........................................................47

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
    51 S.W.3d 573 (Tex. 2001)..........................................................43

*Alonso ex rel. Estate of Cagle v. Maytag Corp.*,
    356 F. Supp. 2d 757 (S.D. Tex. 2005) ..........................................21

*Express One Int'l, Inc. v. Steinbeck*,
    53 S.W.3d 895 (Tex. App.—Dallas 2001, no pet.)..........................24

*Firestone Steel Prods. Co. v. Barajas*,
    927 S.W.2d 608 (Tex. 1996)........................................................46

*Foister v. Purdue Pharma, L.P.*,
    295 F. Supp. 2d 693 (E.D. Ky. 2003) ..........................................27

*Ganim v. Smith & Wesson Corp.*,
    1999 WL 1241909 (Conn. Super. Ct. Dec. 10, 1999), *aff'd*, 780 A.2d 98
    (Conn. 2001) ..............................................................................16

v

*Garcia v. Nissan Motor Co.*,
    2006 WL 869944 (S.D. Tex. Mar. 30, 2006)...................................................................22, 24

*Gill v. Michelin N. Am., Inc.*,
    3 F. Supp. 3d 579 (W.D. Tex. 2013).........................................................................19

*GoDaddy.com, LLC v. Toups*,
    429 S.W.3d 752 (Tex. App.—Beaumont 2014, pet. denied)............................................39, 43

*Goldsmith & Powell v. State*,
    159 S.W.2d 534 (Tex. Civ. App.—Dallas 1942, writ ref'd)..................................................29

*Gonzalez v. Estes, Inc.*,
    2010 WL 610778 (W.D. Tex. Feb. 19, 2010).....................................................................23

*Greater Houston Transp. Co. v. Phillips*,
    801 S.W.2d 523 (Tex. 1990)................................................................................36, 37, 39

*Hanold v. Raytheon Co.*,
    662 F. Supp. 2d 793 (S.D. Tex. 2009) ...............................................................................46

*Heckman v. Williamson County*,
    369 S.W.3d 137 (Tex. 2012)..............................................................................................10

*Heldenfels Bros. v. City of Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992)..........................................................................................44, 45

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)............................................................................................................14

*Holubec v. Brandenberger*,
    111 S.W.3d 32 (Tex. 2003).................................................................................................28

*IHS Cedars Treatment Ctr. v. Mason*,
    143 S.W.3d 794 (Tex. 2004)...............................................................................................27

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*,
    196 F.3d 818 (7th Cir. 1999) .............................................................................................13

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
    341 S.W.3d 323 (Tex. 2011)...............................................................................................42

*State ex rel. Jennings v. Purdue Pharma L.P.*,
    2019 WL 446382 (Del. Super. Ct. Feb. 4, 2019)..........................................................30, 31

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
    546 S.W.3d 648 (Tex. 2018).........................................................................................40, 43

*Juhl v. Airington*,
  936 S.W.2d 640 (Tex. 1996)....................................................................................47

*Kadi v. Henry Schein, Inc.*,
  2014 WL 1118139 (E.D. Tex. Mar. 19, 2014) ......................................................37

*Kaminer v. Eckerd Corp. of Fla., Inc.*,
  966 So. 2d 452 (Fla. App. 2007)............................................................................27

*Koch v. Consolidated Edison Co.*,
  468 N.E.2d 1 (N.Y. 1984)......................................................................................16

*Kodiak Island Borough v. Exxon Corp.*,
  991 P.2d 757 (Alaska 1999)...................................................................................17

*Kroger Co. v. Elwood*,
  197 S.W.3d 793 (Tex. 2006)..................................................................................36

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
  191 F.3d 229 (2d Cir. 1999)...................................................................................13

*LAN/STV v. Martin K. Eby Constr. Co.*,
  435 S.W.3d 234 (Tex. 2014)..................................................................................24

*In re Lead Paint Litig.*,
  924 A.2d 484 (N.J. 2007).......................................................................................29

*Lear Siegler, Inc. v. Perez*,
  819 S.W.2d 470 (Tex. 1991)..................................................................................25

*Leitch v. Hornsby*,
  935 S.W.2d 114 (Tex. 1996)..................................................................................25

*Loram Maint. of Way, Inc. v. Ianni*,
  210 S.W.3d 593 (Tex. 2006)..................................................................................38

*In re Media Arts Grp., Inc.*,
  116 S.W.3d 900 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).........42

*Meritor Auto., Inc. v. Ruan Leasing Co.*,
  44 S.W.3d 86 (Tex. 2001)......................................................................................18

*Meyers v. JDC/Firethorne, Ltd.*,
  548 S.W.3d 477 (Tex. 2018)..........................................................................9, 10, 13

*Mix v. Target Corp.*,
  759 F. Supp. 2d 876 (W.D. Tex. 2010)..............................................................22, 23

842113.1

*Morgan v. Wal-Mart Stores, Inc.*,
   30 S.W.3d 455 (Tex. App.—Austin 2000, pet. denied)..........................................................26

*Neeley v. Tex. State Teachers Ass'n*,
   2007 WL 2325930 (Tex. App.—Corpus Christi Aug. 16, 2007, no pet.) ..............................10

*In re Occidental Chem. Corp.*,
   561 S.W.3d 146 (Tex. 2018)..................................................................................................17

*Ort v. Bowden*,
   148 S.W. 1145 (Tex. Civ. App.—Galveston 1912, no writ) ..................................................30

*Ortega v. Phan-Tran Prop. Mgmt., LLC*,
   2016 WL 3221423 (Tex. App.—Houston [1st Dist.] June 9, 2016, pet. denied) ...................31

*Orzel v. Scott Drug Co.*,
   537 N.W.2d 208 (Mich. 1995)..............................................................................................27

*Penelas v. Arms Tech., Inc.*,
   1999 WL 1204353 (Fla. Cir. Ct. 1999)..................................................................................17

*Petroleum Sols., Inc. v. Head*,
   454 S.W.3d 482 (Tex. 2014)..................................................................................................18

*Phares v. Actavis-Elizabeth LLC*,
   892 F. Supp. 2d 835 (S.D. Tex. 2012) .............................................................................19, 20

*Praesel v. Johnson*,
   967 S.W. 391 (Tex. 1998)......................................................................................................38

*Price v. Purdue Pharma Co.*,
   920 So. 2d 479 (Miss. 2006) (en banc)..................................................................................27

*Prudential Ins. Co. of Am. v. Jefferson Assocs.*,
   896 S.W.2d 156 (Tex. 1995)..................................................................................................41

*R.M. Dudley Constr. Co. v. Dawson*,
   258 S.W.3d 694 (Tex. App.—Waco 2008, pet. denied)........................................................44

*Ray v. FCA US LLC*,
   2017 WL 3033425 (S.D. Tex. July 18, 2017)........................................................................22

*Romero v. Wyeth Pharm., Inc.*,
   2012 WL 12547449 (E.D. Tex. Aug. 31, 2012) ....................................................................21

*Saks v. Sawtelle, Goode, Davidson & Troilo*,
   880 S.W.2d 466 (Tex. App.—San Antonio 1994, writ denied)..............................................27

842113.1

*Sanchez v. Liggett & Myers, Inc.*,
   187 F.3d 486 (5th Cir. 1999) .................................................................20

*Schmidt v. Centex Beverage, Inc.*,
   825 S.W.2d 791 (Tex. App.—Austin 1992, no writ) ........................................38, 39

*Snellenberger v. Rodriguez*,
   760 S.W.2d 237 (Tex. 1988) .................................................................25

*Stallworth v. Ayers*,
   510 S.W.3d 187 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ...........................8

*State Highway & Pub. Works Comm'n v. Cobb*,
   2 S.E.2d 565 (N.C. 1939) ...................................................................17

*State of Veracruz v. BP, P.L.C. (In re Deepwater Horizon)*,
   784 F.3d 1019 (5th Cir. 2015) ..............................................................24

*State v. Am. Tobacco Co.*,
   14 F. Supp. 2d 956 (E.D. Tex. 1997) ........................................................44

*State v. Black Hills Power, Inc.*,
   354 P.3d 83 (Wyo. 2015) ....................................................................15

*State v. Lead Indus. Ass'n, Inc.*,
   951 A.2d 428 (R.I. 2008) ...................................................................30

*Stoughton v. City of Fort Worth*,
   277 S.W.2d 150 (Tex. Civ. App—Fort Worth 1955, no writ) ...............................29

*Swim v. Bank of Am., N.A.*,
   2012 WL 170758 (N.D. Tex. Jan. 20, 2012) .................................................40

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
   852 S.W.2d 440 (Tex. 1993) ..................................................................9

*Tex. Dep't of Family & Protective Servs. v. Grassroots Leadership, Inc.*,
   2018 WL 6187433 (Tex. App.—Austin Nov. 28, 2018, no pet.) ...........................10

*Tex. Home Mgmt., Inc. v. Peavy*,
   89 S.W.3d 30 (Tex. 2002) ...................................................................38

*Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*,
   21 F. Supp. 2d 664 (E.D. Tex. 1998), *aff'd* 199 F.3d 788 (5th Cir. 2000) .........14, 44, 45

*Tilton v. Marshall*,
   925 S.W.2d 672 (Tex. 1996) .................................................................46

ix

*Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*,
    984 F.2d 915 (8th Cir. 1993) ................................................................30

*Town of Dish v. Atmos Energy Corp.*,
    519 S.W.3d 605 (Tex. 2017)................................................................28

*Town of Freetown v. New Bedford Wholesale Tire, Inc.*,
    423 N.E.2d 997 (Mass. 1981) ............................................................16

*Tri v. J.T.T.*,
    162 S.W.3d 552 (Tex. 2005)................................................................46

*Trice v. State*,
    712 S.W.2d 842 (Tex. App.—Waco 1986, writ ref'd n.r.e.) ...............29

*Triplex Commc'ns, Inc. v. Riley*,
    900 S.W.2d 716 (Tex. 1995)................................................................47

*Tuma v. Kerr County*,
    336 S.W.3d 277 (Tex. App.—San Antonio 2010, no pet.)...................16

*United Food & Commercial Workers Unions, Emp'rs Health & Welfare Fund v.*
    *Philip Morris*,
    Inc., 223 F.3d 1271 (11th Cir. 2000) ..................................................13

*United States v. Standard Oil Co.*,
    332 U.S. 301 (1947)............................................................................16

*Va. Oak Venture, LLC v. Fought*,
    448 S.W.3d 179 (Tex. App.—Texarkana 2014, no pet.) ......................43

*Vasquez v. Legend Nat. Gas, LP*,
    492 S.W.3d 448 (Tex. App.—San Antonio 2016, pet. denied) .............39

*vRide, Inc. v. Ford Motor Co.*,
    2017 WL 462348 (Tex. App.—Dallas Feb. 2, 2017, no pet.) ...............19

*Walker Cty. v. Tri-State Crematory*,
    643 S.E.2d 324 (Ga. Ct. App. 2007)...................................................16

*Weizhong Zheng v. Vacation Network, Inc.*,
    468 S.W.3d 180 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ...............40

*Wooley v. Schaffer*,
    447 S.W.3d 71 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) .........9, 23, 43

**Statutes, Regulations, and Rules**

21 C.F.R. § 1301.74(b) .........................................................................5

21 C.F.R. § 1303.11 .................................................................................................................... 3

21 C.F.R. § 1303.21 .................................................................................................................... 3

21 C.F.R. § 1306.04(a) ................................................................................................................ 4

45 C.F.R § 164.502 ................................................................................................................... 35

21 U.S.C. § 355(a)–(d) ............................................................................................................... 3

21 U.S.C. § 822(a)(1) .................................................................................................................. 4

21 U.S.C. § 823(b) ...................................................................................................................... 5

21 U.S.C. § 826(a) ................................................................................................................... 2, 3

21 U.S.C. § 827(d)(1) .................................................................................................................. 5

21 U.S.C. § 829(a) ...................................................................................................................... 4

22 Tex. Admin. Code § 291.29(f) ............................................................................................... 4

Controlled Substances Quotas, 83 Fed. Reg. 32,784 (July 16, 2018) ......................................... 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 8, 9

Tex. Agric. Code § 71.047 ......................................................................................................... 18

Tex. Civ. Prac. & Rem. Code § 82.001(2) ................................................................................. 19

Tex. Civ. Prac. & Rem. Code § 82.001(3)–(4) .......................................................................... 21

Tex. Civ. Prac. & Rem. Code § 82.003(a) ............................................................................ 21, 22

Tex. Civ. Prac. & Rem. Code § 82.007 ..................................................................................... 21

Tex. Code of Crim. Proc. Art. 26.057 ........................................................................................ 18

Tex. Code of Crim. Proc. Art. 42.038 ........................................................................................ 18

Tex. Code of Crim. Proc. Art. 104.002 ...................................................................................... 18

