# Exhibit 9

```
 1                  REPORTER'S RECORD
                 VOLUME 1 OF 1 VOLUME(S)
 2

 3           TRIAL COURT CAUSE NO. 2018-63587

 4

 5                          )     IN THE DISTRICT COURT
     MASTER CASE            )
 6                          )
     TEXAS OPIOID LITIGATION )    HARRIS COUNTY, TEXAS
 7                          )
                            )     152ND JUDICIAL DISTRICT
 8

 9

10

11

12           -------------------------------------

13

14                    REPORTER'S RECORD

15

16           -------------------------------------

17

18

19

20         On the 26th day of July, 2019, the following

21   proceedings came on to be heard in the above-entitled

22   and -numbered cause before the Honorable Robert

23   Schaffer, Judge presiding, held in Houston, Harris

24   County, Texas:

25            Proceedings reported by machine shorthand.
```

```
1                    A P P E A R A N C E S

2

3    Mr. Jay Henderson
     FIBICH LEEBRON COPELAND BIGGS
4    SBOT NO. 09424050
     1150 Bissonnet Street
5    Houston, Texas  77005
     (713) 751-0030
6    ATTORNEY FOR THE PLAINTIFF COUNTIES

7    Mr. Jeffrey B. Simon
     SIMON GREENSTONE PANATIER
8    SBOT NO. 00788420
     3232 McKinney Avenue
9    Suite 610
     Dallas, Texas  75204
10   (214) 276-7680
     ATTORNEY FOR THE PLAINTIFF COUNTIES

11
     Mr. Michael T. Gallagher
12   SBOT NO. 07586000
     Ms. Pamela McLemore
13   SBOT NO. 24099711
     THE GALLAGHER LAW FIRM
14   2905 Sackett Street
     Houston, Texas  77098
15   (713) 222-8080
     ATTORNEY FOR THE PLAINTIFF COUNTIES

16
     Mr. Joseph B. Deacon
17   PHIPPS DEACON PURNELL, PLLC
     SBOT NO. 24096725
18   102 9th Street
     San Antonio, Texas  78215
19   (210) 340-9877
     ATTORNEY FOR THE PLAINTIFF COUNTIES

20
     Ms. Nolle M. Reed
21   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     SBOT NO. 24044211
22   1000 Louisiana Street
     Suite 6800
23   Houston, Texas  77002
     (713) 655-5122
24   ATTORNEY FOR THE PURDUE PHARMA, LP; PURDUE PHARMA, INC.;
     AND THE PURDUE FREDERICK COMPANY, INC.

25
```

```
 1                    A P P E A R A N C E S

 2

 3   Mr. Craig Smyser
     SMYSER KAPLAN & VESELKA, L.L.P.
 4   SBOT NO. 18777575
     700 Louisiana Street
 5   Suite 2300
     Houston, TX  77002
 6   (713) 221-2330
     ATTORNEY FOR McKESSON CORPORATION, McKESSON
 7   MEDICAL-SURGICAL INC., AND WALSH DISTRIBUTION, LLC

 8   Mr. Patrick K. Sweeten
     OFFICE OF THE ATTORNEY GENERAL, CONSUMER PROTECTION
 9   DIVISION
     SBOT NO. 00798537
10   P.O. Box 12548
     Austin, Texas  78711
11   (512) 463-4139
     ATTORNEY FOR THE STATE OF TEXAS
12
     Mr. Richard Schechter
13   LAW OFFICE OF RICHARD SCHECHTER, P.C.
     SBOT NO. 17735500
14   One Greenway Plaza
     Suite 740
15   Houston, Texas  77046
     (713l) 623-8919
16   ATTORNEY FOR TRAVIS COUNTY

17   Ms. Misty A. Farris
     FEARS NACHAWATI
18   SBOT NO. 00796532
     5473 Blair Road
19   Dallas Texas  75231
     (469) 221-9186
20   ATTORNEY FOR JOHNSON COUNTY

21   Mr. Roger L. McCleary
     PARSONS McENTYRE McCLEARY PLLC
22   SBOT NO. 13393700
     One Riverway
23   Suite 1800
     Houston, Texas  77056
24   (713) 960-7315
     ATTORNEY FOR MALLINCKRODT, LLC

25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I N D E X

VOLUME 1

(REPORTER'S RECORD)

|                                      | Page | Vol. |
|--------------------------------------|------|------|
| JULY 26, 2019                        |      |      |
| Appearances......................... | 2    | 1    |
| Court adjourned...................... | 44   | 1    |
| Court Reporter's Certificate......... | 45   | 1    |

1                         (Open court.  No jury present.  All parties

2                         appeared before the Bench)

3                         THE COURT:  Okay.  I have to start this --

4    this is Judge Schaffer.  We're getting ready to start

5    here.

6                         I have to start this on a somewhat

7    unpleasant note.

8                         Yesterday I got a -- a letter sent to me by

9    Barbara Canales, the county judge of Nueces County.  It

10   was sent directly to me, requesting that Nueces County

11   be considered as one of the early bellwether trial

12   settings.

13                        Who here is on -- here on behalf of Nueces

14   County?  Mr. Schechter?

15                        MR. DEACON:  I'm here on behalf of Nueces.

16                        THE COURT:  Is -- are either of y'all aware

17   of this letter?

18                        MR. DEACON:  Yes, Your Honor.  I sent it to

19   you.  I sent the letter to you, forwarded it as an

20   attachment that she had -- wanted it sent to you.

21                        THE COURT:  Did you send it to anyone else

22   besides the Court?

23                        MR. DEACON:  We filed it, so it would be --

24                        THE COURT:  Okay.  Well, this is an

25   improper communication directly to the Court.  This is

1  an ex parte communication which should not have been

2  sent directly to the Court.  It's improper, and I don't

3  want to see it happen again.

4            MR. DEACON:  Yes, Your Honor.

5            THE COURT:  All right.  Is there any

6  misunderstanding there?  She should not be writing

7  directly to the Court asking that they be considered a

8  bellwether case.  I didn't know it came direct from you.

9  I thought it came directly from her.

10            MR. DEACON:  No.  It came from me.  We sent

11  it to you as an attachment --

12            THE COURT:  And if anyone wants a copy,

13  I've made copies here.  Please ask.

14            I guess since it came through you, I don't

15  really have to tell the county judge not to communicate

16  directly with the Court, because you should know better.