Tex. Const. art I, § 13 ................................................................................................................. 9

Tex. Const. art. IX, § 1 ............................................................................................................. 17

Tex. Family Code § 51.10 .......................................................................................................... 18

Tex. Family Code § 65.061 ........................................................................................................ 18

Tex. Health & Safety Code § 81.210 .......................................................................17

Tex. Health & Safety Code § 481.002 ..............................................................32, 34

Tex. Health & Safety Code § 481.071 ..............................................................33, 34

Tex. Health & Safety Code § 481.076 ...................................................................35

Tex. Health & Safety Code § 481.128 ..............................................................32, 33

Tex. Health & Safety Code § 481.301 ...................................................................33

Tex. Health & Safety Code § 481.0766 ...............................................................2, 5

Tex. Health & Safety Code § 481.1191 ...................................................................32

Tex. Health & Safety Code § 571.018 ...................................................................17

Tex. Health & Safety Code § 751.013 ...................................................................17

Tex. Health & Safety Code § 822.114 ...................................................................17

Tex. Local Gov't Code § 232.005 ...........................................................................18

Tex. Nat. Res. Code § 91.113 .................................................................................18

Tex. R. Civ. P. 13.....................................................................................................34

Tex. R. Civ. P. 91a ............................................................................................ *passim*

Tex. Transp. Code § 280.002...................................................................................18

**Other Authorities**

Letter from Senators Richard Durbin, et al. to Chuck Rosenberg, Acting Adm'r,
    DEA (July 11, 2017)..........................................................................................2

Restatement (Second) of Torts § 821B .................................................................30

U.S. Dep't of Health & Human Servs., Facing Addiction in America: The
    Surgeon General's Report on Alcohol, Drugs, and Health.....................................3

## DISTRIBUTORS' FIRST AMENDED RULE 91A MOTION TO DISMISS

AmerisourceBergen Drug Corporation, Cardinal Health, Inc., Cardinal Health 110, LLC, and McKesson Corporation (collectively, "Distributors") move to dismiss Plaintiff Dallas County's Second Amended Petition pursuant to Texas Rule of Civil Procedure 91a.

## INTRODUCTION

The Petition is clear about what the County alleges is the cause of the opioid epidemic plaguing the County:  the over-prescription of opioid medications by doctors.  The County alleges that "in 2016 alone, health care providers wrote more than 289 million *prescriptions* for opioids, enough for *every adult in the United States* to have more than one bottle of pills."  2d Am Pet. ¶ 3 (second emphasis in original).[1]  The County claims that "[i]t was estimated as early as 2001 that up to 40% of chronic pain *patients* were addicted to opioid pain medication."  *Id.* ¶ 4.  The County continues:  "Across the country, including Texas, increased opioid *prescribing* has caused and continues to cause an increase in overdoses and death."  *Id.* ¶ 27.

The County also is clear about what it alleges to be the cause of the over-prescribing: "Manufacturing Defendants' misrepresentations and misleading marketing campaign to Dallas County physicians and residents regarding the safety and efficacy of using opioids for chronic non-cancer pain that resulted in an oversupply of opioids."  2d Am. Pet. ¶ 20.  The County alleges that, "[b]y the 1990s and early 2000s … each Manufacturing Defendant began a marketing scheme to persuade doctors and patients that opioids were not addictive and should be used ubiquitously and perpetually to treat moderate, non-cancer chronic pain."  *Id.* ¶ 11.

---

[1] Unless otherwise noted, all emphasis herein is added and internal quotation marks and citations are omitted.

Because "Defendants" allegedly "reassured the medical community that opioids were not addictive," the Petition asserts, "doctors prescribed them at a higher rate." *Id.*

Its periodic use of the generic term "Defendants" aside, the County does not allege that Distributors participated in the fraudulent marketing scheme that allegedly duped Dallas County doctors into prescribing too many opioids. The allegations against Distributors instead are that they "flooded" the County with opioids and "distribut[ed] opioids even though suspicion for diversionary purposes existed." 2d Am. Pet. ¶¶ 24–25; *see also id.* ¶ 33. But Distributors delivered only what pharmacies in the County ordered to fill the prescriptions written by doctors in the County, and Distributors did not have any duty or ability to second-guess the Texas doctors who prescribed those medicines. Nor did Distributors have any duty or ability to question the Drug Enforcement Administration ("DEA"), which determined that there was an increasing medical need for the drugs that warranted raising the manufacturing quotas 39-fold over 22 years.[2]

The County repeatedly claims that Distributors have a duty to act as "gatekeeper" and distribute opioids only when there is a "valid medical purpose" for the medication, *see*, *e.g.*, 2d Am. Pet. ¶¶ 268, 275, 298, 353, but the County has not identified any legal basis for this supposed duty. A wholesale distributor's only regulatory obligation under the Texas Controlled Substances Act is to report distribution data to the DEA and the Texas Board of Pharmacy. Tex. Health & Safety Code § 481.0766. There is no allegation that Distributors failed in that reporting duty.

---

[2] *See* 21 U.S.C. § 826(a); Letter from Senators Richard Durbin, et al. to Chuck Rosenberg, Acting Adm'r, DEA (July 11, 2017), https://www.durbin.senate.gov/imo/media/doc/Senate%20Ltr%20to%20DBA%20on%202018%20pioid%20Production%20Quotas.pdf; Drug Enforcement Agency, Aggregate Production Quota History for Selected Substances 2003-2013 (Oct. 2, 2012), https: //web.archive.Org/web/20130904184612/http:www.deadiversion.usdoj.gov/quotas/quota_history.pdf.

The County also alleges that Distributors ignored signs of "diversion," 2d Am. Pet. ¶ 347, but "diversion" is a term of art with a well-established meaning when used in connection with prescription opioids.  It is the "transfer of any legally prescribed controlled substance from the person for whom it was prescribed to another person for any illicit use."[3]  Thus, it inherently involves unlawful activity—unlawful activity that occurred only after Distributors relinquished control over opioid medicines.  Under established law, Distributors cannot be held liable for failing to prevent the unlawful conduct of third parties over whom they exercise no control—let alone for the remote and derivative injuries claimed by the County as a consequence of that criminal activity.

Because all of the County's causes of action are based on these faulty legal premises, they each should be dismissed pursuant to Texas Rule of Civil Procedure 91a.

## REGULATORY BACKGROUND

The manufacture, prescription, dispensing, and distribution of opioid medication are regulated extensively by multiple federal and state agencies:

*Manufacturing*.  Under the federal Food, Drug, and Cosmetic Act, a prescription opioid may not be marketed or sold until the Food and Drug Administration has approved the drug as safe and effective for its intended use.  21 U.S.C. § 355(a)–(d).  Once approved, if the drug is a schedule I or II controlled substance, the Attorney General is required to "establish production quotas … each calendar year to provide for the estimated medical, scientific, research, and industrial needs of the United States."  21 U.S.C. § 826(a); *see also* 21 C.F.R. §§ 1303.11, 1303.21.

---

[3] U.S. Dep't of Health & Human Servs., Facing Addiction in America: The Surgeon General's Report on Alcohol, Drugs, and Health, glossary at 2 (2016), https://addiction.surgeongeneral.gov/sites

*Prescribing*.   Under the federal Controlled Substances Act ("CSA"), "no controlled substance in schedule II [including prescription opioids] … may be dispensed without the written prescription of a practitioner."  21 U.S.C. § 829(a).  An opioid prescription "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  21 C.F.R. § 1306.04(a).  "The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner ...."  *Id.*; *see also* Tex. Health & Safety Code § 481.071(a) ("A practitioner … may not prescribe, dispense, deliver, or administer a controlled substance … except for a valid medical purpose and in the course of medical practice.").

*Dispensing*.   Although the prescribing practitioner is responsible for the proper prescribing of controlled substances, federal law provides that "a corresponding responsibility rests with the pharmacist who fills the prescription."  21 C.F.R. § 1306.04(a).  Prescriptions issued other than in the usual course of professional treatment are not considered legitimate prescriptions, "and the person knowingly filling such a purported prescription … shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."  21 C.F.R. § 1306.04(a).  Under Texas law, a "pharmacist shall make every reasonable effort to prevent inappropriate dispensing due to fraudulent, forged, invalid, or medically inappropriate prescriptions in violation of a pharmacist's corresponding responsibility."  22 Tex. Admin. Code § 291.29(f).

*Distributing*.   The CSA requires all wholesale distributors of controlled substances to obtain a registration from the DEA annually.  21 U.S.C. § 822(a)(1).  In deciding whether to

---

/default/files/surgeon-generals-report.pdf; see also Controlled Substances Quotas, 83 Fed. Reg. 32,784 (July 16, 2018) (defining diversion as the "redirection" of prescription opioids "into illicit channels").

register an applicant, the DEA considers, among other things, whether the applicant maintains "effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels." *Id.* § 823(b).

The CSA imposes two reporting requirements.  It requires registered distributors to report to the Attorney General "*every* sale, delivery or other disposal" of prescription opioids.  21 U.S.C. § 827(d)(1).  It also provides that distributors "shall design and operate a system to disclose to the registrant suspicious orders of controlled substances" and "inform [DEA] of suspicious orders when discovered by the registrant."  21 C.F.R. § 1301.74(b) (defining "suspicious orders" as "orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency").

The only reporting duty that wholesale distributors of controlled substances have under Texas law is to "report to the board [of pharmacy] the information that the distributor is required to report to the Automation of Reports and Consolidated Orders System (ARCOS) of the Federal Drug Enforcement Administration for the distribution of a controlled substance by the distributor to a person in this state. The distributor shall report the information to the board in the same format and with the same frequency as the information is reported to ARCOS."  Tex. Health & Safety Code § 481.0766 ("Reports of Wholesale Distributors").  There is no requirement under Texas law for wholesale distributors to report "suspicious" pharmacy orders or "suspicious" prescriptions to any Texas agency.

## SUMMARY OF ARGUMENT

The problem of opioid abuse is real, but the County's attempt to fix liability on Distributors is misplaced.  The Petition should be dismissed in its entirety.

***Standing.***   Standing derives from the Texas Constitution's separation of powers requirement, which precludes the courts from addressing matters—such as opioid addiction and

abuse—that are reserved for the legislative and executive branch.  The County lacks standing because its alleged injuries are not fairly traceable to Distributors' alleged conduct, but instead arise from independent actions of third parties, such as the doctors, pharmacists, patients, and others who diverted opioid medications to illicit use.  Moreover, the County's alleged injuries are entirely derivative of personal injuries to its residents.

*Municipal Cost Recovery Rule.*  The municipal cost recovery rule, which also derives from the Texas Constitution's separation of powers requirement, independently bars the County's claims for damages.  This rule provides that, absent contrary legislation, the costs of public services are spread among taxpayers, and local governments cannot recover those costs from alleged tortfeasors.  Because the Texas Legislature has not authorized the County to recover its alleged opioid-related costs in tort, the County is barred from recovering those costs here.

*Texas Products Liability Act.*  The Texas Products Liability Act bars all products liability actions against non-manufacturing sellers, such as Distributors, with several exceptions inapplicable here.  The County's lawsuit is a products liability action because it seeks to recover for harm caused by opioid medications that were allegedly defectively marketed.  The Texas Products Liability Act therefore forecloses the County's claims against Distributors.

*Economic Loss Rule.*  The economic loss doctrine bars claims for unintentional torts where, as here, the plaintiff purports to seek purely economic damages unaccompanied by injury to the plaintiff or the plaintiff's property.

*Proximate Causation.*  For many of the same reasons that the County lacks standing to bring its claims, it has not adequately alleged proximate causation.  The County's central allegation is that doctors overprescribed opioid medications as a result of a "marketing scheme"

6

by opioid manufacturers that convinced doctors and patients that opioids were not addictive and could be used to treat chronic pain. Distributors did not participate in this alleged marketing scheme, and therefore, harm as a result of the alleged scheme was not foreseeable to Distributors. In addition, the alleged conduct of Distributors (shipping too many opioid pills to licensed pharmacies) is too remote from the alleged injuries to the County, which occurred only after the independent, intervening acts of third parties.

*Nuisance*. The County's nuisance claim should be dismissed because nuisance is not, itself, a cause of action in Texas, but is a legal injury to the interference with the use and enjoyment of property. The County does not allege that Distributors interfered with the use and enjoyment of property. In addition, the County has not alleged interference with any "public right" because there is no public right not to be injured by a product or to have limits placed on the distribution of a legal product.

*Texas Controlled Substances Act.* The County may not maintain its claims under the Texas Controlled Substances Act ("TCSA") because (1) the statute does not authorize the County to bring an action for civil penalties or damages, (2) the section of the TCSA that Distributors allegedly violated does not apply to wholesale distributors, and (3) the other conduct complained of by the County is not prohibited by the TCSA.