17            MR. DEACON:  We will tell her.

18            THE COURT:  If anybody needs a copy of

19  this, I have a copy up here.  You can get it when this

20  hearing is over.

21            I see we have some new players since the

22  last time we met.  Several counties are -- new counties

23  are here, Jim Hogg County, Jim Wells, Kleberg County,

24  Williamson, Johnson County.  The City of Houston is

25  here, and the Fire and Police Protection Retiree

1   Healthcare Plan of San Antonio are now here; is that

2   correct?  Does that sound like everybody?

3              MR. SCHECHTER:  Roughly, Your Honor.

4              THE COURT:  Okay.  All right.  When we last

5   met, we discussed the Court having conversations with

6   Professor Francis McGovern, and I got several letters

7   from some of the attorneys on the plaintiffs' side

8   encouraging me to contact Professor McGovern.

9              I did have a conversation -- three

10   conversations with Professor McGovern.

11              There was a concern raised by, I think,

12   Mr. Smyser about -- directly about me contacting or

13   discussing with Professor McGovern the Harris --

14   remanding the Harris County case.

15              I want everyone to know that I did talk to

16   Professor McGovern.  He did ask me about the -- the

17   Harris County case.  My comment to him was:  The --

18   the -- that Judge Polster should decide on whether to

19   remand the Harris County case based on whatever

20   considerations he is required to consider and none

21   other.

22              I did not ask him to send it back, and that

23   was really the gist of our conversation.  It went really

24   no further than that.

25              So if there's a concern on your part,

1  Mr. Smyser, or on anyone else's part, that's basically

2  what the conversation was.

3          MR. SMYSER:  I'm satisfied, Your Honor.  No

4  concern on my part.

5          MR. GALLAGHER:  Your Honor, may I be heard

6  on that for one moment?

7          THE COURT:  You certainly can,

8  Mr. Gallagher.

9          MR. GALLAGHER:  What was contemplated in

10  that context was a procedure that had been put in place

11  by Judge Polster previously, where if he was contacted

12  regarding a remand, he would then notify all parties who

13  were involved in the litigation, give them an

14  opportunity to make their objections, and then in the --

15  in the case of a few enumerated counties, Harris County

16  being one of them, he would make a ruling after all

17  parties had appeared.

18          So I didn't want to leave you with the

19  impression that it was a -- an ex parte communication or

20  anything of that nature or -- or for you to become an

21  advocate on our behalf.

22          It was merely to try to get him to do that

23  which we've been unsuccessful.

24          THE COURT:  I didn't take it as that.

25          MR. GALLAGHER:  All right.

1          THE COURT:  Mr. Gallagher, I really didn't.

2  I just -- when the conversation started, he asked me

3  whether or not they wanted me -- I wanted them to refer

4  this -- remand it back to Harris County.  And I said

5  that's completely up to -- to Judge Polster.

6          That -- that it would be welcome back here

7  if filed, but -- I mean, if done.

8          But if it wasn't done, we had plenty of

9  other cases to -- to consider in our bellwether trial

10  determination.  So I didn't -- I didn't consider it an

11  ex parte communication.

12          MR. GALLAGHER:  Thank you, Your Honor.

13          MR. SMYSER:  And just to complete the

14  circle, Your Honor, yesterday or the day before,

15  Judge Polster issued a remand order for two cases where

16  state district court judges had let the Court know that

17  they were interested in having the cases remanded.  And

18  Judge Polster said he was doing it this time, but he

19  would accept no more requests from state court judges

20  for remand.

21          THE COURT:  That -- that thought was never

22  even remotely discussed between Mr. McGovern and I,

23  Professor McGovern.

24          MR. SMYSER:  Right.

25          THE COURT:  I shouldn't say "remotely."

1          He did say:  Do you want -- is that what
2  you want to happen.
3          And I said:  That's completely up to
4  Judge Polster.
5          I was not aware of this other -- other
6  thoughts that y'all are referring to at this point.
7          I just decided it's up to Judge Polster to
8  make that call.  It's not up to me.  And I kind of agree
9  with you, Mr. Smyser, that that wasn't necessarily a
10  one-on-one conversation that should be had.
11          MR. SMYSER:  Thank you, Your Honor.
12          THE COURT:  Okay.  There's a -- Mr. Smyser,
13  you, I think, said -- or somebody said something
14  regarding amending the order regarding McKesson.
15          MR. SMYSER:  Yes, Your Honor.  We -- the --
16  the parties before the order was originally entered had
17  reached an agreement on the wording of the order that
18  was slightly different.  The same substance, but
19  slightly different than the order the Court entered.
20          And we spoke with plaintiffs, and they said
21  they would not oppose an entry of the order that we
22  agreed to originally.  And I have submitted a motion and
23  asked the Court to enter that amended order recognizing
24  McKesson citizenship in Texas.
25          THE COURT:  All right.  Give me an idea

1  where that order is.  Do you have a date that it --

2         MR. SMYSER:  It has been filed -- I think

3  it was filed on Monday.

4         THE COURT:  Twenty-second?

5         MR. SMYSER:  I believe that's correct.

6         THE COURT:  Yes, I see Amended -- Proposed

7  Amended Order on Plaintiffs' Motion for Judicial Notice

8  regarding McKesson.

9         MR. SMYSER:  Yes, Your Honor.

10        THE COURT:  Is that the one?

11        MR. SMYSER:  Yes.

12        THE COURT:  Any objections to the Court

13 entering this amended order from the plaintiffs?

14        MR. HENDERSON:  No, sir.

15        THE COURT:  That's done.

16        MR. SMYSER:  Thank you, Your Honor.

17        THE COURT:  You're welcome.  I received a

18 couple of notes from y'all regarding petitions from writ

19 of mandamus, love notes.

20        I prefer the way Ms. Reed sent it to me as

21 opposed to the way Mr. Smyser sent it to me.

22        MR. SMYSER:  Which is?  Your Honor, I'm not

23 aware of the difference.

24        THE COURT:  That's from Ms. Reed, and

25 that's from Mr. Smyser.