*Negligence and Gross Negligence.* The County's negligence and gross negligence claims must be dismissed because Distributors have no "gatekeeper" duty under Texas law to monitor opioid prescriptions and withhold supply of opioids that have no valid medical purpose—and certainly no duty running to the County. The negligence claims additionally fail because Distributors have no duty to prevent the criminal conduct of third parties who illegally divert opioids after they have left Distributors' custody.

***Fraud.***  The County's fraud claim should be dismissed because the County has not pled any of the elements of fraud.  Among other things, the County does not and cannot identify any false statement by Distributors, much less a knowingly and materially false statement upon which the County relied.

***Unjust Enrichment.***  An unjust enrichment claim is available only when there is no adequate remedy at law, and, here, the County pleads several legal remedies.  Even if an unjust enrichment claim were available, the County fails to plead that Distributors conferred a benefit on it—let alone that they did so as a result of fraud, duress, or the taking of an undue advantage.

***Civil Conspiracy.***  The County's civil conspiracy claim is derivative of its fraud claim and fails for the same reasons.  In any event, the County fails to allege that Distributors knowingly participated in Manufacturers' alleged fraud or entered into any conspiratorial agreement.  The Petition's allegations that Distributors lawfully participated in trade organizations and commercial contractual relationships do not allow a reasonable inference of a conspiracy.

## STANDARD OF REVIEW

Texas Rule of Civil Procedure 91a requires dismissal of a cause of action that "has no basis in law or fact."  Tex. R. Civ. P. 91a.1.  "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.  A cause of action has no basis in fact if no reasonable person could believe the facts pleaded."  *Id.*; *accord Stallworth v. Ayers*, 510 S.W.3d 187, 190 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("[A] cause of action has no basis in law under Rule 91a" when "the petition alleges too few facts to demonstrate a viable, legally cognizable right to relief.").  The Rule 91a standard is similar to the requirements of Federal Rule of Civil Procedure 12(b)(6), which requires a plaintiff to plead facts that, if true, establish a "reasonable

inference that the defendant is liable for the misconduct alleged." *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (finding Rule 12(b)(6) standard "instructive" in Rule 91a challenges).  Only "well-pleaded facts are taken as true"; "mere conclusory statements[] do not suffice." *Id.*

## ARGUMENT

### I.    THE COUNTY'S CLAIMS FAIL FOR SEVERAL THRESHOLD REASONS.

Each of the County's claims should be dismissed for five threshold reasons.  First, the County lacks standing to bring its claims.  Second, the claims are barred by the municipal cost recovery rule.  Third, the Texas Products Liability Act bars the County's claims.  Fourth, the claims are precluded under the economic loss doctrine.  Finally, the claims fail because the County has not adequately alleged proximate causation.

### A.    The County Lacks Standing To Pursue Its Claims.

The County's claims should be dismissed because the County lacks standing.  Standing is "implicit in the concept of subject matter jurisdiction," which is "essential to the authority of a court to decide a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).  The standing requirement "derives from the Texas Constitution's provision for separation of powers among the branches of government, which denies the judiciary authority to decide issues in the abstract, and from the open courts provision, which provides court access only to a 'person for an injury done him.'" *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) (quoting Tex. Const. art I, § 13).  Standing "is never presumed." *Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44.[4]

---

[4] A defendant may raise a lack of standing in a Rule 91a motion. *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 724–25 (Tex. 2016) (analogizing a Rule 91a motion to a plea to the jurisdiction).

The County lacks standing for two reasons.  First, the County fails to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct."  *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012).  Second, the County cannot recover indirectly for harm allegedly suffered by its residents.

### 1.      The County fails to allege traceability.

Traceability, or the "required showing of a causal connection between the plaintiff's injury and the defendant's conduct[,] serves as a means of identifying the proper defendants." *Meyers*, 548 S.W.3d at 485.  "[T]o establish standing, a plaintiff must plead facts demonstrating that the plaintiff suffered an injury … [that] is fairly traceable to the defendant's conduct," and "not … th[e] result [of] the independent action of some third party not before the court."  *Id.* at 485–86.  Standing is lacking where the "independent decision" of a third party stands between the defendant's conduct and the plaintiff's harm, *Neeley v. Tex. State Teachers Ass'n*, 2007 WL 2325930, at *8 (Tex. App.—Corpus Christi Aug. 16, 2007, no pet.), or where the connection between the challenged conduct and the plaintiff's harm is "too attenuated," *Tex. Dep't of Family & Protective Servs. v. Grassroots Leadership, Inc.*, 2018 WL 6187433, at *4 (Tex. App.—Austin Nov. 28, 2018, no pet.).  Here, the County's injuries are not "fairly traceable" to Distributors' alleged conduct because its injuries resulted from independent actions of third parties—including the criminal acts of physicians, pharmacists, patients, or others who diverted opioids from their intended use—many steps removed from Distributors.

The County alleges that Distributors failed "to act as watchful and effective gatekeepers in the opioid pipeline" by purportedly failing "to prevent opioids from being dispensed or disbursed for diversionary purposes."  2d Am. Pet. ¶¶ 268, 299.  But Distributors do not dispense opioids directly to patients.  *See id.* ¶ 21 ("Distributor Defendants purchased opioids from Manufacturing Defendants herein and sold them to pharmacies throughout Dallas County.").  For

an opioid to go from a wholesale distributor to a patient requires independent decisions by at least two professionals:  a licensed physician must prescribe the medication, and a licensed pharmacist must dispense it.  As the County acknowledges, its alleged harm resulted from independent decisions by doctors to "escalat[e] [the] number of opioid prescriptions," *id.* ¶ 251, or "to prescribe opioids without a legitimate purpose," *id.* ¶ 248.  Even after a doctor writes a prescription, no harm is possible until a licensed pharmacist makes an independent decision to fill the prescription.  *See supra* pp. 3-4.

Moreover, where diversion is concerned, criminal acts of third parties not before this court ***necessarily*** stand between Distributors' alleged wrongdoing and the County's asserted injuries.  As the County acknowledges, these criminal acts include "doctor shopping, forged prescriptions, falsified pharmacy records, and employees who steal from their place of employment," as well as "crimes against pharmacies including robbery and burglary."  2d Am. Pet. ¶ 258.  These intervening criminal acts of third parties further demonstrate that the County's injury is not fairly traceable to Distributors.  *See Boggs v. Bottomless Pit Cooking Team*, 25 S.W.3d 818, 823 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("As a general rule, criminal conduct of a third party is a superseding cause that extinguishes the liability of the previous actor.").

For these reasons, the Connecticut court responsible for overseeing the state-court opioid litigation in that state recently dismissed the claims of 37 local governments—claims that are identical to those of the County—because the plaintiffs' causation allegations were too speculative.  The Connecticut court explained that there are multiple steps—not even counting the pharmacist who dispenses the medication—between the alleged conduct of Distributors and harm to the local government plaintiffs:

Link 1:  The manufacturers make the opioids.

Link 2:  The manufacturers sell the opioids to the distributors.

Link 3:  The distributors sell the opioids to a pharmacy.

Link 4:  Doctors prescribe the opioids.

Link 5:  Patients take them.

Link 6:  Some patients become addicted.

Link 7:  The city must give emergency and social services to some addicts while the city's quality of life, property values and crime rate worsen from the spread of addiction, further straining city resources….

Link 8:  Pills get loose and are sold on the black market creating other costly addicts.

Link 9:  Pills get too expensive or scarce for some addicts who turn to more accessible stocks of street fentanyl or heroin, creating costly addicts.

*City of New Haven v. Purdue Pharma, L.P.*, 2019 WL 423990, at *3 (Conn. Super. Ct. Jan. 8, 2019).  Because "it is impossible to trace fairly every act to its utmost consequence," and because the governments claimed "indirect damages that would turn on conjectural analysis of causes and effects," the court dismissed the governments' claims in their entirety for lack of standing.  *Id.* at **2–3, 8.  The same result is warranted here.

The court in *City of New Haven* also recognized that standing limits the exercise of judicial power.  Allowing local governments to sue "would risk letting everyone sue almost everyone else about pretty much everything that harms us."  2019 WL 423990, at *2.  Indeed, if cities and counties could sue drug companies for causing the opioid crisis, the court asked rhetorically, why could not "all of us line up in court and ask for our personal share of the extra taxes, declining property values, rising crime rates and personal anguish we suffer from the addictions surrounding us?"  *Id.*

Texas law likewise recognizes that standing limits judicial power only to those questions amenable to judicial resolution.  *See, e.g.*, *Meyers*, 548 S.W.3d at 484 (separation of powers "denies the judiciary authority to decide cases in the abstract").  Broad questions of social policy—such as those raised by the County here—are for the legislative and executive branches.

### 2.      The County cannot recover for derivative harm.

The County lacks standing for a second reason:  its claims are entirely derivative of the claims of County residents.

Standing requires, among other things, a "***direct*** injury as a result of the defendant's wrongful act" and "a ***direct*** relationship between the alleged injury and the claim being adjudicated."  *Asshauer v. Wells Fargo Foothill*, 263 S.W.3d 468, 471 (Tex. App.—Dallas 2008, pet. denied).  Here, the County seeks to recover as damages its costs in responding to the opioid crisis, including the costs of providing "healthcare coverage to its employees" and "public services to its citizens."  2d Am. Pet. ¶ 321.  The County's alleged injuries thus are not "direct," but derivative:  "Without injury to the individual [opioid users], the [County] would not have incurred any increased costs …."  *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir. 1999).  The County thus lacks standing to recover for such derivative injuries as a matter of law.[5]

---

[5] This result is consistent with the "usual common law rule is that a [third-party payor] has no direct cause of action in tort against one who injures the [payor's] beneficiary, imposing increased costs upon the [payor]." *United Food & Commercial Workers Unions, Emp'rs Health & Welfare Fund v. Philip Morris, Inc.*, 223 F.3d 1271,1274 (11th Cir. 2000) (citing *Anthony v. Slaid*, 52 Mass. 290, 290–91 (1846)); *accord Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*,196 F.3d 818, 822 (7th Cir. 1999); ("For more than 100 years state and federal courts have adhered to the principle (under both state and federal law) that the victim of a tort is the proper plaintiff, and that insurers or other third-party providers of assistance and medical care to the victim may recover only to the extent their contracts subrogate them to the victim's rights."); *E. States Health & Welfare Fund v. Philip Morris, Inc.*, 188 Misc. 2d 638, 646 (N.Y. Sup. Ct. 2000) ("[F]or more than one century, state and federal courts have adopted the theory that the victim of a tort is the appropriate plaintiff and that third-party providers of medical care may recover only pursuant to rights of subrogation.").

*Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664 (E.D. Tex. 1998), *aff'd* 199 F.3d 788 (5th Cir. 2000), is instructive.  There, an employee benefit plan attempted to recover "the costs expended treating [plan] [p]articipants' tobacco-related illnesses" under a variety of federal and Texas statutory, common-law, and equitable claims.  *Id.* at 667. The court held that the plaintiff lacked standing because it is "firmly established" that "one who pays medical expenses on another's behalf does not have standing to assert a direct action against the tortfeasor."  *Id.*   Under Texas law, "a benefit provider's exclusive remedy for recovery of medical expenses lies in subrogation."  *Id.* at 676; *see also In re Baker*, 404 S.W.3d 575, 581–82 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (holding that the financial supporter of a political candidate lacked standing to challenge another candidate's inclusion on an election ballot because the plaintiff's alleged harm was "derivative" of the harm to his preferred candidate).

*City of New Haven* underscores this conclusion.  Like the County, the municipalities in that case sought to recover for "indirect harm," including medical expenses resulting from the opioid crisis.  2019 WL 423990, at *1.  Noting that the parties directly injured by the defendants' alleged conduct were the residents who used the opioid medicines—not the local governments— the court held that the cities' allegations were "too attenuated to support a claim."  *Id.* at *3–4; *see also Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268–69 (1992) (recognizing that, "at common law, … a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover").

The same conclusion is warranted here.  The County does not assert subrogation rights on behalf of its allegedly injured residents—nor could it.  Accordingly, the County's claims to

recover for the costs of providing opioid-related medical treatment and other services should be dismissed.[6]

**B.      The Municipal Cost Recovery Rule Bars the County from Recovering Its Alleged Damages.**

The "municipal cost recovery rule," which is compelled by the Texas Constitution's separation-of-powers clause, precludes the County from obtaining the judicial remedy that it seeks.   Absent legislative authorization, only injured private parties, and not county governments, may sue alleged tortfeasors for damages.