1          MR. SMYSER:  Is Your Honor asking me to
2   take those back?
3          THE COURT:  Yes.  And send it to me in a
4   flash drive.
5          MR. SMYSER:  Your Honor, it strikes me that
6   Mr. Gallagher hasn't read this yet.  Maybe --
7          THE COURT:  I have a sneaking suspicion
8   Mr. Gallagher will not read it.
9          Okay.  Let's talk about bellwether trials.
10          MS. REED:  Your Honor, you may not yet
11   have -- we filed today a manufactures' statement on
12   bellwethers.
13          I don't -- I have a printed copy to hand up
14   to the Court in the case the Court doesn't have it yet.
15   I know the distributors as well filed a petition paper.
16          THE COURT:  The only thing I have filed
17   today is your note on the writ of mandamus.
18          MS. REED:  If I can approach, Your Honor.
19          THE COURT:  Sure.  Come on up.
20          MS. REED:  And plaintiffs already have a
21   copy of this, and I will bring up also the distributors'
22   copy.
23          MR. SMYSER:  Mine is largely moot now,
24   because they -- I did not read -- I had not seen their
25   paper, excuse me, Your Honor, before I arrived, and had

1  filed a paper on Burleson County.  And it's one of the

2  counties that the manufactures live.

3            THE COURT:  Okay.

4            MR. SMYSER:  So my paper is not necessary.

5            THE COURT:  So yours is solely -- Burleson

6  is your choice?

7            MR. SMYSER:  Correct.

8            THE COURT:  Okay.

9            MS. REED:  And it overlaps the four from

10  which we would like the defense bellwether chosen.

11            And I should be clear, Your Honor, we

12  stated it in our position paper.  I'm mindful that while

13  I'm the liaison for the manufacturer defendants, and

14  Mr. Smyser is liaison for the distributor defendants,

15  there are other defendants.  There are defendants that

16  are not in either of those groups, and we've not

17  conferred with them.

18            Some of them are only recently -- I believe

19  we may have, now, one pharmacy defendant who's come back

20  as one of the remands and hasn't had the opportunity to

21  weigh in.  And of course we have the individuals,

22  individual doctors, individual -- others who we don't

23  really have an effective communication with.

24            THE COURT:  Okay.  I just thought of this,

25  and I didn't think of it earlier because the monitor is

1  blocking my court reporter.  Has everybody identified

2  themselves so the court reporter knows who's speaking

3  here today?  I didn't think so.  I'm really sorry.

4          Do you have -- let's just say from this

5  point on when you speak, identify yourself so the court

6  reporter knows who's speaking.  I mean, y'all can pass

7  the cards over to them at that time.

8          Okay.  One of the letters -- one of the

9  multitude of letters that I got in the last three days

10  from both sides was, I think, one from you,

11  Mr. Schechter, about a suggestion regard the plaintiffs'

12  bellwether cases, that I should pick more than one.

13          MR. SCHECHTER:  Your Honor, I have

14  joined -- I'm not sure that that was in the letter we

15  sent.

16          Richard Schechter, on behalf of a series of

17  different plaintiffs.  But we believe the Court should

18  pick more than one, absolutely.

19          THE COURT:  And I had every intention of

20  doing that.  I'd planned to pick at least two at this

21  point today.  And -- and we can talk about two more.  I

22  agree with you, that there should be two picked for each

23  trial setting, because cases do settle, or if things

24  happen.

25          MR. SCHECHTER:  I think that letter came

1  from Mr. Perdue and Mr. Deacon, but I'm in total

2  agreement with you.

3             THE COURT:  Now that you mention that, I

4  think that's correct.

5             MR. SCHECHTER:  And the plaintiffs are in

6  agreement with that.

7             THE COURT:  Fine, yeah.

8             MR. SCHECHTER:  We think that at least four

9  should be picked.  That's the bare minimum.

10            MS. REED:  Well, Your Honor, we think --

11 four, meaning:  Two for Bellwether 1; two for

12 Bellwether 2.

13            THE COURT:  Yes.

14            MS. REED:  We're in agreement with that as

15 well.  I think that's the most we can possibly prepare

16 in the time that's been allotted.

17            I do want to point out that I believe, in

18 addition to their own letter, I believe the County of

19 Nueces is among the potential bellwethers.  Insys -- as

20 far as we know, is still in that case.  There may be

21 some confusion.  You recall that Insys has filed

22 bankruptcy.  And so there's -- we're stated to them.

23            There may be some confusion, because I

24 believe that's a case in which Insys is not in the

25 caption, but is identified as a defendant in the body.

1  So that may be why it didn't nonsuit, but we do need to

2  be wary of it.

3           THE COURT:  Has Insys been non-suited in

4  the other cases.

5           MS. REED:  There are five cases, we

6  believe, that still include Insys, the County of

7  Harrison, the County of Johnson, County of Nueces,

8  County of Waller, and the Fire and Police Retiree

9  Healthcare Fund.

10          THE COURT:  Okay.  Of the six counties that

11 were in Mr. Simon's letter of June 10, 2019, Bexar

12 County, Hidalgo County, and Cameron County are listed as

13 counties with Insys in the file, and now you're saying

14 Nueces County and Nueces County Hospital District has

15 also got Insys in the case?

16          MS. REED:  Our records show that they do.

17 And again, I think perhaps they neglected to nonsuit

18 because I don't think Insys is in the caption.  I do

19 believe they are identified as a defendant in the body.

20          MR. SCHECHTER:  Your Honor --

21          MS. REED:  That's what our records show.

22          MR. SCHECHTER:  -- I don't have the

23 pleading in front of me.  It was our specific intent not

24 to suit Insys, so I would be surprised if they're in.

25          But if they're in, Your Honor, at this

1   time, we ask the Court to allow us to nonsuit Insys, to

2   take an oral nonsuit.

3                    THE COURT:  The Court accepts the oral

4   nonsuit.

5                    MR. SCHECHTER:  We'll follow with an order,

6   Your Honor.

7                    THE COURT:  Very good.

8                    Okay.  So if we're going to do this two and

9   two, two for the first setting and two for the second

10  setting, I'm presuming that the manufacturers and the

11  distributors are good with the list that Ms. Reed has

12  provided the Court today, Angelina, Freestone, Kendall,

13  and Burleson Counties, right?