**1.      Absent legislative authority, courts lack the power to shift the costs of local government expenditures from taxpayers to tortfeasors.**

The "municipal cost recovery rule"—also known as the free public services doctrine—provides that a government entity cannot sue to recover the costs of carrying out public services from a tortfeasor whose conduct allegedly caused the need for the services.   Rooted in separation-of-powers concerns, the rule's rationale is that "state legislatures establish local governments to provide core services for the public and pay for these services by spreading the costs to all citizens through taxation."  *Baker v. Smith & Wesson Corp.*, 2002 WL 31741522, at *5 (Del. Super. Ct. Nov. 27, 2002); *accord State v. Black Hills Power, Inc.*, 354 P.3d 83, 86 (Wyo. 2015).   The "government's decision to provide tax-supported services is a legislative policy determination," and it "is not the place of the courts to modify such decisions" by reallocating the costs of government expenditures from taxpayers to tortfeasors.  *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984).   Rather, it is the legislature's

---

[6] In its Prayer for Relief, the County also seeks "restitution on behalf of Dallas County consumers who paid for opioids for chronic pain."  2d Am. Pet. p. 118.  For the reasons fully explained in Manufacturers' First Amended Joint Rule 91A Motion (at 11–13) and incorporated by reference here, the County lacks standing to seek relief on behalf of its residents.  Under the *parens patriae* doctrine, only the State (and

purview to shift the cost of public expenditures to tortfeasors by statute. "[T]he legislature and its public deliberative processes, rather than the court, is the appropriate forum to address such fiscal concerns." *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 324 (9th Cir. 1983) (Kennedy, J.).

Many federal and state courts have adopted the municipal cost recovery rule.[7] Particularly analogous here, several courts have held that cities and counties may not sue

---

then only in limited circumstances) may do so.  *E.g.*, *Tuma v. Kerr County*, 336 S.W.3d 277, 281–82 (Tex. App.—San Antonio 2010, no pet.).

[7] *See United States v. Standard Oil Co.*, 332 U.S. 301, 302–03 (1947) (federal government may not recover costs of injured soldier's hospitalization and pay from negligent defendants); *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149, 151 (2d Cir. 2013) (doctrine barred claims against an airline for costs of responding to an airplane crash); *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 979–80 (9th Cir. 2008) (observing that "common law doctrine barring government recovery of the costs of public safety services in tort supports" holding that "costs of … law enforcement and public health care services are not recoverable damages under civil RICO"); *Air Fla.*, 750 F.2d at 1080 (D.C. Cir. 1984) (adopting rule against recovery of municipal costs; "where a generally fair system for spreading the costs of accidents is already in effect—as it is here through assessing taxpayers the expense of emergency services—we do not find the argument for judicial adjustment of liabilities to be compelling"); *City of Flagstaff*, 719 F.2d at 324 (barring recovery under Arizona law, absent express authorization by "statute or regulation," for the "normal provision of police, fire, and emergency services"); *Walker Cty. v. Tri-State Crematory*, 643 S.E.2d 324, 327 (Ga. Ct. App. 2007) ("Georgia, like many jurisdictions, has adopted the common-law free public services doctrine."); *Baker*, 2002 WL 31741522, at *4 (adopting "the general rule in force in other jurisdictions [] that public expenditures made in the performance of governmental functions are not recoverable from a tortfeasor in the absence of a specific statute" (footnotes omitted)); *Ganim v. Smith & Wesson Corp.*, 1999 WL 1241909, at *6 & n.7 (Conn. Super. Ct. Dec. 10, 1999) (noting "general rule prohibiting recoupment of municipal expenditures"), *aff'd*, 780 A.2d 98 (Conn. 2001); *Bd. of Supervisors of Fairfax Cty. v. U.S. Home Corp.*, 1989 WL 646518, at *2–3 (Va. Cir. Ct. Aug. 14, 1989) (adopting "general rule that a municipal corporation may not recover for emergency services rendered in situations caused by a private tortfeasor."); *County of San Luis Obispo v. Abalone All.*, 223 Cal. Rptr. 846, 851 (Cal. Ct. App. 1986) ("[A] government entity may not, as the County seeks to do in this case, recover the costs of law enforcement absent authorizing legislation."); *City of Pittsburgh v. Equitable Gas Co.*, 512 A.2d 83, 84 (Pa. Commw. Ct. 1986) (holding that the "cost of public services for protection from a safety hazard is to be borne by the public as a whole, not assessed against a tortfeasor whose negligence creates the need for the service"); *Koch v. Consolidated Edison Co.*, 468 N.E.2d 1, 7 (N.Y. 1984) ("The general rule is that public expenditures made in the performance of governmental functions are not recoverable."); *Town of Freetown v. New Bedford Wholesale Tire, Inc.*, 423 N.E.2d 997, 997–98 (Mass. 1981) (town could not recover costs of fighting fire); *City of Bridgeton v. B.P. Oil, Inc.*, 369 A.2d 49, 54 (N.J. Sup. Ct. 1976) (city could not recover costs of paying firefighters or of purchasing special equipment used to respond to oil leak); *Champaign County v. Anthony*, 337 N.E.2d 87, 88 (Ill. App. Ct. 1975) (county could not recover costs of protecting witness from convict out on

16

handgun manufacturers, distributors, and retailers in tort to recover the costs of increased emergency medical services, law enforcement, and other municipal services allegedly incurred in response to gun violence. *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1143–47 (Ill. 2004); *Baker*, 2002 WL 31741522, at *5; *Penelas v. Arms Tech., Inc.*, 1999 WL 1204353, at *2 (Fla. Cir. Ct. 1999). Indeed, the rule is compelled in Texas because counties are created by the Texas Legislature for the performance of specified governmental duties, and counties have no powers other than those expressly conferred by the Texas Constitution or Legislature. *See* Tex. Const. art. IX, § 1; *In re Occidental Chem. Corp.*, 561 S.W.3d 146, 151 (Tex. 2018); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003); *City of Laredo v. Webb County*, 220 S.W.3d 571, 576 (Tex. App.—Austin 2007, no pet.).

### 2. The Texas Legislature has not authorized the County to recover the expenditures it allegedly has incurred to respond to opioid abuse.

The County's claims should be dismissed because the Texas Legislature has not authorized county governments to recover costs incurred as a result of opioid use and abuse.

Legislatures can and do enact laws permitting local governments to recover public expenditures in specified circumstances. *See, e.g.*, *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999) (holding municipal cost recovery rule was inapplicable because state statute permitted municipalities to recover from tortfeasors expenses incurred in responding to oil spills). Indeed, the Texas Legislature itself has authorized counties to recoup public expenditures from certain persons and in certain circumstances not relevant here.[8] "[T]he fact

---

bond); *State Highway & Pub. Works Comm'n v. Cobb*, 2 S.E.2d 565, 567 (N.C. 1939) (state could not recover costs of capturing escaped prisoner).

[8] *See* Tex. Health & Safety Code § 822.114 (county may recover costs of investigating animal control violations); *id.* § 751.013 (county may recover costs of inspecting mass gatherings for compliance with health and sanitation standards); *id.* § 571.018 (county may recover costs of involuntary commitment proceedings); *id.* § 81.210 (county may recover costs of proceedings related to managing persons with

that [the state legislature] has enacted statutes allowing some municipal cost recoveries suggests, by negative implication, that [it] typically expects the State and local governments to cover their expenses through taxes and fees."  *Baker*, 2002 WL 31741522, at *5.

Here, as the Petition acknowledges, the Texas Legislature is aware of the increased government costs allegedly caused by opioid abuse.  *See* 2d Am. Pet. ¶ 300 (describing findings of House Select Committee on Opioids and Substance Abuse).  The Legislature nevertheless has declined to authorize counties to seek costs associated with opioid use and abuse from alleged tortfeasors.  The default rule that taxpayers as a whole must absorb those costs therefore applies, and the County's claims should be dismissed.  *See City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 591 (Tex. 2015) ("[I]f a determination is constitutionally committed to the legislative branch's discretion, the judiciary is not free to substitute its judgment for that of the legislative branch.").

## C.    The Texas Products Liability Act Bars the County's Claims Against Distributors.

The Texas Products Liability Act ("TPLA") bars the County's claims against Distributors.  The Texas Legislature passed the TPLA to immunize sellers that do not manufacture products—like Distributors—from the costs of products liability actions such as this one.  *See Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 494 (Tex. 2014); *Meritor Auto., Inc. v.*

---

communicable diseases); Tex. Transp. Code § 280.002 (county may recover costs of removing personal property blocking a right of way or roadway); Tex. Family Code § 65.061 (county may recover costs of guardian ad litem); *id.* § 51.10 (county may recover cost of providing criminal counsel for juveniles); Tex. Code of Crim. Proc. Art. 42.038 (county may recover costs of confining misdemeanant in county jail); *id.* Art. 26.057 (county may recover costs of court-appointed counsel for minors); *id.* Art. 104.002 (county may recover costs of medical, dental, and other health services rendered to prisoners); Tex. Agric. Code § 71.047 (county may recover costs to treat and destroy diseased plants); Tex. Local Gov't Code § 232.005 (county may recover costs of necessary construction to bring subdivision roads, rights of way, and drainage systems into regulatory compliance); *see also* Tex. Nat. Res. Code § 91.113 (Railroad Commission may recover costs of environmental cleanup).

*Ruan Leasing Co.*, 44 S.W.3d 86, 91 (Tex. 2001).  Consistent with that purpose, the TPLA provides "blanket protection" to non-manufacturing sellers unless one of the statute's exceptions applies.  *Gill v. Michelin N. Am., Inc.*, 3 F. Supp. 3d 579, 584 (W.D. Tex. 2013).

### 1. The County's lawsuit is a products liability action.

The substance of a plaintiff's allegations—not their style—determines whether a lawsuit is a "products liability action."  *See Phares v. Actavis-Elizabeth LLC*, 892 F. Supp. 2d 835, 839, 844 (S.D. Tex. 2012) ("no matter how [plaintiff] attempts to characterize her claims, when applying Texas law … the result is clear:  this is a products liability action").  The TPLA defines "products liability action" as

> ***any*** action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or ***any other theory or combination of theories***.

Tex. Civ. Prac. & Rem. Code § 82.001(2).  Given the statute's expansive language, "[f]ederal and state courts read § 82.001(2) broadly."  *Phares*, 892 F. Supp. 2d at 844 (collecting cases).  Under this broad definition, the County's lawsuit constitutes a "products liability action."

First, the County's alleged harm was caused by a "defective product."  A "defective product" includes a product allegedly defective due to its marketing.  *See vRide, Inc. v. Ford Motor Co.*, 2017 WL 462348, at *3 (Tex. App.—Dallas Feb. 2, 2017, no pet.) ("defective product" includes a product made "unreasonably dangerous because of a defect in marketing") (quoting *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 381–82 (Tex. 1995)).  Marketing defects include an alleged failure to warn of a product's potential dangers, as well as affirmative misrepresentations.  *See id.* at *3–4; *Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 881 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  The County alleges that "Defendants" misrepresented

the safety and efficacy of opioids and failed to warn of their potential dangers.  *See, e.g.*, 2d Am. Pet. ¶¶ 11–19, 178–239, 269–70.  The County thus alleges harm caused by a "defective product."

Second, the County seeks "recovery of damages arising out of personal injury [or] death" caused by opioid medicines.  *See, e.g.*, 2d Am. Pet. ¶¶ 1, 4–8, 26, 251, 264, 317.  *Eckhardt v. Qualitest Pharms. Inc.*, 889 F. Supp. 2d 901 (S.D. Tex. 2012), demonstrates the point.  There, a patient who allegedly suffered adverse effects from using a medication sued for failure to disclose those effects under theories of negligence, misrepresentation, and fraud.  *Id.* at 905, 907.  The court held that, even though the patient styled them otherwise, his "claims f[e]ll squarely within the statutory definition of a products liability action."  *Id.* at 907.  Because the defendants did not manufacture the medication used by the patient, the court found that the TPLA barred the claims.  *Id.* at 905–07.  In affirming, the Fifth Circuit agreed that "the Texas Products Liability statute is intentionally broad; that is, it is written to cover products liability claims, even in situations where the plaintiffs do not label their claims thusly."  *Eckhardt v. Qualitest Pharms., Inc.*, 751 F.3d 674, 678 (5th Cir. 2014).