14                   MS. REED:  Yes, Your Honor.  That's the

15  manufactures' list.  I believe --

16                   THE COURT:  Okay.

17                   MS. REED:  -- the distributors may have a

18  different position.

19                   THE COURT:  Mr. Smyser?

20                   MR. SMYSER:  Your Honor, I have submitted

21  Burleson County because that's a county we are defendant

22  in.  And I take no position on a county in which I'm not

23  a defendant.

24                   And I would only note, also for the Court,

25  sort of a special pleading on this issue of -- of two

1    and two, which is:  Two counties were original

2    bellwethers, are now original bellwethers in the

3    national MDL.  And there were a 190 depositions taken of

4    witnesses in the Texas MDL -- only defendants in the

5    Texas MDL.

6              And -- and having two cases going and 190

7    depositions, I -- I -- I can't -- I'm not Skadden.  I

8    can't pick up the phone and say:  Send down twelve more

9    lawyers.

10             Nor do I have a sea of lawyers at my

11   command.

12             THE COURT:  I don't think anyone on that

13   side can make a phone call and say:  Send down twelve

14   more lawyers either.

15             (Multiple parties speaking)

16             MR. SMYSER:  So I just note --

17             MS. REED:  I'd be happy to loan them some.

18             MR. SIMON:  We can't afford one.

19             THE COURT:  To the -- to all the defendants

20   here, is there any objections from the non --

21   non-manufactures to the Court considering these four

22   counties as the defendants' bellwether counties,

23   selections for bellwether counties?

24             MR. SMYSER:  Your Honor, as I said, I'm not

25   in a position to object.  I have not considered them.  I

1  got this -- these counties identified to me shortly as

2  the Court did.

3            THE COURT:  Okay.

4            MR. SMYSER:  So I'm not in a position to

5  object to them.  I'm not a defendant in them as far as I

6  know, which is why I don't have information on them.

7            THE COURT:  Okay.

8            MR. SMYSER:  But I -- obviously, Burleson

9  County is the distributor --

10            THE COURT:  Very well.  Does anybody else

11  on the defense side want to weight in on that?  Okay.

12            On the plaintiffs' side, y'all want to make

13  a last pitch for one county or the other, because I'm --

14  I'm in a position where I've got -- I've got six

15  counties identified, three of which are the Insys

16  counties.

17            Have -- has Insys been non-suited out of

18  Bexar County, Hidalgo County, and Cameron County?

19            MR. DEACON:  Your Honor, they -- I

20  represent Bexar County, and they've been non-suited out

21  of Bexar County.

22            THE COURT:  They're out of Bexar County?

23            MR. GALLAGHER:  They're not out --

24            MR. DEACON:  Barry Deacon.

25            MR. GALLAGHER:  -- as of this moment, but

1  they will be out shortly.

2              THE COURT:  Of which one?

3              MR. GALLAGHER:  Of Cameron and Hidalgo.

4              THE COURT:  Yes, ma'am?

5              MS. FARRIS:  Misty Farris of Fears

6  Nachawati.  Johnson County should also be on the list.

7  It was just remanded.  And I believe that Insys is out

8  of the case.  If it is not, we will take care of it

9  immediately.

10             THE COURT:  Okay.  Yes, ma'am.

11             MS. MCLEMORE:  Pam McLemore with the

12  Gallagher Law Firm.  Insys is out of Cameron and Hidalgo

13  Counties.

14             MR. GALLAGHER:  Mike Gallagher with the

15  Gallagher Law Firm.  Thank you for that.

16             THE COURT:  Okay.  Is there a last pitch

17  for one or the other?

18             MR. SCHECHTER:  Just, Your Honor, one other

19  name to add to the litigation.  After we submitted this

20  list, the City of Houston filed suit.  And the counsel

21  who represent the City of Houston asked that the City of

22  Houston be considered as a potential bellwether as well.

23             THE COURT:  Okay.

24             MR. SIMON:  Your Honor, I just want to be

25  clear -- I'm Jeffrey Simon of Simon Greenstone.

1          If you're asking whether or not we want to

2     advocate for one county over another, admittedly we feel

3     constrained to do that.

4               THE COURT:  I understand that.  Actually

5     that was my question.  I just wanted to see if you

6     wanted to.  I thoroughly understand the constraints that

7     keep you from doing so.  Okay.  So -- all right.

8               Do we have a docket control order, a

9     scheduling order that the parties have worked on?

10              MS. REED:  Yes.  We have three docket

11    control orders that the parties have worked on.

12              I think that the manufacturers' group, the

13    distributors' group, and the plaintiffs' group each

14    prepared docket control orders, and frankly spent quite

15    a bit of time exchanging and discussing the various

16    deadlines.

17              I think that I can speak for the entire

18    group in saying -- as we did so, we realized that so

19    much turned on the selection of the case that we had

20    real trouble, particularly with the fairly aggressive

21    schedule that will need to happen in order to have a

22    trial date when the Court would like to have it, which

23    is October of 2020.

24              So as we worked backwards -- for example,

25    some of the candidates for bellwether selection have

1   four defendants in them at the moment.  And we don't
2   know who may be added and how many there ultimately may
3   be.
4           Some of them have more like fourteen
5   defendants in them.  That also created problems with who
6   gets to participate in discussing the DCO.
7           And so I think our uniform position was
8   that if the Court can select the bellwethers, we can
9   very quickly then take the three orders that we have --
10  and I do have copies of them here, if the Court would
11  like to see them.
12          But we just had trouble working out the
13  dates and figuring out who could be in the
14  conversations, because we don't know who's in the cases
15  that will be tried yet, and how many of us there are.
16          THE COURT:  Okay.  So if I were to ask you
17  a particular county, could you tell me how many
18  defendants there were in that case?
19          MS. REED:  I have a handy dandy chart, Your
20  Honor.  So yes, I think I can.  Or at least, I had a
21  handy dandy chart.  Do I have a copy of my chart?  Oh
22  here it is.  Thank you.  Yes.