Likewise here, because the County's purported harms arise from personal injury or death caused by allegedly defective opioid products, its lawsuit is a products liability action governed by the TPLA.  *See Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 488, 491 (5th Cir. 1999) (claims that relate to tobacco companies' "alleged knowledge and concealment of information about the health hazards of smoking" and "arise[] out of [a smoker's] allegedly wrongful death and claims that are derivative thereof" are "products liability" claims barred by the TPLA); *Phares*, 892 F. Supp. 2d at 837, 844 (barring claims, including negligence and fraud, by a patient who allegedly suffered personal injury from using a drug where the action was "predicated upon

defective marketing or warnings" by drug manufacturers and thus was "a products liability action" under the TPLA).[9]

### 2. Distributors do not manufacture opioids, and none of the TPLA exceptions apply.

By enacting the TPLA, "Texas chose to protect the seller who simply distributes a product." *Alonso ex rel. Estate of Cagle v. Maytag Corp.*, 356 F. Supp. 2d 757, 761 (S.D. Tex. 2005). Distributors do not design or manufacture prescription drugs, nor do they advertise them to doctors or patients; the Petition does not allege otherwise. Instead, Distributors only ***distribute***, purchasing opioids from manufacturers and supplying them to retail pharmacies. 2d Am. Pet. ¶ 21. The TPLA thus bars claims against Distributors "for harm caused to the claimant by [a] product unless the claimant proves" one of seven enumerated exceptions. Tex. Civ. Prac. & Rem. Code § 82.003(a); *Alonso*, 356 F. Supp. 2d at 761.[10]

---

[9] The Petition does not allege that *Distributors* failed to provide adequate warnings or information about opioids. Even if such a claim were asserted, it would be barred by the TPLA. *See* Tex. Civ. Prac. & Rem. Code § 82.007(a)(1) (pharmaceutical distributors are presumed "not liable with respect to the allegations involving failure to provide adequate warnings or information" about a medication if its label was FDA-approved); *see also Romero v. Wyeth Pharm., Inc.*, 2012 WL 12547449, at *2-3 (E.D. Tex. Aug. 31, 2012) (applying Section 82.007 where plaintiff alleged that manufacturers "misrepresent[ed] the risks and benefits of the drug ... to the prescribing physicians and ultimate users"). For the reasons explained in Manufacturers' Rule 91a motion to dismiss, which Distributors adopt and incorporate by reference herein, the County has failed to plead any facts that could establish any of the statutory exceptions to Section 82.007's presumption of non-liability. *See* Manufacturer Defendants' First Amended Joint Rule 91A Motion at 19–22. Furthermore, the County's argument that Manufacturers' conduct falls within Section 82.007(3)'s exception for the promotion of off-label use does not apply to Distributors because there is no allegation that Distributors promoted opioids at all, let alone for off-label use.

[10] It is beyond dispute that Distributors are non-manufacturing sellers of opioids. The TPLA defines a "manufacturer" as a product "designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler," whereas a "seller" only "engage[s] in the business of distributing or otherwise placing, for any commercial purpose, [a product] in the stream of commerce for use or consumption." Tex. Civ. Prac. & Rem. Code § 82.001(3)–(4). As the Petition acknowledges, Distributors do not design, formulate, produce, or otherwise manufacture opioids, but only purchase these medicines from manufacturers and supply them to retail pharmacies. 2d Am. Pet. ¶ 21 ("Distributor Defendants purchased opioids from Manufacturing Defendants herein and sold them to pharmacies throughout Dallas County."); *see also id.* ¶¶ 48–50.

The only exception to TPLA immunity that the County suggests may be relevant here is for a non-manufacturer seller that "actually knew of a defect to the product at the time the seller supplied the product" where "the defect" harmed the plaintiff.  Tex. Civ. Prac. & Rem. Code § 82.003(a)(6).  But the County fails adequately to allege that Distributors ***actually knew***, at the time they supplied opioids to pharmacies in Dallas County, that Manufacturers were falsely marketing and failing to warn doctors and patients about opioids.

The standard for pleading the TPLA's actual knowledge exception is high.  First, the County must allege that Distributors "'knew,' not 'should have known' of a defect."  *Mix v. Target Corp.*, 759 F. Supp. 2d 876, 879 (W.D. Tex. 2010).  The "requirement means just what it says, and cannot be satisfied with a showing of negligent oversight, constructive knowledge, or similar allegations that a seller could or should have known of a defect in a product."  *Ray v. FCA US LLC*, 2017 WL 3033425, at *4 (S.D. Tex. July 18, 2017).  Second, "[i]nformation about the injury [caused by a product] is not enough—the defendant's actual knowledge must relate to the defect itself."  *Blythe v. Bumbo Int'l Tr.,* 2013 WL 6190284, at *5 (S.D. Tex. Nov. 26, 2013), *aff'd*, 634 F. App'x 944 (5th Cir. 2015).  Actual knowledge that a product poses risks or could be made safer for consumers does not suffice to establish actual knowledge that a product is defective.  *Garcia v. Nissan Motor Co.*, 2006 WL 869944, at *3 (S.D. Tex. Mar. 30, 2006) ("While …Defendant certainly had knowledge that a car with side-impact airbag or stability control could or would be safer than a car without these features, this is not equivalent to knowing that the lack of these features rendered the product defective.").

Even assuming arguendo that Manufacturers knowingly marketed their opioids in a false or misleading manner, the County has pled no facts that could establish that Distributors actually knew that Manufacturers' opioids were defectively marketed.  The overwhelming majority of the

County's factual allegations—more than 200 paragraphs—purports to detail how certain Manufacturers allegedly falsely marketed specific opioid products as safe and effective for non-cancer chronic pain. *See* 2d Am. Pet. ¶¶ 11–20, 55–241, 264–67.[11]   By contrast, the County's Petition summarily and generally alleges that Distributors "knew" Manufacturers' marketing was false, *see id.* ¶¶ 229, 272, without alleging even a single ***fact***—no who, what, when, or where— that could establish that any Distributor actually knew that any of these instances of marketing was false or misleading.  This is insufficient to establish knowledge on the part of Distributors. *See Wooley*, 447 S.W.3d at 76 (requiring pleading facts sufficient to state a plausible claim to relief); *Gonzalez v. Estes, Inc.*, 2010 WL 610778, at *5 (W.D. Tex. Feb. 19, 2010) (because "pleadings do not allege any specific facts that would invoke an exception to a non-manufacturing seller's immunity," the allegations "would be insufficient to overcome a motion to dismiss").

Instead, the Petition suggests that Distributors ***should have known*** Manufacturers' marketing was false or misleading based on "[t]he history of opioids, as well as research and clinical experience" about opioids in general and the general allegation, derived from Distributors' websites, that Distributors "partner" with prescription drug manufacturers to successfully sell their products.  2d Am. Pet. ¶¶ 21–22, 229.  These "should have known" allegations do nothing to establish that any Distributor actually knew that any particular Manufacturer's marketing about a particular opioid was false, and so are insufficient as a matter of Texas law to invoke an exception to Distributors' immunity.  *See Mix*, 759 F. Supp. 2d at 879;

---

[11] Periodically, the County inserts the broader term "Defendants" in these marketing allegations, but it is clear from the Petition that these allegations are and could be aimed at only Manufacturers.  *See, e.g.*, 2d Am. Pet. ¶ 11 ("By the 1990s and early 2000s, however, each Manufacturing Defendant began a marketing scheme to persuade doctors and patients that opioids were not addictive and should be used ubiquitously and perpetually to treat moderate, non-cancer chronic pain.").

*Garcia*, 2006 WL 869944, at *3 ("knowledge of a condition in or of a product without actual knowledge that the condition renders the product defective is insufficient").

### D.      The Economic Loss Rule Bars the County's Claims.

"In actions for unintentional torts, the common law has long restricted recovery of purely economic damages unaccompanied by injury to the plaintiff or his property—a doctrine [the Texas Supreme Court has] referred to as the economic loss rule." *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014); *see Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App.—Dallas 2001, no pet.) ("To be entitled to damages for negligence, a party must plead and prove either a personal injury or property damage as contrasted to mere economic harm.") .

The County does not purport to seek damages for personal injury or injury to its property. Rather, the County claims to seek purely economic damages, including "increased costs of social services, health systems, law enforcement, judicial system, and treatment facilities." 2d Am. Pet. ¶ 326. The economic loss rule bars the County from recovering these damages and requires dismissal of the County's negligence, gross negligence, and nuisance claims. *See State of Veracruz v. BP, P.L.C. (In re Deepwater Horizon)*, 784 F.3d 1019, 1022, 1032 (5th Cir. 2015) (holding economic loss rule barred claims by Mexican states for "net costs of providing increased public services" associated with the Deepwater Horizon disaster); *see also City of Chicago*, 821 N.E.2d at 1143, 1147 (holding economic loss rule barred public nuisance claim because increased expenditures on public services did not constitute "actual harm to the city's or county's property").

### E.      The County Fails To Plead Proximate Causation.

For many of the same reasons that the County lacks standing to bring its claims, it has not adequately alleged proximate causation.  To prove that a defendant's conduct was the proximate

cause of a plaintiff's injury, a plaintiff must prove foreseeability and cause in fact.  *See Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996).  Foreseeability requires that the injury complained of be "of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury … might reasonably have been foreseen."  *Carey v. Pure Distrib. Corp.*, 124 S.W.2d 847, 849 (Tex. 1939).  Proximate cause is a question of law where, as here, the relationship between the plaintiff's injuries and the defendant's negligence is attenuated or remote.  *See Sanchez*, 494 S.W.3d at 726 (reversing denial of Rule 91a motion where, "[e]ven construing the pleadings liberally," defendant's act "was not a proximate cause" of plaintiff's harm); *see also, e.g.*, *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991); *Snellenberger v. Rodriguez*, 760 S.W.2d 237, 238 (Tex. 1988).

As the Petition makes clear, the County centers its allegations on a supposed "marketing scheme" by opioid manufacturers "to persuade doctors and patients that opioids were not addictive and should be used ubiquitously and perpetually to treat moderate, non-cancer chronic pain."  2d Am. Pet. ¶ 11.  This marketing effort allegedly "caused prescribing physicians and consuming patients to underappreciate the health risks, and to overestimate the benefits of opioids."  *Id.* ¶ 12.  The result, the County alleges, was a sharp increase in ***prescribing***, such that "opioids are now the <u>most ***prescribed***</u> class of drugs" in the country.  *Id.* ¶ 18.  And the alleged result of this increase in prescribing, in turn, is an increase in overdoses and addiction.  *See id.* ¶ 190.

The County's marketing allegations, however, have nothing to do with wholesale distributors and, indeed, are inconsistent with the County's claims against Distributors.  To understand why that is so, consider the circumstances under which the County allegedly suffered harm.  Either (i) a County resident used opioids legally (because his doctor prescribed them) and

appropriately (as directed by his doctor), or (ii) he used them illicitly (because he obtained them other than by legitimate prescription).  In neither circumstance can Distributors be considered the cause of his addiction or overdose.

Consider first the patient whose doctor prescribed opioid medications for the long-term treatment of the patient's chronic pain.  Whether the doctor did so fully informed about the risks of opioid medications or because of the Manufacturers' allegedly deceptive marketing campaign, Distributors' conduct is not the cause-in-fact of the patient's injury.  If the doctor acted with full information, then the doctor's exercise of professional judgment is the cause-in-fact of injury and cuts off any liability of a Distributor.  If, on the other hand, the doctor acted pursuant to a standard of care that developed as a result of the Manufacturers' alleged marketing campaign, then Manufacturers' alleged fraud (or some combination of the marketing and the doctor's decision-making) is the cause.  In neither case did Distributors' conduct cause the alleged harm. This follows from the established principle that it is the doctor's decision whether an individual should receive a medication or not; courts in Texas are reluctant to require others to interfere in that relationship.  *See Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455, 461–62 (Tex. App.—Austin 2000, pet. denied) (recognizing that a pharmacist generally has not duty to warn a customer about a drug because "[t]he physician assumes the duty to warn the patient of dangers associated with a particular prescribed drug").  *A fortiori* Distributors, who have no contact with patients at all, have neither the ability nor the duty to second-guess physicians' professional medical judgments.

Next consider the individual who obtained prescription opioids illicitly and abused them. The law generally precludes recovery by one who wrongfully uses prescription drugs.  Thus,

26

lawsuits by individuals who wrongfully obtained and abused prescription opioids have failed.[12]

Texas law supports this conclusion, too, recognizing that "individuals who have committed illegal acts shall not be permitted to profit financially or be otherwise indemnified from their crimes." *Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466, 470 (Tex. App.—San Antonio 1994, writ denied). The proximate cause of this individual's injury is his own unlawful conduct.

The County further fails to plead that Distributors were the proximate cause of its harms because the chain of causation it pleads is too speculative and the injuries it alleges are too remote and derivative. A plaintiff may not meet its burden to plead or prove proximate causation by relying on "mere conjecture, guess, or speculation." *IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798–99 (Tex. 2004). A plaintiff impermissibly engages in such speculation where "the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm." *Id.*; *see also*, *e.g.*, *Arguelles v. Kellogg Brown & Root, Inc.*, 222 S.W.3d 714, 731 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that defendant's conduct was "too remote … as a matter of law" to have caused plaintiffs' injuries); *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 268 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (no causation as a matter of law because "[t]he forces generated by appellee's failure … had come to rest long before" harm occurred). Here, for the

---

[12] *See, e.g.*, *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 486 (Miss. 2006) (en banc) (wrongful conduct rule "prevents a plaintiff from suing caregivers, pharmacies, and pharmaceutical companies … for addiction to a controlled substance which he obtained through his own fraud, deception, and subterfuge"); *Kaminer v. Eckerd Corp. of Fla., Inc.*, 966 So. 2d 452, 453 (Fla. App. 2007) (affirming summary judgment because deceased opioid user obtained prescriptions by theft); *Foister v. Purdue Pharma, L.P.*, 295 F. Supp. 2d 693, 705 (E.D. Ky. 2003) (dismissing claims because plaintiffs procured OxyContin illegally and had to rely on their illegal actions to establish their claims); *Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 217–18 (Mich. 1995) (dismissing widow's claims against pharmaceutical company because her husband fraudulently obtained the prescriptions that led to his death).