23          THE COURT:  All right.  Let's just go down
24  the list from the plaintiffs' letter.  Dallas County?
25          MS. REED:  Dallas county has twenty-two

1    defendants, fourteen manufacturers, five distributors,

2    and three individual petitioners.

3              THE COURT:  El Paso County?

4              MS. REED:  El Paso County:  Twenty-two

5    defendants, eighteen manufacturers, and four

6    distributors.

7              THE COURT:  Bexar County?

8              MS. REED:  Bexar County:  Thirty

9    defendants, twenty-seven manufactures, and twelve

10   distributors.

11             THE COURT:  Hidalgo County?

12             MS. REED:  Hidalgo:  Twenty-four

13   defendants, twenty manufactures, and four distributors.

14             THE COURT:  Cameron County?

15             MS. REED:  Cameron:  Twenty-four

16   defendants, twenty manufactures, and four distributors.

17             THE COURT:  Nueces County?

18             MS. REED:  Forty-one defendants,

19   twenty-nine manufactures, and twelve distributors.

20             THE COURT:  The City of Houston?

21             MS. REED:  City of Houston:  Thirty

22   defendants, twenty-seven manufacturers, and three

23   distributors.

24             THE COURT:  Did y'all say Johnson County

25   was added to our list here?

1           MS. FARRIS:  Yes.

2           THE COURT:  Johnson County?

3           MS. REED:  Forty-three defendants,

4    twenty-eight manufactures, eight distributors, four

5    pharmacies, and three others -- which I assume are

6    individuals, Your Honor.

7           THE COURT:  Okay.  All right.  How about in

8    Angelina County?

9           MS. REED:  At the moment, nine defendants,

10   all manufactures.

11          We do understand that plaintiffs intend to

12   amend and add defendants or may, but that's at that

13   moment.

14          THE COURT:  Freestone?

15          MS. REED:  Also nine manufacturing

16   defendants, and that's it.

17          THE COURT:  Kendall?

18          MS. REED:  Nine manufacturer defendants.

19          THE COURT:  Burleson?

20          MS. REED:  Burleson:  Twenty-four

21   defendants, twenty manufactures, and forty distributors.

22          THE COURT:  Okay.  All right.  So in the --

23   on the plaintiffs' side, the first two counties the

24   Court is going to select are -- is Dallas County and

25   Bexar County.

1          Now, before we go further than that, if --
2   if we have those two counties set for the first
3   bellwether trial, and Dallas is listed first and -- and
4   Bexar County is listed second, if Dallas goes, shouldn't
5   Bexar County then be the next one up in the second round
6   of bellwethers?
7          MS. REED:  Oh, not for us too.  We should
8   have a defense bellwether before we go to a --
9          THE COURT:  I know that.  I know that.
10         MS. REED:  But yes, that makes sense.
11         THE COURT:  On Plaintiffs' Bellwether 2, if
12  Dallas County goes, should Bexar be the first one up in
13  the second plaintiffs' county?
14         MR. SIMON:  Yes, Your Honor, because it
15  would be more worked-up presumably --
16         THE COURT:  Exactly.
17         MR. SIMON:  -- closer to time.
18         THE COURT:  Exactly.  So for the second
19  plaintiffs' bellwether trial, should I pick two
20  counties, two fresh counties, or one?
21         MR. GALLAGHER:  Three.
22         THE COURT:  Thank you, Mr. Gallagher, for
23  making that easier.
24         MR. GALLAGHER:  No.  But I would like to
25  say, Your Honor, that, you know, you've got multiple

1  counties up there, and picking two more for the next

2  setting seems to be reasonable.

3          Otherwise, we've been here a long time, and

4  we've got to get on with the getting on.

5          THE COURT:  Right.  I -- I completely agree

6  with you.

7          MR. GALLAGHER:  And in that regard, for

8  El Paso, Hidalgo, and Cameron, I can tell you that we

9  are going to pare down significantly the number of

10  defendants in our case, and will probably end up with

11  just -- maybe two distributors and one -- one or two

12  manufactures.  But that's going to be done very quickly.

13          THE COURT:  Okay.  And for -- it's

14  understood that if the Dallas -- if the number one case

15  in the first case goes to trial, then the number two

16  case in the first case will be the first up in the

17  number two plaintiffs' case.

18          Does everybody follow that, because I'm not

19  sure I did.

20          Okay.  And let's add El Paso County and --

21  and Cameron County for the number two cases.

22          And on the -- the defendant's bellwether

23  cases, why don't we just take them in order that they're

24  on this list.

25          And the first -- the -- the first defendant

1  case, Angelina, and Freestone, and the second defendant

2  case, Kendall, and Burleson.

3              Now is -- yes, ma'am?

4              MS. REED:  I apologize, Your Honor.  I

5  don't mean to skip ahead.  But based on Mr. Gallagher's

6  statement, we would suggest then, if -- particularly if

7  we're going to take a twenty-four-defendant case and

8  pare it down to being three or four defendants, that

9  would significantly streamline the DCO process.  And it

10 really does matter for who gets a voice in that DCO

11 process.

12             I would recommend that we set a deadline, a

13 prompt deadline, for the amendment of pleadings in these

14 cases so that we know what kind of scheduling we can

15 work out and who should be participating in opposing

16 that.  We can do it very quickly once we know who's in

17 and who's out.

18             MR. GALLAGHER:  The problem with that is

19 under Texas law, we have a right to take a nonsuit

20 anytime we want.

21             THE COURT:  True.

22             MR. GALLAGHER:  But we will accommodate the

23 Court by trying to deal with this issue promptly.

24             THE COURT:  Yeah.  It -- it -- I can see

25 where it matters how these dates get set, especially if

1  twenty-four -- twenty-two defendants each want to

2  identify an expert witness or three.  That would

3  complicate the -- the deposition process enormously.

4          Do you have -- are we able to agree on a

5  DCO for the first round of plaintiffs' cases from what

6  we've done so far?

7          MS. REED:  We certainly can negotiate the

8  specifics now of the dates for the cases that you've

9  selected for Bellwether 1.

10         The issue though, again, becomes:  If they

11 really are going to drop a bunch of defendants, or even

12 add them -- in particular, if they're going to add them.