27

same reasons that the County lacks standing, it fails adequately to allege that Distributors' purported conduct was a proximate cause of its claimed injuries.  *See supra* Part I(A).

## II.   THE NUISANCE CLAIM HAS NO BASIS IN LAW OR FACT.

The County's First Cause of Action based on an alleged public nuisance, 2d Am. Pet. ¶¶ 312–324, has no legal or factual basis.

Most fundamentally, the County's public nuisance claim is not viable because nuisance is not, itself, a cause of action in Texas.  *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 607 n.2 (Tex. 2017) (citing *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 594–95 (Tex. 2016)) ("[N]uisance is not a cause of action, but a type of legal injury…."); *Bolton v. Fisher*, 528 S.W.3d 770, 778 (Tex. App.—Texarkana 2017, pet. denied) ("Because nuisance is not a cause of action, these … claims cannot stand.").

The County's public nuisance claim, moreover, is not cognizable under Texas law because the County does not allege that Defendants' purported promotion of opioids interfered with the County's use and enjoyment of property.  *See* 2d Am. Pet. ¶¶ 312–324.  In *Crosstex*, the Supreme Court held that "the term 'nuisance' does not refer to [a] 'wrongful act' or to the 'resulting damages,' but only to the legal injury," and that the legal injury is "***the interference with the use and enjoyment of property***."  505 S.W. 3d at 595; *see also Bolton*, 528 S.W.3d at 778 (applying *Crosstex* to private and public nuisance claims alike).

Indeed, the purpose of nuisance law is to "recognize[] that certain injuries to a person's right to the use and enjoyment ***of property*** can also constitute a form of legal injury for which a legal remedy will be granted," *Crosstex*, 505 S.W. 3d at 594, a limitation that the *Crosstex* court stated more than 20 times in its opinion.  *See also Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003) ("A 'nuisance' is a condition that substantially interferes with the use and enjoyment ***of land*** by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities

28

attempting to use and enjoy it."). Thus, where—as here—injury to property is not alleged, the

legal injury known as "nuisance," by definition, is not alleged, and a nuisance claim cannot lie.[13]

This principle is deeply rooted in Texas law. In fact, all of the Texas public nuisance

cases of which Distributors are aware have involved an interference with the public's use and

enjoyment of land, property, or natural resources.[14] By alleging that Distributors created a

public nuisance through their distribution of opioids, without even attempting to connect their

conduct to an injury to the public's use of land, property, or natural resources, the County tries to

stretch the public nuisance doctrine far outside a century of Texas precedent.

The County claims that Distributors have helped create a nuisance because there is a

health crisis involving opioids that has "interfered with Dallas County's public health, public

safety, public peace, public comfort, and public convenience." 2d Am. Pet. ¶ 314. But that is

not an injury to the public's use of land, property, or natural resources, and there is no "public

right" not to be injured by a product or to have limits placed on the distribution of a legal

product. Any right to be free from harm inflicted by a defective product or by others due to drug

use (or any other reason) is an individual right governed by product liability law. *See*

---

[13] Courts outside of Texas similarly have resisted plaintiffs' efforts to stretch the public nuisance doctrine beyond property or environmental law. *See, e.g.*, *In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007) (refusing to permit plaintiffs "to supplant an ordinary product liability claim with a separate cause of action as to which there are apparently no bounds"); *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 650–51 (D.C. 2005) (en banc) (declining to adopt a right of action for public nuisance applied to the manufacture and sale of guns generally, "where an effect may be a proliferation of lawsuits not merely against these defendants but against other types of commercial enterprises … in order to address a myriad of societal problems").

[14] *See, e.g.*, *City of Uvalde v. Crow*, 713 S.W.2d 154, 158 (Tex. App.—Texarkana 1986, writ denied) (sewage-contaminated land); *Trice v. State*, 712 S.W.2d 842, 850 n.7 (Tex. App.—Waco 1986, writ ref'd n.r.e.) (bridge enjoinable as public nuisance "if it affected public's right to the immediate use of the river"); *Stoughton v. City of Fort Worth*, 277 S.W.2d 150, 153 (Tex. Civ. App—Fort Worth 1955, no writ) (fireworks, which "results annually in the loss of property and sometimes in a loss of life"); *Goldsmith & Powell v. State*, 159 S.W.2d 534, 535 (Tex. Civ. App.—Dallas 1942, writ ref'd) (pollution

Restatement (Second) of Torts § 821B cmt. g; *see also State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 448 (R.I. 2008) ("Products generally are purchased and used by individual consumers, and any harm they cause—even if the use of the product is widespread and the manufacturer's or distributor's conduct is unreasonable—is not an actionable violation of a public right."); *City of Chicago*, 821 N.E.2d at 1116 ("[W]e are reluctant to state that there is a public right to be free from the threat that some individuals may use an otherwise legal product … in a manner that may create a risk of harm to another.").

By identifying alleged wrongful conduct and damages without connection to any injury to a valid public right, the County seeks to transmute public nuisance law into an all-purpose remedy.  Applied in such a loose manner, public nuisance would supplant the comprehensive federal and state regulation of the approval, manufacture, wholesale distribution, prescribing, and retail dispensing of controlled substances.  It would also supplant the product liability laws specifically designed to address injury to persons (including addiction) caused by products (including prescription drugs) that are defective by reason of their design or lack of adequate warnings.  *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 82.001 *et. seq.* If applied to addiction and the public costs attendant to addiction, the public nuisance doctrine "would become a monster that would devour in one gulp the entire law of tort." *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993).

A Delaware court recently rejected the Delaware Attorney General's attempt to apply public nuisance law to claims based upon Distributors' sales of opioid medications.  *State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 446382 (Del. Super. Ct. Feb. 4, 2019).  The court

---

of a public water course); *Ort v. Bowden*, 148 S.W. 1145, 1148 (Tex. Civ. App.—Galveston 1912, no writ) (obstruction of public streets).

explained that most jurisdictions "have refused to allow products-based public nuisance claims," and dismissed the claim on that basis, as well as because the State failed to satisfy the elements of public right and control.  *Id.* at **12–13.  The same result is warranted here.

Finally, the County's nuisance claim fails for the same reasons that its negligence claims fail.  When "a claim of public nuisance is grounded in negligence, the plaintiff must allege and prove a legal duty owed to her, a breach of that duty by the defendants, and damage proximately resulting from the breach."  *Ortega v. Phan-Tran Prop. Mgmt., LLC*, 2016 WL 3221423, at *4 (Tex. App.—Houston [1st Dist.] June 9, 2016, pet. denied).  Thus, to the extent the Court interprets the County's pleading of public nuisance to be an injury that derives from negligence, the claim fails because the County has not alleged a breach of a duty owed by Distributors to the County or that Distributors' conduct proximately caused the alleged public nuisance.  *See infra* Part IV(A) (no valid legal duty running from Distributors to the County); *supra* Part I(E). (no breach of a duty that proximately caused an alleged injury).

## III.  THE TEXAS CONTROLLED SUBSTANCES ACT CLAIMS HAVE NO BASIS IN LAW OR FACT.

The County asserts two causes of action against Distributors for alleged violations of the Texas Controlled Substances Act.[15]  The first is for "civil penalties" under the TCSA; the second seeks "actual and punitive damages" under the TCSA.  2d Am. Pet. ¶¶ 361, 368.  Both claims fail because the statute does not authorize the County to bring an action for civil penalties or damages and because the section of the TCSA that Distributors allegedly violated does not apply to wholesale distributors.

---

[15] The TCSA is codified as Chapter 481 of the Texas Health and Safety Code.

### A.    The TCSA Does Not Authorize the County To Recover Civil Penalties or Damages.

In its first TCSA claim, the County seeks an award of civil penalties pursuant to Texas Health & Safety Code § 481.128 for Distributors' alleged violations of the TCSA.    But Section 481.128 provides that violators are "liable ***to the state*** for a civil penalty."  Tex. Health & Safety Code § 481.128(b), (d).  While the statute does authorize the "district attorney of the county where the act occurred" to sue a violator, that authorization merely allows the district attorney "to collect a civil penalty under this section"—that is, the civil penalty owed ***to the state***.  *Id.* § 481.128(e).  The County seeks to recover a civil penalty for itself, not for the State.  2d Am. Pet. ¶ 361 ("Dallas County should be awarded civil penalties.").  The County's attempt is barred by Section 481.128.

The County's second TCSA claim purports to seek damages, but the County does not identify any basis for bringing a damages claim for a TCSA violation, and no such basis exists. The TCSA creates just one civil cause of action for damages, and it is wholly inapplicable to the facts of this case.  Under Section 481.1191, a plaintiff may bring an action for damages against a person who "produced, distributed, sold, or provided [a] synthetic substance," defined as "an artificial substance that produces and is intended by the manufacturer to produce when consumed or ingested an effect similar to or in excess of the effect produced by the consumption or ingestion of a controlled substance."  Tex. Health & Safety Code § 481.1191(a)(2), (b).  The County does not allege that Distributors have distributed "synthetic substances"; rather, as the County itself alleges, Distributors have distributed actual controlled substances, which are not subject to Section 481.1191.  *See id.* § 481.002; 2d Am. Pet. ¶¶ 298, 357.

Nor does the TCSA imply a private right of action for damages.  Texas follows a "rule of strict construction" and will imply a private cause of action "only when a legislative intent to do

so appears in the statute as written." *Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004). No such intent appears in the text of the TCSA. To the contrary, the text creates a comprehensive enforcement scheme that excludes the possibility of an implied civil damages remedy. Certain provisions of the TCSA are enforceable by administrative penalties imposed by the Texas Department of State Health Services, *e.g.*, Tex. Health & Safety Code § 481.301, and others are enforceable by criminal prosecution or civil penalties owed to the state, *e.g.*, *id.* § 481.128. In the particular circumstance that the Legislature intended to permit enforcement by a private damages action—the "synthetic substance" provision—it did so expressly. The County's attempt to engraft a private damages remedy onto the TCSA is inconsistent with the text of the statute and should be rejected.

### B. The TCSA's "Valid Medical Purpose" Requirement Does Not Apply To Distributors.

The County's first TCSA claim against Distributors is premised on the allegation that Distributors violated § 481.071 "by dispensing or delivering a controlled substance, or causing a controlled substance to be administered, when there is no valid medical purpose." 2d Am. Pet. ¶ 357. The County alleges that Section 481.071 imposed a duty on Distributors "to monitor the flow of opioids by acting as a gatekeeper between physicians and pharmacies and patients." *Id.* ¶ 358. But wholesale distributors have no such duties under Section 481.071.

First, Distributors are not subject to any duty arising under Section 481.071 because that section applies only to "practitioners," which, for purposes of Section 481.071, are defined as medical professionals:

> a physician, dentist, veterinarian, podiatrist, scientific investigator, or other person licensed, registered, or otherwise permitted to distribute, dispense, analyze, conduct research with respect to, or administer a controlled substance ***in the course of professional practice or research*** in this state.

Tex. Health & Safety Code § 481.002(39)(A).  Wholesale distributors are none of those things because they do not engage in the "professional practice" of medicine or healthcare.[16]

Second, Distributors do not engage in the conduct prohibited by Section 481.071 because they do not "prescribe, dispense, deliver, or administer a controlled substance or cause a controlled substance to be administered **under the practitioner's direction and supervision** except for a valid medical purpose **and in the course of medical practice**."  *Id.* § 481.071(a). Distributors do not practice medicine, treat patients, or even come into contact with patients.[17] Nor are there allegations that could support such a claim without running afoul of Rule 13 of the Texas Rules of Civil Procedure.[18]

---

[16] The County also asserts that Distributors' "failure to rein in the endless supply of opioids" somehow "deceive[d] practitioners treating Dallas County residents into prescribing opioids without any valid medical purpose."  2d Am. Pet. ¶ 359.  Besides the fact that such an assertion is not plausible on its face, it is not actionable under § 481.071 because that section does not apply to Distributors for the reasons given above, does not prohibit "deceiving practitioners," and regulates the practitioner's conduct without saying anything about the acts of non-practitioners.