13         Dropping them is less -- a little less of a

14 problem, because those folks won't participate.  I'm

15 sure they'll be delighted to be dropped from the case.

16         But if they're going to add anyone, those

17 parties should get an opportunity to participate.  And

18 frankly, some of the -- while I understand the reasons

19 that the plaintiffs proposed a fairly late amendment

20 date on the type of trial schedule the Court is looking

21 to set, we can't be adding parties at the close of fact

22 discovery.  It's -- it's just not going to work.  We

23 can't --

24         THE COURT:  No.  And I agree with that.

25 And I think the joinder date is a -- is a really

1  important date from this -- at this point, so that

2  y'all -- the plaintiffs understand the nature of their

3  case at this point, and should be able to sue anybody

4  that they -- or add parties, I would think, promptly, as

5  opposed to January or February of next year.

6          MR. SIMON:  So big picture, and the result

7  of our meet and confers about what we could agree and

8  disagree on, on the manufacturers' docket control order,

9  the big picture item that separated us was the issue of

10 when we would amend parties.

11         We are sensitive to precisely the issues

12 that Your Honor has described, which is:  They should

13 know, you should know, everyone should know who's in and

14 who's out in a relatively prompt basis.

15         The challenge for us is, is that there are

16 parties that we would like to amend in, but the risk of

17 removal and not getting a ruling, and then going to the

18 Federal MDL is very high, and we have to think about

19 that.

20         On the other hand, getting empty-chaired to

21 death -- which we will begin to see develop over the

22 course of discovery -- is something we need to get our

23 arms around too.  Where are they pointing and should we

24 be bringing those parties into the case to defend

25 themselves or not against this risk of removal?

1          So finding that tension in a manner that we

2  can agree upon was the issue.  But I'm less concerned

3  about whether we will ultimately make an agreement about

4  that and never have to bring it to Your Honor's

5  attention.

6          THE COURT:  Well, I think something else

7  that's the big elephant in the room that nobody

8  apparently wants to talk about is the extent to which

9  any of the parties in this case decide bankruptcy is the

10  better place to go.

11          I'm not looking at anyone in particular on

12  that particular issue, but these are -- this is -- this

13  is a big deal.

14          If -- if one or more of these folks get hit

15  with a huge verdict, who knows what will happen.  And so

16  bankruptcy is an issue that we have to think about as

17  well.

18          MR. SIMON:  You're absolutely right, Your

19  Honor.  And so we're going to have to -- as best we can,

20  predict the future.  And I would predict, relative to

21  this narrow issue, can we come up with a joinder date

22  that both sides can live on, I suspect so.

23          On the distributor side, they had discovery

24  parameters that we disagreed with in certain respects

25  that I doubt we would come to some agreement about.

1             And I'm not critiquing them.  They see the

2    world one way, we see it another.  We'll have to go back

3    to work on that.  We'll have to do substantial work on

4    that.

5             The goal will be to work it out.  But there

6    was more distance between us over that set of issues

7    than there was about finding a date for the last date to

8    joinder.

9             THE COURT:  Is there still a reason to

10   think that you can discuss it and work it out?

11            MR. SIMON:  Yes.

12            MS. REED:  I think absolutely, Your Honor.

13            MR. SMYSER:  Your Honor, I think so.

14            In fact, what I said was:  We need to have

15   in place a mechanism for determining number of hours

16   parties are going to have for depositions, the number of

17   depositions, all those sort of granular detail of

18   running a case this big.

19            There will be a period of time in -- in the

20   docket control order for -- for written discovery.  And

21   it seems to me that once we have a bellwether, and once

22   we agree on some of these basics dates, that we can then

23   say:  Let's agree that within the next 30 days, we'll

24   hammer out agreement on these issues that will become

25   important when we start to take depositions.

1          MS. REED:  So the one thing I was going to

2     say:  I believe -- and again, I don't want to speak for

3     Mr. Simon, Mr. Smyser, and Mr. McConinco (phonetic) -- I

4     believe that we were all in agreement that it would be

5     appropriate to start written discovery within five days

6     after the Court selected bellwethers.  And that is

7     something we could still do while we're working out the

8     rest of the details of the --

9          THE COURT:  I see no reason why you can't.

10          MS. REED:  And I think it would be very

11     beneficial so that we get this started and are able to

12     start working toward that trial date that the Court

13     would like to --

14          MR. SIMON:  So it is not that I -- I'm so

15     sorry.

16          THE COURT:  Just a minute, Mr. McCleary.

17          MR. SIMON:  It is not that we disagree in

18     concept about that, but there is a detail.

19          The detail is, is that Dallas County is the

20     one county where we served discovery with the petition,

21     and -- I think only one party has answered it -- but

22     we're going to need to withdraw it, because we

23     understand better now than we did a year and a half ago

24     what to ask.

25          So we will do that, and we will reframe

1  discovery.  And the reason we'll do that is not only so

2  that we ask better questions, but because presumably

3  we're going to reach some agreement about how many

4  interrogatories each party needs to ask, and we'd rather

5  them be directed at the right issues.

6                    THE COURT:  Now, Mr. --

7                    MS. REED:  We're fine with that --

8                    MR. McCLEARY:  Thank you, Your Honor --

9                    THE COURT:  We need that -- there we go.

10                    MR. McCLEARY:  Roger McCleary, Parsons,

11  McEntire, and McCleary.  I represent and am appearing

12  only on behalf of Mallinckrodt, LLC, in the cases in

13  which it has appeared, and for the record, subject to,

14  without waiving special appearances filed by any

15  affiliate.

16                    I gave you what I'm referring to as a

17  special appearance waiver, because there's been

18  discussion about conducting paper discovery within five

19  days of the Court's selection of bellwethers.

20                    And there is a process, as the Court is

21  aware, under Rule 120 A for the plaintiffs to obtain

22  discovery as to specially appearing defendants.  And so

23  I would respectfully submit that process needs to be

24  honored and applied in this case also.

25                    THE COURT:  All right.  Which of the eight

1  cases have we discussed here today are you in?