[17] "*Administer*" is defined as "to directly apply a controlled substance by injection, inhalation, ingestion, or other means to the body of a patient or research subject by:  (A) a practitioner or an agent of the practitioner in the presence of the practitioner; or (B) the patient or research subject at the direction and in the presence of a practitioner," Tex. Health & Safety Code § 481.002(1); "*Deliver*" is defined as "to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship.  The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia," *id.* § 481.002(8); "*Dispense*" is defined as "the delivery of a controlled substance in the course of professional practice or research, by a practitioner or person acting under the lawful order of a practitioner, to an ultimate user or research subject. The term includes the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for delivery," *id.* § 481.002(12); "*Prescribe*" is defined as "the act of a practitioner to authorize a controlled substance to be dispensed to an ultimate user," *id.* § 481.002(40).

[18] The allegation that Distributors "dispense" opioids is baseless and belied by the County's Petition.  The TCSA defines "dispense" as "the delivery of a controlled substance in the course of professional practice or research, by a practitioner or person acting under the lawful order of a practitioner, *to an ultimate user or research subject*."  Tex. Health & Safety Code § 481.002(12).  The term applies to persons like pharmacists, who deliver drugs directly to patients.  *See id.* § 481.002(13).  It does not apply to wholesale distributors who ship drugs to pharmacies, not end users.  *See* 2d Am. Pet. ¶ 21 ("Distributor Defendants …. sold [opioids] to pharmacies throughout Dallas County.").

Third, wholesale distributors cannot know which prescriptions are for "valid medical purposes" and which ones are not because they do not know which patients receive prescriptions, in what amounts, or the medical rationale for the individual prescriptions.  In fact, federal law prevents Distributors from knowing which patients received opioid medications or why.  *See* 45 C.F.R. § 164.502; *see also* Tex. Health & Safety Code § 481.076 (barring release of the Board of Pharmacy's patient information, except to pharmacists, practitioners, and other specified officers and entities).  Distributors therefore cannot have a duty to act as "gatekeeper[s]" to police the prescribing practices of state-licensed medical professionals, 2d Am. Pet. ¶ 358, when federal and state law prevents them from even accessing this information.

### C.  The TCSA Does Not Require Distributors To Track Suspicious Opioid Prescriptions and Halt Supply.

In its second TCSA cause of action, the County alleges that Distributors breached a duty to track suspicious opioid prescriptions and to halt the supply of opioids suspected of diversion. 2d Am. Pet. ¶¶ 363–66.  This allegation has no basis in law.  No provision of the TCSA establishes such a duty.  The County does not even attempt to cite any section of the statute to support its claim.

The County's claim also has no basis in fact because Distributors do not and cannot evaluate the nature of opioid prescriptions.  Distributors supply wholesale drug orders received from pharmacies.  Distributors do not receive information about the individual prescriptions that make up those wholesale orders.  In fact, the TCSA prohibits Distributors from obtaining information about patient prescriptions or their medical rationale.  *See* Tex. Health & Safety Code § 481.076 (regulating who may access official prescription information); *accord* 45 C.F.R. § 164.502 (federal medical privacy regulations).

The TCSA reflects the Legislature's understanding that manufacturers, distributors, and medical professionals like pharmacists and physicians have different roles and responsibilities in the delivery system for controlled substances.  Because the TCSA does not impose a duty on wholesale distributors to monitor prescriptions, the County's Sixth Cause of Action should also be dismissed.

## IV.   THE NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS HAVE NO BASIS IN LAW OR FACT.

The gravamen of the County's negligence and gross negligence claims is that Distributors breached a duty to monitor and halt suspicious pharmacy orders.  *See*, *e.g.*, 2d Am. Pet. ¶¶ 268, 275, 292, 294, 347.  While the federal CSA requires Distributors to report suspicious opioid orders to the DEA, the Texas Controlled Substances Act ("TCSA") contains no analogous requirement—and, in any event, the County has no right to bring a civil action for damages for violation of the TCSA.  *See supra* Part III(A).  As such, the County's negligence claims can survive only if Distributors have a common-law duty to monitor and halt suspicious opioid orders, and if that duty runs to the County.  There is no such duty, and there are no allegations of any breach by Distributors.  The County's negligence claims thus have no legal or factual basis.

### A.   The County Fails To State a Claim for Negligence.

To state a claim for negligence, a plaintiff must allege: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).  The County fails properly to allege any of these elements.

#### 1.   The County does not properly allege that Distributors owed it a duty.

The threshold inquiry in a negligence case is duty, and the existence of a duty is a question of law for the court to decide.  *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d

523, 525 (Tex. 1990).    Where the plaintiff fails to allege a legally recognized duty, the negligence claim should be dismissed.

The County does not identify a legal duty that Distributors owed to it.  The County asserts that "Distributor Defendants have a duty to exercise ordinary care in distributing opioids."  2d Am. Pet. ¶ 347.  But at least one court applying Texas law has declined to impose such a common-law duty on pharmaceutical distributors.  *See, e.g.*, *Kadi v. Henry Schein, Inc.*, 2014 WL 1118139, at *2 (E.D. Tex. Mar. 19, 2014) (declining to impose a duty on a defendant pharmaceutical distributor to prevent unauthorized orders for drugs).

The County also asserts that Distributors "breached their duty" by "failing to prevent or reduce the distribution of opioids even if there existed suspicion for diversionary purposes"; "to monitor suspiciously high" and "nontherapeutic opioid prescription orders"; and failing to report suspicious opioid pharmacy orders.  2d Am. Pet. ¶¶ 272, 273, 286–92, 347.  The County, however, cites no authority for the existence of any of those alleged duties.  None of those duties arise under the Texas Controlled Substances Act, *see supra* Part III(C), and creating such common law duties for the first time here would fly in the face of Texas law for three reasons.

First, "foreseeability of the risk is the foremost and dominant consideration" in determining the existence of a duty.  *Phillips,* 801 S.W.2d at 525.  The County has not alleged any injury that was "foreseeable" to Distributors.  The Petition asserts that, through a "well-funded deceptive marketing scheme," Manufacturers changed the standard of care for prescribing opioids for long-term use for chronic pain.  *E.g.*, 2d Am. Pet. ¶¶ 56–57.  But if the standard of care changed, and doctors prescribed in good faith pursuant to that new standard, then Distributors cannot be faulted for supplying the orders that pharmacies placed to fill those prescriptions.  Thus, to claim that Distributors (who are not alleged to have played any role in the

Manufacturers' purported marketing campaign) should have foreseen the County's alleged harm is to contend that they should have second-guessed both the Texas doctors who prescribed opioid medications and the DEA, which authorized a 39-fold increase of the manufacturing quotas for prescription opioids based on its expert judgment that there was an increasing legitimate medical need for opioids, *see supra* n. 2.

Second, while the County alleges that Distributors failed to "prevent diversion" of opioids, 2d Am. Pet. ¶ 276, Distributors have no duty to prevent the criminal conduct of third parties who illegally divert opioids after they have left Distributors' custody. Texas courts have recognized that there generally is no duty to protect against harm caused by a third party unless the defendant has a "special relationship" with the third party or the potential victim. *See, e.g., Tex. Home Mgmt., Inc. v. Peavy,* 89 S.W.3d 30, 34 (Tex. 2002); *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006). The County has not pled any facts suggesting that Distributors have a "special relationship" with, or ability to control the conduct of, the Texas doctors, pharmacists, patients, or others who criminally diverted the opioids that Distributors lawfully delivered to pharmacies within the County. *See Praesel v. Johnson,* 967 S.W. 391, 397–98 (Tex. 1998) (explaining that the factors necessary for the court to impose a common-law duty include whether the defendant had "a right to control the actor who caused the harm").

In an analogous situation, the Austin Court of Appeals found that a wholesale beer distributor did not owe a legal duty to a plaintiff who was harmed by intoxicated people at a music festival. *Schmidt v. Centex Beverage, Inc.*, 825 S.W.2d 791 (Tex. App.—Austin 1992, no writ). The plaintiff in *Schmidt* argued that the wholesale beer distributor created a harmful situation because it had knowledge of the festival's policy of providing free beer to its volunteers and had a duty to prevent or reduce distributions to avoid such harm. The Court held plaintiff

38

failed to allege a legal duty because "[d]istributors have neither a right to control the amount of alcohol served nor a statutory duty to do so." *Id.* at 793.  Just as in *Schmidt*, the County has failed to allege that Distributors had either the ability or a duty to control the amount of opioid medications prescribed and dispensed by DEA-registered and Texas-licensed doctors and pharmacies in the County.

Third, to state a claim for negligence, "[t]he plaintiff must establish both the existence and the violation of a duty owed ***to the plaintiff*** by the defendant."  *Phillips,* 801 S.W.2d at 525.  The County has not alleged that Distributors have any relationship with the County that conceivably could give rise to a duty running to it.  Thus, even if Distributors have some monitoring or reporting duties under Texas law, the County has not established that those duties run to the County.

### 2.    The County does not adequately allege breach of any duty.

The County also fails to establish any legal or factual basis for a claim that Distributors breached any duty.   Although the County alleges that Distributors should have reduced distribution of opioids where there was "suspicion of diversionary purposes," 2d Am. Pet. ¶ 347, it fails to identify even a single pharmacy that placed a "suspicious" order shipped by a Distributor, let alone tie any such order to the County's alleged injuries.  The Petition's wholly conclusory allegations of breach are insufficient under Texas law.  *See GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)); *Vasquez v. Legend Nat. Gas, LP*, 492 S.W.3d 448, 451 (Tex. App.—San Antonio 2016, pet. denied) (same).

### B. The County Fails To State a Claim for Gross Negligence.

Where a claim of negligence fails for lack of legal and factual basis, including the failure to plead a cognizable legal duty, a claim of gross negligence based on the same conduct must fail as well. *See Swim v. Bank of Am., N.A.*, 2012 WL 170758, at *8 (N.D. Tex. Jan. 20, 2012) (dismissing plaintiff's gross negligence claims because the underlying tort claims were being dismissed); *see also City of Waco v. Kirwan*, 298 S.W.3d 618, 623 (Tex. 2009) ("As with negligence actions … a defendant may be liable for gross negligence only to the extent that it owed the plaintiff a legal duty."). The County's gross negligence claim is predicated on precisely the same allegations of duty and breach as its negligence claim. *Compare* 2d Am. Pet. ¶¶ 346–348, *with id*. ¶¶ 351–353. The gross negligence claim thus likewise fails as a matter of law.

### V. THE FRAUD CLAIM HAS NO BASIS IN LAW OR FACT.

To state a claim for fraud, a plaintiff must allege: "(1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). A fraud claim should be dismissed if the plaintiff fails to allege facts to support each element. *Weizhong Zheng v. Vacation Network, Inc*., 468 S.W.3d 180, 186 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *DeVoll v. Demonbreun*, 2014 WL 7440314, at *3 (Tex. App.—San Antonio, Dec. 31, 2014, no pet.). The County fails to plead facts establishing ***any*** of the elements of fraud.

According to the County, Distributors "made representation[s] that they were taking action to prevent the opioid oversupply and abuse while recognizing they were in a unique

position to do so." 2d Am. Pet. ¶ 331. The following are examples of the types of statements the

County attributes to Distributors:

- "We challenge ourselves to best utilize our assets, expertise and influence to make our communities stronger and our world more sustainable, while governing our activities as a good corporate citizen and with a belief that doing 'the right thing' serves everyone." 2d Am. Pet. ¶ 276 (referencing Cardinal).

- Cardinal uses "'advanced analytics,'" and is being "as effective and efficient as possible in constantly monitoring, identifying, and eliminating any outside criminal activity." *Id.*

- "McKesson publicly claims that its 'customized analytics solutions track pharmaceutical product storage, handling and dispensing in real time at every step of the supply chain process.'" *Id.* ¶ 277.

- "McKesson has also publicly stated that it has a 'best-in-class controlled substance monitoring program to help identify suspicious orders,' and claimed it is "'deeply passionate about curing the opioid epidemic in our country.'" *Id.*

- AmerisourceBergen is "'work[ing] diligently to combat diversion'" and "'is committed to the safe and efficient delivery of controlled substances to meet the medical needs of patients.'" *Id.* ¶ 278 (brackets supplied by County).

- AmerisourceBergen uses "'complex algorithms to identify and stop orders … deemed to be suspicious,'" and has "'reported and stopped ***tens of thousands*** of suspicious orders since 2007, not to mention the countless other orders that the pharmacies never had the opportunity to place because [AmerisourceBergen] declined to serve them altogether.'" *Id.* ¶ 286 (emphasis added by County).

- Cardinal operates a "'state of the art, constantly adaptive system to combat opioid diversion,'" "'engage[s] directly with pharmacists'" to learn more about their business, *id.* ¶ 289, and "'refuse[s] to supply controlled substances to any pharmacy customer where [Cardinal] believes there is an unreasonable risk of medication diversion.'" *Id.* ¶ 291.