2          MR. McCLEARY:  The Bexar County case,

3  El Paso County, Cameron County, and Burleson.

4          THE COURT:  Is that three?  Three of the

5  eight cases?

6          MR. McCLEARY:  Well, three of the cases

7  that the plaintiffs identified, or you identified, as

8  bellwethers.

9          THE COURT:  Right.

10          MR. McCLEARY:  And then one of the cases

11  that the defendants --

12          THE COURT:  Right.

13          MR. McCLEARY:  -- that you selected from

14  the defendants' list.

15          THE COURT:  Okay.  I'd say let's get that

16  going sooner rather than later.  The extent --

17          MR. McCLEARY:  What -- what we would

18  propose, Your Honor, we need to establish and set

19  hearings on special appearances in these bellwether

20  case -- cases, and we should do that very promptly.

21          THE COURT:  I think we should -- definitely

22  should do that, because if these -- if these defendants

23  are not supposed to be here, we need to get them out

24  before they've incurred the kind of attorneys' fees that

25  they are going to incur in pursuing and going through

1  the process that we've -- we're about to layout.

2                 MR. McCLEARY:  Exactly, Your Honor.

3                 THE COURT:  Anybody on the plaintiffs' side

4  have any comments about that?  Okay.

5                 Mr. McCleary, I'd say get that one teed up

6  and ready to go as soon as you can.

7                 MR. McCLEARY:  I'm happy to work with

8  Ms. Reed and participate in getting this scheduled

9  together.  And obviously, we'll bring any issues to the

10 Court's attention, but -- but that would be one or our

11 first priorities to get those hearings scheduled on

12 special appearances.

13                THE COURT:  Mr. Gallagher?

14                MR. GALLAGHER:  Very quickly, Your Honor.

15 The -- the responsible third-party practice in Texas

16 looms large in the case of this type, particularly where

17 we, on the plaintiffs' side, are trying to streamline

18 our case.  And then the defendants -- within their

19 rights -- designate responsible third parties.

20                If we could -- maybe by agreement, work out

21 something where that will get done as quickly as

22 possible, that would help us.

23                MS. REED:  It's hard to be a plaintiff.

24 But, yeah --

25                THE COURT:  I didn't hear you.

1          MS. REED:  It's hard to be a plaintiff.

2          Mr. Simon and I have had a discussion about

3   where -- what the order of those deadlines should be.

4          It may end up something we need the Court

5   to resolve, but it's certainly on the table for the DCO

6   discussion.  And we'll see where -- whether we can get

7   closer to, or to an agreement.

8          MR. SMYSER:  Your Honor, at the risk of

9   throwing a wrench in the works, the manufacturers and

10  the distributors jointly have agreed to ask the Court to

11  move Burleson to the number two spot behind Angelina

12  County.

13         THE COURT:  I'm not wedded to any

14  particular order.  Y'all can put those in whatever order

15  you want to.

16         MR. SMYSER:  Okay.  Thank you.  We'll do --

17         THE COURT:  That's fine.

18         MR. SMYSER:  -- we'll move Burleson to

19  number two.

20         THE COURT:  Okay.  That's fine.  Okay.

21         I think the responsible third-party

22  discussion -- I think the responsible third-party

23  discussion should be sort of in tandem with the joinder

24  discussion so that we can get who's in and who's out as

25  soon as we can.

1              So to the extent that you need some

2      guidance from the Court on that, I think joinder and RTP

3      discussions should be, if not the same day, close to the

4      same day so that we can bring some closure, at least to

5      that particular item.

6              MS. REED:  It's understood, Your Honor.  Of

7      course, we need to know if there are TPs before we know

8      if there are RTPs.

9              THE COURT:  Understood, understood.  Okay.

10     Anything else on that?  All right.

11             Obviously under Rule 120 A, you can't --

12     you can't conduct any discovery other than

13     jurisdictional discovery.  But I would still say that we

14     need to get other -- get discovery going.

15             And so I think within -- that after today,

16     you should crank it up on both sides.

17             Now, does that -- do we still have a stay

18     in place here?

19             MS. REED:  We do for all the cases except

20     for the five as to which the Court --

21             THE COURT:  Right.

22             MS. REED:  -- ruling denied 1A.  If we

23     are -- I think all of our draft ETOs anticipated that we

24     would just reaffirm the stays on the cases that are not

25     bellwether cases.

1      THE COURT:  Right.

2      MS. REED:  Now, I assume we are not,

3  though -- that we are still staying that second wave of

4  bellwethers, because we can't realistically work up

5  eight case in the timeframe that we are talking about.

6  We really can't.

7      THE COURT:  Really?

8      MS. REED:  Not with 190 depositions.

9      THE COURT:  No.  I'm -- I'm being a little

10  silly here.

11      MS. REED:  People do think that's --

12      THE COURT:  I get that.  I think you should

13  work in a date for commencement of discovery in the

14  second wave of cases into your docket control order, or

15  have a completely different docket control order for the

16  second wave of cases that includes a date for lifting

17  the stay on those particular cases.

18      MS. REED:  We will do that, Your Honor.

19      THE COURT:  Okay.  Anything else?

20      MS. REED:  Should I propose a deadline for

21  the parties to either submit a joint docket control

22  order or competing orders for the Court's resolution?

23      THE COURT:  Yes, you should.

24      MS. REED:  Can we say August 2nd?

25      THE COURT:  If you think it can get done in

1   a week.

2           MR. SIMON:  Admittedly, I leave here from

3   here to San Diego -- not for vacation, although it's a

4   nice place -- and so I would like another week on that

5   if it were possible.

6           MS. REED:  That's fine, Your Honor.

7           THE COURT:  I think one week is overly

8   ambitious myself.

9           MR. SMYSER:  I agree, Your Honor.  I think

10  we need a little more time than that.

11          THE COURT:  That's fine.  Let -- just let

12  the Court know whether it's agreement or not.  Maybe --

13  you may want to set something for submission.

14          If -- if the Court has to decide, then set

15  it for submission.  And -- and then I'll -- that way

16  it -- it will get picked up by the clerks and it will

17  get on my docket and -- and it'll get taken care of

18  quicker.