For multiple reasons, these statements are not actionable as fraud.

First, statements that Distributors are as "effective and efficient as possible" or that they

have a system that is "best in class" or "state of the art" or that they believe that they "work

diligently" and use their "best assets" are non-actionable statements of opinion. *See Prudential*

*Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 163 (Tex. 1995) (statements that building

41

was "superb," "super fine," and "one of the finest little properties in the City of Austin" were not misrepresentations of material fact that could constitute fraud).

Second, the County fails to allege that the statements were false. For example, the County pleads no facts that demonstrate that McKesson does not "'use customized analytics solutions [to] track pharmaceutical product storage, handling and dispensing,'" 2d Am. Pet. ¶ 277, or that AmerisourceBergen has not stopped "'tens of thousands of suspicious orders since 2007,'" *id.* ¶ 286, or that Cardinal has not "refuse[d] to supply" pharmacies where it found an unreasonable risk of diversion, *id.* ¶ 291.

Third, the statements are immaterial as a matter of law. A representation is material if it would be important to a reasonable person in making a decision in connection with a transaction. *E.g.*, *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). A representation that is vague or imprecise is not material. *E.g.*, *Cadle Co. v. Davis*, 2010 WL 5545389, at *8 (Tex. App.—San Antonio, Dec. 29, 2010, pet. denied) ("Vague assurances that no reasonable person would rely upon are not actionable misrepresentations."); *see also In re Media Arts Grp., Inc.*, 116 S.W.3d 900, 910 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). The County does not identify any actions it took (or refrained from taking) as a result of the alleged statements. Therefore, it has failed adequately to allege materiality. *E.g.*, *Chico Auto Parts & Serv. v. Crockett*, 512 S.W.3d 560, 576 (Tex. App.—El Paso 2017, pet. denied) (holding that representation was immaterial when it had no bearing on any action that plaintiff would have taken).

Fourth, the County has not pled that it relied on any of the alleged statements. *DeVoll*, 2014 WL 7440314, at *3 (affirming dismissal of fraud claim based on failure to plead reliance). None of the alleged statements was made to the County. And the Petition fails to allege that the

County took (or did not take) any actions based upon the statements.  Indeed, the County fails even to allege that it was aware of the statements.  *See, e.g.*, *Va. Oak Venture, LLC v. Fought*, 448 S.W.3d 179, 186 (Tex. App.—Texarkana 2014, no pet.) (no reliance when there was no evidence that plaintiff received appraisal before closing).  Instead, the County alleges only that the "treating medical community and consumers in Dallas County" relied on Distributors' purported misrepresentations.  2d. Am. Pet. ¶ 341; *see also id.* ¶ 343.  But under established law, such allegations of third party reliance are insufficient.  *See, e.g.*, *JPMorgan Chase Bank*, 546 S.W.3d at 653 ("the plaintiff must show that it actually relied on the defendant's representation"); *Fought*, 448 S.W.3d at 186 (purchaser of property could not claim reliance based on lender's reliance on allegedly fraudulent appraisal).

Finally, the Petition does not allege that Distributors made the statements with the requisite fraudulent intent.  In order to allege intent, a plaintiff must show that the defendant had "information that would lead a reasonable man to conclude that there is an especial likelihood" that the information will reach plaintiffs "and that it will influence their conduct" and that the plaintiff "incurred pecuniary loss in the type of transaction in which [the maker of the representation] intends or has reason to expect [his or her] conduct to be influenced."  *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 581 (Tex. 2001).  The Petition's failure plausibly to allege that Distributors intended for their statements to influence the County thus provides a still-further basis for dismissal of the fraud claim.  *See, e.g.*, *Wooley*, 447 S.W.3d at 76 (for a claim to survive a Rule 91a motion, it must contain "'enough facts to state a claim to relief that is plausible on its face'" (quoting *GoDaddy.com,* 429 S.W.3d at 754)).

## VI.    THE UNJUST ENRICHMENT CLAIM HAS NO BASIS IN LAW OR FACT.

The County's unjust enrichment claim has no legal or factual basis for several reasons.  As a threshold matter, "an adequate legal remedy may render … unjust enrichment …

unavailable." *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005).  Here, the County seeks recovery under the legal remedies of public nuisance, negligence, and fraud. Accordingly, the County's unjust enrichment claim should be dismissed as duplicative.  *See R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 704 (Tex. App.—Waco 2008, pet. denied) (barring unjust enrichment where an "adequate legal remedy was available").

Even setting aside that threshold bar, the unjust enrichment claim fails on its own terms. "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  None of these elements is met here.

First, although the Petition alleges that Distributors "profited" from the County's opioid purchases, 2d Am. Pet. ¶ 370, it does not allege that the County conferred a benefit on Distributors—let alone a ***direct*** benefit.  The County does not allege that it paid any money to Distributors or had any sort of commercial relationship with Distributors.  While the County alleges that it paid for opioids, *id.*, it does not allege that it purchased those opioids from wholesale distributors.  Thus, if the County enriched anyone when it paid for opioids, it was the County employees who obtained the opioids or the retail pharmacies who received the County's payments, ***not*** Distributors.

The only courts to apply Texas law to an unjust enrichment claim based on a theory similar to the County's rejected it.  *See Texas Carpenters Health Benefit Fund*, 21 F. Supp. 2d at 678; *State v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 972 (E.D. Tex. 1997) ("The Court has found no case, nor has the State cited any, in which a Texas court has addressed or adopted this theory of restitutionary recovery.").  In *Texas Carpenters*, for example, labor unions' health benefit funds brought unjust enrichment claims against tobacco companies, alleging that they paid more

44

for smokers' healthcare costs due to the tobacco companies' malfeasance, including misrepresenting the health consequences of smoking, and that the tobacco companies "benefitted from increased sales as a result." 21 F. Supp. 2d at 666–67, 678. The court rejected the claim because "payment of the Participants' medical expenses did not enrich [the tobacco companies]." *Id.* at 678. The court explained that the "costs expended by the Funds arose by reason of the applicable collective bargaining agreements," and that "[a]ny other such benefit that the Funds attempt to claim inured to [the tobacco companies'] benefit is too indirect, remote and speculative to support recovery under this theory." *Id.* Likewise here, Distributors have not received a direct benefit from the County, and any attempt to attribute a benefit to Distributors is "too indirect, remote and speculative" to support a claim for unjust enrichment.

Second, even if the County paid for increased health care benefits for its employees and social services for its residents, "[u]njust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant." *Heldenfels Bros.,* 832 S.W.2d at 42. Instead, to plead unjust enrichment, a plaintiff must allege that the defendant "obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Id.* at 41. While the County alleges that "Defendants … misrepresented the material facts regarding the risks and benefits of opioids," 2d Am. Pet. ¶ 371, it does not plead any facts showing that Distributors played a role in Manufacturers' purported misrepresentations regarding the risks of opioid use. *See supra* Part I(E). Moreover, as the County acknowledges, it is "obligated to provide healthcare coverage to its employees and … to provide public services to its citizens." 2d Am. Pet. ¶ 321. The fact that the County provided those benefits and services did not create any expectation that Distributors would reimburse the County.

## VII.   THE CIVIL CONSPIRACY CLAIM HAS NO BASIS IN LAW OR FACT.

To state a claim for civil conspiracy, the County must allege "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). The County's civil conspiracy claim fails for several reasons.

First, the County fails adequately to allege an underlying tort. "Civil conspiracy is a derivative tort under Texas law. If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails." *Hanold v. Raytheon Co.*, 662 F. Supp. 2d 793, 808 (S.D. Tex. 2009) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). The civil conspiracy count refers only to the underlying tort of fraud. 2d Am. Pet. ¶¶ 376, 379, 384. For reasons already explained, *supra* Part V, the Petition fails to state a claim for fraud against Distributors. Thus, the civil conspiracy claim also fails.[19]

 Second, the County does not adequately allege the existence of an overt act in support of the alleged conspiracy by Distributors. Although the County asserts that Distributors assisted Manufacturers in selling opioids in exchange for a fee, 2d Am. Pet. ¶¶ 21–22, 301, it fails to allege even a single instance in which a Distributor **knowingly** provided substantial assistance to a Manufacturer's effort to mislead doctors, patients, or the public regarding the risks and benefits of opioid medications. *See Firestone Steel*, 927 S.W.2d at 614 ("For a civil conspiracy to arise, the parties must be aware of the harm or the wrongful conduct at the beginning of the combination or agreement. One cannot agree … to commit a wrong about which he has no knowledge."). The Petition thus fails to plead an "overt act" on the part of Distributors.

---

[19] The County could not base its civil conspiracy claim on the underlying tort of negligence. "Civil conspiracy is an intentional tort." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996). "Because a conspiracy requires intent, parties cannot conspire to be negligent." *Id.*

Third, the County fails adequately to allege the existence of a conspiratorial agreement. For instance, the County alleges in conclusory fashion that Distributors had "an actual *or tacit* agreement" that they would "not report[] the unlawful distribution practices of their competitors to the authorities."  2d Am. Pet. ¶ 382.  But the County fails to plead ***facts*** suggesting that Distributors were even aware of the distribution practices of their business competitors, let alone any agreement not to report a competitor's orders.  *See Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) ("merely proving a joint intent to engage in the conduct that resulted in the injury is not sufficient to establish a cause of action for civil conspiracy").

The County also suggests that Manufacturers and Distributors engaged in routine commercial activities, such as participation in trade organizations and commercial contractual relationships, *see*  2d Am. Pet. ¶¶ 301–11, and that the alleged "joint scheme" had the goal to "expand opioid use" and "to engage in the unlawful sale of prescription opioids, *id.* ¶ 379.  But such activities—selling FDA-approved prescription drugs, seeking to increase market shares, growing profits, and participating in trade associations—do not give rise to a reasonable inference that Distributors came to a meeting of the minds with Manufacturers or one another to commit a tort.  Of particular note, nowhere does the Petition allege facts showing that Distributors played any role in Manufacturers' alleged fraudulent marketing efforts, which are at the core of the County's theory of liability.  *See Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995) ("One cannot agree … to the commission of a wrong which he knows not of.").

Fourth, the County fails to allege damages proximately caused by the conspiracy.  *See*, *e.g.*, *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 881 (Tex. 2010); *see also supra* Part I(E).  For this reason, too, the civil conspiracy claim fails.

47

## CONCLUSION

For the foregoing reasons, the County's claims against Distributors should be dismissed with prejudice.

Respectfully submitted,

*/s/   Craig Smyser*

Craig Smyser
Texas Bar No. 18777575
csmyser@skv.com
Tyler G. Doyle
Texas Bar No. 24072075
tydoyle@skv.com
David Isaak
Texas Bar No. 24012887
disaak@skv.com
Razvan Ungureanu
Texas Bar No. 24085630
razvan@skv.com
Kristin Adler
Texas Bar No. 793233
kadler@skv.com
Michelle S. Stratton
Texas Bar No. 24085606
mstratton@skv.com
Crystal Robles
Texas Bar No. 24083754
crobles@skv.com
SMYSER KAPLAN & VESELKA L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
Phone:  713-221-2300
Fax:  713-221-2320

842113.1

*Of Counsel*:

Mark H. Lynch
Christian J. Pistilli
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC  20001
Phone:  202-662-5342

Sonya D. Winner
Cortlin H. Lannin
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Phone:  415 591 6000

*Counsel for Defendant*
*McKesson Corporation*

*/s/ Stan Perry*
Stan Perry
Texas Bar No. 15799920
sperry@reedsmith.com
Michael H. Bernick
Texas Bar No. 24078227
mbernick@reedsmith.com
Rachel A. Buchhorn
Texas Bar No. 24105552
rbuchhorn@reedsmith.com
REED SMITH LLP
811 Main Street, Suite 1700
Houston, Texas 77002-6110
Phone:  713-469-3800
Fax: 713-469-3899

*Counsel for Defendant*
*AmerisourceBergen Drug Corporation*

842113.1

*/s/ Michael W. Mengis*

Michael W. Mengis
*Attorney-in-Charge*
Texas Bar No. 13941040
mmengis@bakerlaw.com
Matt R. Raley
Texas Bar No. 24051224
mraley@bakerlaw.com
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, Texas  77002
Phone:  713-751-1600
Fax:      713-751-1717

*Of Counsel*:

Enu Mainigi
emainigi@wc.com
F. Lane Heard
lheard@wc.com
Steven M. Pyser
spyser@wc.com
Ashley W. Hardin
ahardin@wc.com
WILLIAMS & CONNELLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Phone:  202-434-5000
Fax:      202-434-5029

*Counsel for Defendants
Cardinal Health, Inc.
and Cardinal Health 110, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was forwarded to all counsel of record via the Court's electronic filing system on March 29, 2019.

*/s/   Craig Smyser*
Craig Smyser
*Liaison Counsel for Distributors*