19          MS. REED:  Or would the Court consider

20  setting a hearing now that we could -- that we could

21  pass in the event that we either reach agreement or we

22  agree that we don't need any -- any presentation to the

23  Court about or respective positions?

24          THE COURT:  I'm -- I'm more than happy to

25  set the hearing if that's what you want.

1          MS. REED:  I think it might be useful.

2          THE COURT:  I don't have any problem with

3    that.  I know it's -- you know, how many people in this

4    courtroom right now?  There's about fifty people in the

5    courtroom right now, and I've tried to inconvenience

6    y'all to the greatest extent possible.  You're welcome

7    here any time you want to come.

8          MS. REED:  We appreciate that, but I think

9    it tends to clarify everyone's thinking.

10         THE COURT:  When do you want to set it, for

11   the -- August 9th?  No that's the two week period.

12         MS. REED:  Right.  August 9th would be the

13   date for submissions.

14         THE COURT:  Right.  August 16th is the next

15   Friday, or if you want to keep on a four to eight week

16   pattern we've got here, that would be the 23rd.

17         MS. REED:  Well, at the 23rd, we're just

18   going to have the status conference.

19         MR. SIMON:  That's fine.

20         MR. SMYSER:  That's fine.

21         MS. REED:  I think that's agreeable.

22         MR. SMYSER:  Yeah.  Yeah.  I'm going to

23   be -- I'm actually going to be out of town on another

24   matter on the 16th of that week, so that -- that -- the

25   23rd works for me.

1            THE COURT:  Do we want to have that for a

2    full-blown status conference?  Do y'all see the need for

3    it?

4            MS. REED:  We can always advise the Court

5    if we think it's unnecessary, but I think they've been

6    very useful.

7            THE COURT:  Okay.

8            MR. GALLAGHER:  Is the docket control order

9    that is being contemplated applicable to not only the

10   first wave of cases, but to the second wave, El Paso and

11   Cameron?

12           THE COURT:  No.  The docket control order

13   we're talking about is for the first two plaintiffs and

14   then the first two defendants.  And then either have a

15   completely separate DCO for the second wave, or work

16   that one into this one as well, but it will be sometime

17   into the future.

18           MR. GALLAGHER:  All right.

19           THE COURT:  Does that make sense?

20           MR. GALLAGHER:  Yes, sir.

21           MR. SIMON:  And just to -- housekeeping

22   matter.  For the Dallas County case, for manufactures

23   and distributors who are in that case, I just am giving

24   you record notice:  If you have not answered the written

25   discovery in that case, do not do it.  It is withdrawn.

1          We will submit a different set of discovery

2    to comport with the parameters of the docket control

3    order that we are contemplating.

4          THE COURT:  I hope that works.

5          MR. SIMON:  Me too.

6          THE COURT:  Okay.  We have got bellwether

7    done, docket control order.  Do we have anything else to

8    discuss?

9          Mr. Sweeten, do you have anything?

10         MR. SWEETEN:  Your Honor, I'm holding my

11   powder until our filling after -- for the effective date

12   of the statute that we --

13         THE COURT:  Right.  Right.  Okay.

14         MR. SWEETEN:  And, Your Honor, I -- I think

15   you wanted to have a hearing after that date.  I wonder

16   if it would be beneficial to set -- you know, we can

17   file the motion sometime in August -- response dates.

18         I mean, I can speak with Ms. Reed about

19   this issue if needed.

20         THE COURT:  Let me ask y'all a question.

21         If he files the motion to remand -- which

22   we all know is coming, so I should take "if" off -- but

23   when he files that, is that -- is that a hearing that's

24   necessary for the whole group to participate in, or can

25   we just do that on a Friday -- on my regular Friday

1   docket?

2           MS. REED:  That's fine for me, Your Honor.

3   I'll obviously be here, and I don't think any other

4   defendant really has an interest in it.

5           MR. SWEETEN:  Yeah.  I -- it would be fine

6   with us.

7           THE COURT:  Yeah, I think that makes sense.

8           MR. SWEETEN:  Okay.

9           THE COURT:  Because I don't know when we're

10  going to get back together after the 23rd.

11          I'm sure it will be in a regular -- on a

12  regular basis, but I know you want to get that heard.

13  Something in my mind tells me you're anxious.

14          So let's -- go ahead and just set that.

15  You talk to my clerk.  Set it for a date that she can

16  work you in, find you a place on the docket.  It

17  shouldn't be that hard to --

18          MR. SWEETEN:  Thank you, Your Honor.  We'll

19  do that.

20          THE COURT:  -- to do.  Okay.

21          All right.  Anything else that we need to

22  talk about?  I think we're getting this done in record

23  time this week.

24          Okay.  We'll see y'all on the 23rd of

25  August at two o'clock.  Have a good weekend.

1               (The Court adjourned the proceeding at

2          2:47 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                      REPORTER'S CERTIFICATE

2    THE STATE OF TEXAS      )

3    COUNTY OF HARRIS        )

4             I, Carl Richard Browning, Official Court

5    Reporter in and for Harris County, State of Texas, do

6    hereby certify that the above and foregoing contains a

7    true and correct transcription of all portions of

8    evidence and other proceedings requested in writing by

9    counsel for the parties to be included in this volume of

10   the Reporter's Record, in the above-styled and -numbered

11   cause, all of which occurred in open court or in

12   chambers and were reported by me.

13            I further certify that this Reporter's Record

14   of the proceedings truly and correctly reflects the

15   exhibits, if any, admitted by the respective parties.

16            I further certify that the total cost for the

17   preparation of this Reporter's Record is $525.00 and was

18   paid/will be paid by the Plaintiff's attorney.

19            WITNESS MY OFFICIAL HAND this the 6th day of

20   July, 2019.
                         /s/ Carl Richard Browning_____
21                       CARL RICHARD BROWNING, Texas CSR 4949
                         Expiration Date:  12/31/19
22                       Deputy Official Court Reporter,
                         152nd Judicial District
23                       Harris County, Texas
                         201 Caroline Street
24                       Houston, Texas 77002
                         (832) 927-5800
25
```