# Exhibit 13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| COUNTY OF ANGELINA, Plaintiff, v. PURDUE PHARMA L.P., *et al*., Defendants. | Case No. 19-cv-3590 |

**PLAINTIFF'S MOTION FOR REMAND**

# TABLE OF CONTENTS

*ISSUE PRESENTED* ............................................................................ *1*

*SUMMARY OF ARGUMENT* ............................................................... *1*

*BACKGROUND* ................................................................................... *2*

*ARGUMENT* ......................................................................................... *5*

    **I.**   **This Court Has A Primary and Independent Duty To Determine Whether Removal Is Valid On an Expedited Basis.** ......................................................... **5**

   **II.**  **McKesson Cannot Remove this Action as a "Federal Officer."** ................... **6**

          A.      McKesson did not "act under" a federal officer. ....................... 7

              1.  Merely selling commercial products to the federal government is not "acting under" a federal officer ................................ 8

              2.  McKesson's diversion monitoring actions were not directed by a federal officer. ....................................................... 11

          B.      There is an Insufficient "Causal Nexus" ................................. 12

          C.      McKesson Has No Colorable Federal Defense. ....................... 15

              1.  No Federal Contractor Defense ......................................... 16

              2.  No Lack of Standing .......................................................... 17

               3.  No Preemption Defense ..................................................... 18

   **III.** **Plaintiff Expressly Disclaimed Any Theory of Recovery Arising Under Federal Law.** .................................................................................. **18**

   **IV.** **The MDL's Order on the Cases Brought by the Indian Tribes is Inapposite** ........... **19**

    **V.**  **Federal Jurisdiction Under § 1442 Would Be Contrary to the Statute's Purpose.** .. **21**

*CONCLUSION* ................................................................................... *22*

# TABLE OF AUTHORITIES

**Cases**[1]

*Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838 (S.D. Ill. 2006) ................................................13

*Arizona v. Manypenny*, 451 U.S. 232 (1981)...............................................................................6

*Bartel v. Alcoa S.S. Co.*, 805 F.3d 169 (5th Cir. 2015)...............................................................12

*City of Granite City, IL v. AmerisourceBergen Drug Corp.*, 18-CV-1367-SMY-DGW, 2018 U.S. Dist. LEXIS 117152 (S.D. Ill. July 13, 2018).................................................................................4

*City of Reno v. Purdue Pharma, L.P.*, No. 3:18-cv-00454-MMD-WGC, 2018 U.S. Dist. LEXIS 187821 (D. Nev. Nov. 2, 2018) ................................................................................................4

*Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976 (S.D. Tex. 2011).......................................................5

*Custer v. Cerro Flow Prods.*, No. 09-514-DRH, 2009 U.S. Dist. LEXIS 116857 (S.D. Ill. Dec. 15, 2009) .........................................................................................................................................15

*Delaware ex rel. Denn v. Purdue Pharma L.P.,* No. 1:18-cv-383, 2018 U.S. Dist. LEXIS 69406 (D. Del. Apr. 24, 2018)...................................................................................................................4

*Dinwiddie County, Virginia v. Purdue Pharma, L.P.*, 3:19-CV-242, 2019 U.S. Dist. LEXIS 102294 (E.D. Va. June 18, 2019)...................................................................................................4

*Dougherty v. A.O. Smith Corp.*, Civ. No. 13-1972-SLR-SRF, U.S. Dist. LEXIS 125302 (D.Del. Sept. 8, 2014) ..............................................................................................................................18

*Dunaway v. Purdue Pharma L.P.*, No. 2:19-cv-00038, 391 F.Supp.3d 802 (M.D. Tenn. May 22, 2019) .............................................................................................................................................4

*E. Carpet House, Inc. v. Dep't of Homeland Sec.*, 430 F. Supp. 2d 672, 674 (S.D. Tex. 2006) .....5

*Fidelitad, Inc. v. Institu, Inc.*, 904 F.3d 1095 (9th Cir. 2018)........................................................15

*Guillory v. Ree's Contract Serv., Inc.*, 872 F. Supp. 344, 346 (S.D. Miss. 1994)........................10

*Illinois Pub. Risk Fund v. Purdue Pharma L.P.*, No. 19 C 3210, 2019 U.S. Dist. LEXIS 117412 (N.D. Ill. July 15, 2019)...................................................................................................................4

---

[1] Copies of authorities not found in the United States Code, United States Supreme Court Reporter, Federal Reporter, Federal Rules Decisions, Federal Supplement, Southwestern Reporter Second or Third, or Vernon's Revised Statutes and Codes Annotated can be found in the Appendix to this Motion as Exhibits 10-34.

*In re Asbestos Litig.*, CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083 (D. Or. February 1, 2002) ....................................................................................................................................................5

*In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 632 (2nd Cir. 1990) ......................16

*In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010) ....................................16

*In re Nat'l Prescription Opiate Litig.*, MDL 2804, 2019 U.S. Dist. LEXIS 6425 (N.D. Ohio Jan. 14, 2019) ....................................................................................................................................4

*In re Nat'l Prescription Opiate Litig.*, MDL 2804, 2018 U.S. Dist. LEXIS 143589 (N.D. Ohio Aug. 23, 2018) ..............................................................................................................................4

*In re National Prescription Opiate Litig.*, 327 F.Supp.3d 1064, 1072 (N.D. Ohio 2018).. 10,19-21

*In re Opioid Litigation*, 2018 N.Y. Slip Op 31228(U) (Sup. Ct. Suffolk Co., N.Y. June 18, 2018) ........................................................................................................................................18

*Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664 (E.D. La. 2007)....................................................9,10

*Kaye v. Sw. Airlines Co.,* No. 05-450, 2005 U.S. Dist. LEXIS 18389 (N.D Tex. Aug. 29, 2015) ........................................................................................................................................7,12

*Kelleher v. A.W. Chesterton Co.*, Case No. 15-CV-893-SMY-SCW, 2015 U.S. Dist. LEXIS 159783 (S.D. Ill. Nov. 23, 2015) ..............................................................................16,19,21

*Kerstetter v. Pacific Sci. Co.*, C.A. No. C-96-512, 1999 U.S. Dist. LEXIS 22536 (S.D. Tex. May 26, 1999) ....................................................................................................................................16

*Lara v. CBS Corp.*, No. CV 13-5569 ABC (MANx), 2013 U.S. Dist. LEXIS 128265 (C.D. Cal. Sep. 6, 2013) ..............................................................................................................................18

*Latiolais v. Huntington Ingalls, Inc.*, 918 F.3d 406 (5th Cir. 2019) ...........................................14

*Legendre v. Huntington Ingalls, Inc*, 885 F.3d 398 (5th Cir. 2018) .............................................14

*Manguno v. Prudential Property & Casualty Ins. Co.*, 276 F.3d 720 (5th Cir.2002) ...................6

*McGee v. Arkel Int'l, LLC*, 716 F. Supp. 2d 572 (S.D. Tex. 2009) ................................................8

*Megill v. Worthington Pump, Inc.*, Civil Action No. 98-76-SLR, 1999 U.S. Dist. LEXIS 4433 (D. Del. 1999) ....................................................................................................................................9

*Morales v. Am. Home Prods. Corp.*, 214 F. Supp. 2d 723 (S.D. Tex. 2002) .................................5

*New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242 (D.N.M. 2018)........4

*Prewett v. Goulds Pumps (IPG)*, No. C09-0838 RSM, 2009 U.S. Dist. LEXIS 91732 (W.D. Wash. Sept. 9, 2009) ..............................................................................................................................15

*Ryan v. Dow Chemical Co*., 781 F. Supp. 934, 947 (E.D.N.Y. 1992) ............................................. 8

*Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016) ................................................ 6,14

*Schulz v. Crane Co*., No.2:13-CV-02370-KJM, 2014 U.S. Dist. LEXIS 9198 (E.D. Cal. Jan. 23, 2014) .......................................................................................................................................... 18

*Shalaby v. Heritage Physician Network*, 364 F. Supp. 3d 693, 696 (S.D. Tex. 2019) .................... 6

*Siders v. 20th Century Glove Corp*., No. 2:15-cv-13278, 2016 U.S. Dist. LEXIS 57210 (S.D. W. Va. 2016) .................................................................................................................................. 6,19,21

*St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524 (E.D. La. 2011) ..................................................................................................................................... 6

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352 (5th Cir. 2019) ............................................................................................................................................................ 14

*State of West Virginia ex rel. Morrisey v. McKesson Corp.*, No. C16-1772, 2017 U.S. Dist. LEXIS 9352 (S.D.W. Va. Jan. 24, 2017) .......................................................................................................... 4

*Texas v. Kleinert*, 855 F.3d 305, 313 (5th Cir. 2017) ................................................................... 15

*Tucson Med. Ctr. v. Purdue Pharma LP*, CV-18-00532-TUC-RCC, 2018 U.S. Dist. LEXIS 213616 (D. Ariz. Dec. 19, 2018) ........................................................................................................ 4

*Uintah County, Utah v. Purdue Pharma, L.P*., No. 2:18-cv-00585-RJS, 2018 U.S. Dist. LEXIS 133310 (D. Utah Aug. 7, 2018) ........................................................................................................... 4

*Uzee v. Huntington Ingalls Inc*., No. 18-6856, 2018 U.S. Dist. LEXIS 164059 (E.D. La. 2018) . 19

*Walek v. Boeing Co*., Case ED CV 15-0309 DOC (DTBx), 2016 U.S. Dist. LEXIS 30406 (C.D. Cal. Mar. 9, 2016) ............................................................................................................................... 15

*Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007) ................................................... 6,7,12,22

*Weber County., Utah v. Purdue Pharma, L.P.*, No 1:18-cv-00089-RJS, 2018 U.S. Dist. LEXIS 133312 (D. Utah August 7, 2018) ........................................................................................................ 4

*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998) ......... 6,7,9,10,12,16

*Wyeth v. Levine*, 555 U.S. 555 (2009) ........................................................................................... 18

*Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017) ................................................................. 7,15

## **Statutes**

21 U.S.C. § 903 ...................................................................................................18

28 U.S.C. § 1442 ...........................................................................................1,4,7,13

28 U.S.C. § 1442(a)(1) ............................................................................. *passim*

28 U.S.C. § 1446 ..................................................................................................4

28 U.S.C. § 1447(c) .............................................................................................1

28 U.S.C. § 2680(a) ...........................................................................................16

Plaintiff, by and through the undersigned counsel, pursuant to 28 U.S.C. §§ 1442 and 1447(c), hereby file this Motion for Remand, along with the Appendix containing the exhibits referenced herewith.

## ISSUE PRESENTED

Defendant McKesson Corporation ("McKesson") improperly removed this Texas state law action, alleging federal officer jurisdiction based on its Pharmaceutical Prime Vendor ("PPV") contract with the National Acquisition Center of the Department of Veterans Affairs. Pursuant to 28 U.S.C. §§ 1442 and 1447(c), immediate remand is warranted.

## SUMMARY OF ARGUMENT

*First*, this Court should determine on an expedited basis whether federal officer jurisdiction exists in this case. This Court's ruling on this remand motion is not affected by the pendency of the motion for transfer to the MDL. This Court retains the authority and responsibility to evaluate subject matter jurisdiction.

*Second,* removal pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), was improper. McKesson resells commercial goods to the federal government. It does not "act under" a federal officer. Moreover, there is no causal nexus between actions undertaken by McKesson under the PPV contract and Plaintiff's state law claims regarding McKesson's failure to identify, investigate and halt shipments of opioid drugs that were of a size or ordering pattern suspicious for diversion to the black market. McKesson provides no evidence that the federal government *actually* directed McKesson to ship suspicious orders into Angelina County. Furthermore, McKesson has no colorable federal defense. Plaintiff has asserted a number of state law claims, none of which are preempted by any federal law or regulation or affect Plaintiff's standing to bring this suit.

1

**Third,** Plaintiff has asserted only state law claims against private corporations for their own actions. Plaintiff expressly disclaims any theory of recovery arising under federal law, including any claims based on McKesson's actions undertaken at the direction of a federal officer.

**Finally**, the assertion of federal officer jurisdiction over Plaintiff's claims would considerably expand the scope of the statute, bringing within its scope state-court actions filed against private firms in many highly regulated industries where there is no indication Congress intended such an expansion. Plaintiff's state law claims against McKesson do not affect federal officials' ability to enforce federal law. The case should be remanded to State Court.

## BACKGROUND

On November 14, 2018, the County of Angelina ("Plaintiff") filed suit against Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Janssen Pharmaceuticals Inc., Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., and Does 1-100 inclusive. ECF No. 1-4, at 4-91. Plaintiff asserted numerous state law claims against Defendants, alleging that they are responsible for the oversupply of opioids in the County because the Distributors flooded the market with opioids despite evidence suggesting suspicion for diversionary purposes. *Id.* On December 11, 2018, counsel for defendants filed a Notice of Transfer of Tag-along Case, and the case was transferred to the Texas Opioid Litigation MDL.[2] ECF No. 1-5, at 4.

On December 13, 2018, the Purdue Defendants removed the case, alleging diversity of citizenship. ECF No. 1-5, at 16-26. The case was remanded on February 22, 2019. *Id.*, at 396.

---

[2] On June 13, 2018, the Texas MDL Panel transferred all pending opioid cases, together with any tag-along cases, to the Honorable David Peeples, senior judge of the 224th District Court of Bexar County, as the pretrial judge for the Texas Opioid Litigation MDL. After Judge Peeples recused himself, the MDL Panel reassigned the proceeding to the Honorable Robert Schaffer of the 152nd District Court of Harris County on September 5, 2018.

On December 14, 2018, Judge Schaffer entered a Case Management Order applying to all cases pending before it as well as any tag-along cases transferred.[3] All proceedings and deadlines in the Texas MDL, with the limited exception of propounding discovery or effectuating service – was stayed. Judge Schaffer lifted the stay for five cases—Dallas County, Delta County, Falls County, Hopkins County, and Travis County—for limited purpose of briefing and resolving Rule 91a motions to dismiss. On March 20, 2019, McKesson, along with Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and Cardinal Health 110, LLC (collectively "Distributors") filed a Rule 91a Motion to Dismiss.[4] On June 6, 2019, the MDL denied Distributors' motion.[5]

On July 26, 2019, Plaintiff was selected as one of four Defense choices to go forward as bellwether trials within the Texas MDL. With input from Defendants, Judge Schaffer has set two of the four defense picks, Plaintiff and Burleson County, for trial in early 2021.[6] Both counties were subsequently removed by Defendants[7].

Plaintiff filed an Amended Complaint on August 23, 2019, adding Defendants Allergan PLC, Actavis, LLC, Actavis Pharma, Inc., AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation, Par Pharmaceutical, Inc., Par Pharmaceutical Companies, Inc., McKesson Corporation, Cardinal Health, Inc., CVS Health Corporation, Walgreen Co., Walgreens Boots

---

[3] *See* Exhibit 1, Case Management Order.
[4] Distributors filed their First Amended Rule 91a Motion to Dismiss on March 29, 2019. *See* Exhibit 2, Distributors' First Amended 91a Motion to Dismis.
[5] See Exhibit 3, Order. On August 23, 2019, the appellate court denied Distributors' petition for a writ of mandamus challenging Judge Schaffer's order denying Distributors' Rule 91a motion to dismiss. *See* Exhibit 4, Court of Appeals Memorandum Opinion. The Texas Supreme Court denied the Distributors' writ on October 18, 2019. *See* Exhibit 5, Supreme Court Orders, October 18, 2019.
[6] *See* Exhibit 6, Transcript of July 26, 2019 Hearing, at 17, 36.
[7] See Exhibit 7, Transcript of October 4, 2019 Hearing, at 13-16.

Alliance, Inc., Morris & Dickson Co., LLC, SpecGX LLC, Amneal Pharmaceuticals LLC, Amneal Pharmaceuticals, Inc., Wal-Mart, Inc., and Does 1-100. ECF NO. 1-5, AT 397-523. McKesson has not yet been served with process.

On September 23, 2019, McKesson removed this case pursuant to 28 U.S.C. §§ 1442 and 1446. ECF No. Doc. 1. After repeated failed attempts to remove other cases on other grounds,[8] McKesson is now attempting to remove this case pursuant to the federal officer removal statute, 28 U.S.C. §1442(a)(1). McKesson claims that its Pharmaceutical Prime Vendor ("PPV") contract with the federal government somehow transforms McKesson from a reseller of pharmaceutical products to a "federal officer."

---

[8] McKesson and other opioid defendants have repeatedly removed the state cases to the federal MDL. In numerous cases across the country, McKesson and other defendants removed on the basis on federal question jurisdiction, only to have the cases remanded. *See, e.g., New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242 (D.N.M. 2018); *Illinois Pub. Risk Fund v. Purdue Pharma L.P.*, No. 19 C 3210, 2019 U.S. Dist. LEXIS 117412 (N.D. Ill. July 15, 2019); *Dinwiddie County, Virginia v. Purdue Pharma, L.P.*, 3:19-CV-242, 2019 U.S. Dist. LEXIS 102294 (E.D. Va. June 18, 2019); *Dunaway v. Purdue Pharma L.P.*, No. 2:19-cv-00038, 391 F.Supp.3d 802 (M.D. Tenn. May 22, 2019); *In re Nat'l Prescription Opiate Litig.*, MDL 2804, 2019 U.S. Dist. LEXIS 6425 (N.D. Ohio Jan. 14, 2019), *mooted by removing Defendants' consent to remand* (N.D. Ohio Jan. 17, 2019); *Tucson Med. Ctr. v. Purdue Pharma LP*, CV-18-00532-TUC-RCC, 2018 U.S. Dist. LEXIS 213616 (D. Ariz. Dec. 19, 2018); *City of Reno v. Purdue Pharma, L.P.*, No. 3:18-cv-00454-MMD-WGC, 2018 U.S. Dist. LEXIS 187821 (D. Nev. Nov. 2, 2018); *In re Nat'l Prescription Opiate Litig.*, MDL 2804, 2018 U.S. Dist. LEXIS 143589 (N.D. Ohio Aug. 23, 2018); *Weber County., Utah v. Purdue Pharma, L.P.*, No 1:18-cv-00089-RJS, 2018 U.S. Dist. LEXIS 133312 (D. Utah August 7, 2018); *Uintah County, Utah v. Purdue Pharma, L.P.*, No. 2:18-cv-00585-RJS, 2018 U.S. Dist. LEXIS 133310 (D. Utah Aug. 7, 2018); *City of Granite City, IL v. AmerisourceBergen Drug Corp.*, 18-CV-1367-SMY-DGW, 2018 U.S. Dist. LEXIS 117152 (S.D. Ill. July 13, 2018); *Delaware ex rel. Denn v. Purdue Pharma L.P.*, No. 1:18-cv-383, 2018 U.S. Dist. LEXIS 69406 (D. Del. Apr. 24, 2018); *State of West Virginia ex rel. Morrisey v. McKesson Corp.*, No. C16-1772, 2017 U.S. Dist. LEXIS 9352 (S.D.W. Va. Jan. 24, 2017).

## ARGUMENT

### I. THIS COURT HAS A PRIMARY AND INDEPENDENT DUTY TO DETERMINE WHETHER REMOVAL IS VALID ON AN EXPEDITED BASIS.

On October 8, 2019, the United States Judicial Panel on Multidistrict Litigation (the "Federal MDL") issued a Conditional Transfer Order to transfer this case (among others) to the Northern District of Ohio for coordinated or consolidated pretrial proceedings. Plaintiff has filed a Notice of Opposition and will be filing a Motion to Vacate the Conditional Transfer Order.

This Court has a "primary and independent duty to determine its own subject matter jurisdiction." *In re Asbestos Litig.*, 2002 U.S. Dist. LEXIS 3083, at *6 (D. Or. February 1, 2002). "It is abundantly clear that a conditional transfer order does not affect or suspend any pretrial proceedings in this Court." *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 978 (S.D. Tex. 2011) (citing *Morales v. Am. Home Prods. Corp.*, 214 F. Supp. 2d 723, 725 (S.D. Tex. 2002)). The existence of the MDL does not obviate this Court's duty to determine, in the first instance, whether jurisdiction over Plaintiff's case exists. *E. Carpet House, Inc. v. Dep't of Homeland Sec.*, 430 F. Supp. 2d 672, 674 (S.D. Tex. 2006) ("[j]urisdiction is a threshold issue to be determined by the court before looking at the substance of the parties' claims"). This Court should evaluate subject matter jurisdiction before any transfer to the Federal MDL occurs. When a federal court lacks subject matter jurisdiction, it should, and must, remand the action to state court.

McKesson improperly removed this action after it was selected as a bellwether in the Texas MDL. The only way to preserve the current schedule and trial date in state court in early 2021 is to have Plaintiff's motion to remand decided on an expedited basis. The briefing schedule imposed by L.R. 7.3 states that an opposed motion will be submitted to the judge 21 days from filing. Plaintiff respectfully requests that this Motion for Remand be decided expediently.

## II.    McKesson Cannot Remove this Action as a "Federal Officer."

The removing party bears the burden of establishing federal jurisdiction over the controversy at issue. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998). McKesson has invoked federal jurisdiction on the grounds that federal officer removal jurisdiction, 28 U.S.C. § 1442(a)(1), applies here. "Because of its broad language and unique purpose, the federal officer removal statute has been interpreted to operate somewhat differently than the general removal provision." *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524, 529-30 (E.D. La. 2011) (citing *Manguno v. Prudential Property & Casualty Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002)). The federal officer removal statute "allows a complaint void of a federal question to nonetheless reach the federal forum if the claims arise under the actions of a federal officer." *Siders v. 20th Century Glove Corp.*, No. 2:15-cv-13278, 2016 U.S. Dist. LEXIS 57210, at *19 (S.D. W. Va. 2016).

The federal officer removal statute permits removal of a state court action against an "officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute is intended to protect federal officers from interference with their official duties through state-court litigation. *See, e.g., Arizona v. Manypenny,* 451 U.S. 232, 241-42 and n.16 (1981). Although courts are ordinarily compelled to resolve any doubts about removal in favor of remand, courts have not applied that tiebreaker when it comes to the federal officer removal statute. *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462 (5th Cir. 2016). Nevertheless, "while the federal officer statute is broad, its scope 'is not limitless.'" *Shalaby v. Heritage Physician Network*, 364 F. Supp. 3d 693, 696 (S.D. Tex. 2019) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007)).

To invoke § 1442(a)(1) removal, a defendant in a state court action must demonstrate (1) that it is a person within the meaning of the statute, (2) that it acted pursuant to a federal officer's directions, (3) that a causal nexus exists between its actions under color of federal office and the plaintiff's claims, and (4) that it has a colorable federal defense. *Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017).

Plaintiff does not dispute that McKesson is a "person" for purposes of § 1442(a)(1), but Plaintiff asserts that McKesson cannot demonstrate the other requirements of federal officer removal. Specifically, McKesson cannot remove because (1) it did not act under federal officer's directions in distributing opioids that it had reason to suspect were being diverted, (2) there is insufficient nexus between any such actions and Plaintiff's claims, and (3) it cannot assert a colorable federal defense.

### A.    McKesson did not "act under" a federal officer.

Section 1442 requires a party seeking removal to establish that it was acting under an officer of the United States or an agency when the acts giving rise to the complaint occurred. 28 U.S.C. § 1442(a)(1). For a private entity to be "acting under" a federal officer, the private entity must be involved in "an effort to assist, or help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. at 150. The relationship typically involves "subjection, guidance, or control." *Id*. at 151. "Government contractors fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." *Id*. (citing *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d at 387). The private entity must "demonstrate that a federal officer has direct and detailed control over it." *Kaye v. Sw. Airlines Co.*, No. 05-450, 2005 U.S. Dist. LEXIS 18389, at *3 (N.D Tex. Aug. 29, 2015). The federal officer's control over the defendant must be such that "the acts that form the basis for the suit were

7

performed pursuant to an officer's direct orders or to comprehensive and detailed regulations."
*McGee v. Arkel Int'l, LLC*, 716 F. Supp. 2d 572, 574 (S.D. Tex. 2009) (quoting *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992)).

McKesson alleges that it acts under a federal officer because it is obligated to supply prescription medications to VA facilities when they are ordered through the PPV contract.[9] McKesson specifically points to the requirements that it fulfill and promptly deliver orders, and a provision indicating that the government may direct McKesson to fill an order it had identified as suspicious. ECF No. 1, at ¶ 19. But merely selling and distributing commercial drugs to the federal government does not constitute "acting under" a federal officer. McKesson has not asserted it was directed or required by a federal officer to distribute opioids in violation of Texas law. More specifically, McKesson has not claimed it was instructed to distribute opioids to a PPV-participating facility in or around Angelina County where it had suspicion that the opioids were being diverted. At most, McKesson has floated a vague suggestion that the federal government *could* have done so.

### 1. *Merely selling commercial products to the federal government is not "acting under" a federal officer.*

In its Notice of Removal, McKesson asserts that it "has the obligation to supply prescription medications to VA facilities when they are ordered by the VA through the PPV contract." ECF No. 1 at ¶ 18. Under the PPV contract, McKesson resells pharmaceutical products – manufactured by other companies – to the federal government. The products it distributes pursuant to the PPV contract are commercial products, the same products McKesson also sells to

---

[9] As of September 16, 2019, there are 798 total participating facilities, only one of which is in Angelina County – a VA Outpatient clinic. *See* Exhibit 8, List of Participating Facilities (filtered for Texas only), downloaded from https://www.va.gov/opal/nac/ncs/ppv.asp on October 14, 2019.

its civilian purchasers. McKesson does not make – or distribute – anything that was made to government specifications.

It is not enough to sell products to the federal government to be considered by to "acting under" the direction of a federal officer – the question is whether the products are made to government specifications. *See Winters*, 149 F.3d at 392 (in "close" case, sales of toxic agent to government were deemed to be "under direction" of government only because the alleged deadly properties of the product "resulted from the particular mixture of the component chemicals that the government dictated"). When a vendor simply sells commercial goods to the government, it is not "acting under" a federal officer, even if such sales are part of a negotiated price/delivery contract. *See Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664 (E.D. La. 2007) ("it is simply not the case that private entities are entitled to a federal forum whenever litigation arises concerning products sold to the federal government"); *Megill v. Worthington Pump, Inc.*, Civil Action No. 98-76-SLR, 1999 U.S. Dist. LEXIS 4433, at *5 (D. Del. 1999) (remanding where "there is no evidence of record that Worthington's commercial products (which comport with commercial specifications) in any way deviated from the products sold to the Navy (which comported with military specifications)").

In *Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664 (E.D. La. 2007), plaintiffs sued the defendants responsible for the manufacture, installation and inspection of a trailer provided by the Federal Emergency Management Agency ("FEMA") for temporary residence following Hurricane Katrina. The defendants argued that federal jurisdiction existed pursuant to the federal officer removal statute, claiming that they were acting under FEMA, a federal agency. The court held that the determination as to whether the defendants were acting pursuant to a federal officer's directions and whether a causal nexus existed between the defendants' action under color of federal office

and the plaintiffs' claims, was dependent upon "the level of official control, and perhaps more to the point, whether the defendant acted sufficiently under the direction of a federal officer in the performance of the acts that form the basis of the suit." *Id.* at 671-72 (quoting *Guillory v. Ree's Contract Serv., Inc.*, 872 F. Supp. 344, 346 (S.D. Miss. 1994)). The court ultimately remanded, holding that:

> …. FEMA merely entered the market for travel trailers as would any other buyer, with certain practical and economic considerations in mind. Although FEMA's purchase orders "establish[] some basic parameters within which [the manufacturers'] services are to be performed," *it is simply not the case that private entities are entitled to a federal forum whenever litigation arises concerning products sold to the federal government.* "While [§ 1442(a)(1)] is to be liberally construed, it must nevertheless be interpreted 'with the highest regard for the right of the states to make and enforce their own laws in the field belonging to them under the Constitution.'" *Id.* at 673 (internal citations omitted) (emphasis added).[10]

If supplying commercial products to the government was sufficient to constitute "assistance" to a government officer, *any vendor* who provided *anything* to the federal government could avail itself of § 1442(a)(1). This is not the law nor what was intended. McKesson's resale of commercial pharmaceutical goods, including opioids, to the government does not entitle it to a federal forum.

---

[10] In *In re National Prescription Opiate Litigation*, the Federal MDL asserted that *Joseph v. Fluor Corp.* was distinguishable because "McKesson is supplying pharmaceuticals pursuant to strict contractual requirements in a highly regulated industry." 327 F.Supp.3d 1064, 1072 (N.D. Ohio 2018). But this is a difference without significance. The fact that the pharmaceutical industry is regulated is insufficient to find that McKesson is acting under the direction of a federal officer. *Winters v. Diamond Shamrock Chemical Co*., 149 F.3d 387 (5th Cir. 1998). Moreover, the contract in *Joseph* is comparable to the PPV contract here – both specified pricing and shipment/delivery requirements but left some of the design up to the defendants. *Joseph*, 513 F.Supp.2d at 672-73. Similarly, the PPV leaves the design and implementation of a monitoring system to detect suspicious orders up to McKesson. The Federal MDL's decision in In re Prescription Opiate Litigation is further distinguished *infra*.

        2.     *McKesson's diversion monitoring actions were not directed by a federal officer.*

McKesson claims that a provision in the PPV contract related to the diversion of pharmaceutical products removes McKesson's discretion to deny any orders under the PPV contract. ECF No. 1, at ¶ 19. The relevant contract provision, AS3023, describes the rights and obligations of McKesson and the contracting officer. Specifically, McKesson is permitted to suspend suspicious orders "because of an expectation that some or all of the orders will be diverted" or "because of a perceived pattern of diversion." Then, only if the contracting officer finds there is no factual basis for McKesson's decision, s/he may direct McKesson to fill the order. AS3023 does not simply remove all discretion from McKesson and require it to ship all orders indiscriminately.

Moreover, McKesson has significant discretion in designing and implementing systems to detect suspicious orders for controlled substances. Indeed, McKesson described its efforts:

> In recent years, McKesson U.S. Pharmaceutical has put great effort into implementing significant enhancements to how it monitors and controls the distribution of controlled substances, referred to as the company's Controlled Substance Monitoring Program (CSMP). McKesson's team includes numerous individuals with significant regulatory and anti-diversion expertise who play a lead role in its due diligence efforts, utilizing advanced analytical tools to closely monitor our customers' purchases. McKesson is proud of its CSMP and will continue its efforts to be an industry leader in the fight against prescription drug diversion.[11]

McKesson's Controlled Substance Monitoring Program has been developed in-house, not at the direction of a federal officer.

---

[11] *See* Exhibit 9, McKesson Press Release entitled "McKesson Finalizes Settlement with U.S. Department of Justice and U.S. Drug Enforcement Administration to Resolve Past Claims," dated January 17, 2017, last viewed on October 14, 2019 at https://www.mckesson.com/about-mckesson/newsroom/press-releases/2017/mckesson-finalizes-settlement-with-doj-and-dea-to-resolve-past-claims/.

Plaintiff's claims against McKesson relate to its failure to monitor the flow of opioids despite evidence suggesting suspicion of diversionary purposes. The PPV contract is silent on how McKesson should monitor distributions, only providing a procedure to follow in instances where McKesson, in its own discretion, determines that an order is suspicious. There is no indication that a federal officer has had any direct or detailed control over McKesson's monitoring for potential diversion. *Kaye v. Sw. Airlines Co.*, 2005 U.S. Dist. LEXIS 18389, at *3.

**B.      There is an Insufficient "Causal Nexus"**

"For removal to be proper, it is necessary but not sufficient for a defendant to show it 'acted pursuant to a federal officer's directions.' The defendant must also show 'that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims.'" *Bartel v. Alcoa S.S. Co.,* 805 F.3d 169 (5th Cir. 2015) (quoting *Winters*, 149 F.3d at 398). *See also, Watson*, 551 U.S. at 147 (stating that removal is permissible only when the defendant is carrying out acts that "are the subject of the petitioners' complaint") (citing 28 U.S.C. § 1442(a)(1)). Plaintiff's claims center around McKesson's failure to act as a gatekeeper and to monitor the flow of opioids into Angelina County. Plaintiff alleges that McKesson continued to disburse and distribute immense amounts of opioids that it knew or should have known had no valid medical purpose. ECF No. 1.

In *Bartel v. Alcoa S.S. Co.*, 805 F.3d 169 (5th Cir. 2015), plaintiffs sued their former employers in state court alleging their injuries were attributable to the employers' failure to warn of the dangers of asbestos, to train their employees, and to adopt procedures for the safe installation and removal of asbestos. The defendants removed, asserting that they acted pursuant to a federal authority because they had contracted with the United States Navy to operate and crew the ships where the plaintiffs were exposed. To support their argument, the defendants pointed to a contract governing the relationship with the federal government, arguing that the vessels were all Navy-

owned. The Fifth Circuit rejected the defendants' argument that the Navy's "mere ownership and *theoretical control* of the vessels provides an adequate 'causal nexus' between the Federal Officer Defendants' actions and the plaintiffs' claims." *Id*. at 172 (emphasis added). The court found no adequate "causal nexus" where there was "no evidence showing that the government *actually* exercised continuing oversight over operations aboard the ship," even where there was a contractual relationship permitting the Navy to do so. *Id*. at 175 (emphasis added). "There is no evidence that the government ever issued orders of any kind, let alone orders relating to safety procedures or asbestos. What little evidence there is suggests the Federal Officer Defendants operated the vessels in a largely independent fashion and, at a minimum, were free to adopt the safety measures the plaintiffs now allege would have prevented their injuries." *Id*. Similarly, there is no evidence that the government issued orders directing McKesson to distribute suspicious orders. McKesson developed and operated its monitoring program in a largely independent manner.

A defendant seeking removal under 28 U.S.C. § 1442 must show that the government compelled it to take an action for which the defendant is sought to be held liable in state court. In other words, the defendant must prove, "The government made me do it." *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 848 (S.D. Ill. 2006). It is not sufficient that the "government *could have* made me do it." The theoretical ability of a federal officer to issue an order overriding McKesson's objections to suspicious orders is insufficient.[12]

"[M]ere federal involvement does not satisfy the causal nexus requirement; instead the defendant must show that its actions taken pursuant to the government's direction or control caused

---

[12] Moreover, as explained *infra*, Plaintiff expressly disclaims any right to recovery for any actions compelled by the federal government pursuant to the PPV.

the plaintiff's specific injuries.'" *Latiolais v. Huntington Ingalls, Inc.*, 918 F.3d 406, 409 (5th Cir. 2019) (quoting *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462 (5th Cir. 2016)). In *Latiolais*, the court held that, though the federal government contractually required the defendant to use asbestos in refurbishing Navy vessels, the defendant "ma[de] no showing that it was not free to adopt the safety measures the plaintiffs now allege would have prevented their injuries." *Id.* at 410 (quoting *Legendre v. Huntington Ingalls, Inc*, 885 F.3d 398, 403 (5th Cir. 2018)). The Fifth Circuit affirmed the district court's remand to state court, noting there was "nothing to suggest that the Navy, in its official authority, issued any orders, specifications or directives relating to safety procedures." *Id.* It was not that the Navy *couldn't*, but rather that the Navy *didn't*.[13]

While the PPV contract permits a federal officer to direct McKesson to fulfill a suspicious order, McKesson has not claimed an officer did so. Neither the PPV contract nor McKesson's Notice of Removal say anything about what has *actually* happened during the course of the relationship between the VA and McKesson, much less what has happened in Angelina County. McKesson has not claimed that the federal government ever actually compelled McKesson to distribute opioids that it should have suspected were being diverted—the conduct that Plaintiff alleges was in violation of state laws. McKesson has not asserted that it has ever refused to fill an order from the VA Outpatient Clinic in Angelina County (or from any other participating facility) that it believed was suspicious, only for the government to order it to do so over its objections. The fact that the federal government *could* have done so is not enough to establish that it was acting

---

[13] In *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352 (5th Cir. 2019), the court found federal officer jurisdiction because the defendant was able to show it was prevented from paying the medical provider directly – the action the plaintiff complained of – by a federal directive. The court distinguished the case from asbestos failure-to-warn cases, where no causal nexus exists because defendants are not prohibited by federal officer or agency from adopting the safety measures the plaintiffs allege would have prevented their injuries.

pursuant to a federal officer's directions. *Fidelitad, Inc. v. Institu, Inc.*, 904 F.3d 1095, 1100 (9th Cir. 2018). McKesson's jurisdictional theory fails because there is no suggestion that the government prevented it from complying with state law. *See Walek v. Boeing Co*., Case ED CV 15-0309 DOC (DTBx), 2016 U.S. Dist. LEXIS 30406, at *15-16 (C.D. Cal. Mar. 9, 2016) (removing defendant "must show that the Government made a discretionary decision … that conflicted with state law, therefore cause[d] the defendant to violate state law") (quoting *Prewett v. Goulds Pumps (IPG)*, No. C09-0838 RSM, 2009 U.S. Dist. LEXIS 91732 (W.D. Wash. Sept. 9, 2009)); *Custer v. Cerro Flow Prods.*, No. 09-514-DRH, 2009 U.S. Dist. LEXIS 116857, at *13 (S.D. Ill. Dec. 15, 2009) ("Defendants have not pointed to any government requirement that prevented them from handling and disposing of the PCBs with care"). Here, McKesson, at most, suggests the federal government *could* have caused it to violate Texas law by ordering it to fulfill suspicious orders (in the PPV channel), but does not claim that the federal government *actually did* so.

There is no causal nexus between McKesson's alleged actions under the "color of federal office" to fulfill a PPV contract obligation and Plaintiff's claims. McKesson has not identified anything the government actually did that prevented it from complying with Texas law. McKesson does not claim that it identified and attempted to stop suspicious orders to Angelina County but the government directed it to ship them anyway.

### C. McKesson Has No Colorable Federal Defense.

To invoke § 1442(a)(1) removal, McKesson must also demonstrate that it has a "colorable" federal defense. *Zeringue*, 846 F.3d at 789. While McKesson need not prove its asserted defenses, the defenses must not be frivolous. *Texas v. Kleinert*, 855 F.3d 305, 313 (5th Cir. 2017) ("'Colorable' here means plausible, not 'clearly sustainable'"). McKesson claims it has three such defenses: federal contractor defense, lack of standing and preemption. Several of McKesson's

asserted defenses have already been soundly rejected by Texas courts.[14] Moreover, Plaintiff's disclaimer has rendered any federal defenses McKesson may have moot. *Kelleher v. A.W. Chesterton Co.*, No. 15-CV-893-SMY-SCW, 2015 U.S. Dist. LEXIS 159783, at *11 (S.D. Ill. Nov. 23, 2015). Moot defenses are not colorable. Nevertheless, there is no good faith basis for any of these defenses even in the absence of Plaintiff's disclaimer.

### 1. No Federal Contractor Defense

The government contractor immunity defense is an extension of the immunity afforded to the federal government for the performance of discretionary actions pursuant to 28 U.S.C. § 2680(a). The typical assertion of the "federal officer" defense contains an explanation that the government directed the defendant to engage in a practice alleged to violate state law, such as a statement that the government directed a defendant to use a hazardous substance in a piece of military equipment, or that the government directed the defendant to perform a hazardous service that caused injury to others. *See, e.g., Kerstetter v. Pacific Sci. Co.*, C.A. No. C-96-512, 1999 U.S. Dist. LEXIS 22536 (S.D. Tex. May 26, 1999); *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (private entity compelled to produce and deliver herbicide Agent Orange to the American government pursuant to detailed regulations under threat of criminal sanction). Like the causal nexus requirement, "[t]he government contractor defense …, 'stripped to its essentials,' is fundamentally a claim that 'the Government made me do it.'" *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010) (quoting *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 632 (2nd Cir. 1990)). For the same reasons there is no causal nexus, McKesson's federal contractor defense is not plausible. McKesson is not asserting the federal contractor defense as an

---

[14] Distributors' 91a Motion to Dismiss was denied by the district court. The court of appeals affirmed the denial, and the Texas Supreme Court denied Distributors' writ. *See* Exhibits 2-5.

explanation for its violation of state law. McKesson, at most, has suggested that the federal government could, *theoretically*, have told it to ship orders that McKesson suspected were improper. McKesson has not claimed that the government ever did so, much less that the government ordered McKesson to ship orders to Angelina County that it suspected were improper. Rather, McKesson is hoping to confuse the matter by simply asserting it had a contract with the federal government. Such an assertion does not constitute a colorable federal defense.

### 2. *No Lack of Standing*

McKesson also claims it has a defense that Plaintiff lacks standing to pursue its claims. Again, this defense is not plausible or "colorable." McKesson and the other distributors have already unsuccessfully asserted that Texas County plaintiffs lack standing in the Texas MDL court.[15] The Texas Supreme Court has denied Distributors' writ of mandamus on the issue.[16]

However, in its Notice of Removal, McKesson now attempts a slightly different standing argument. Here, McKesson asserts that Plaintiff is "effectively" challenging McKesson's compliance with the federal Controlled Substances Act (CSA), which does not provide for a private right of action. But Plaintiff has not asserted a claim under the Controlled Substances Act; rather, it has asserted valid Texas state law claims. A defense to a claim that Plaintiff has not made cannot be a "colorable federal defense" entitling McKesson to invoke § 1442(a)(1) removal.

---

[15] Distributors, including McKesson, filed Tex. R. Civ. P. 91a motions for dismissal of baseless causes of action in sister cases in the Texas MDL. *See* Exhibit 2. The court denied the motions in their entirety; and the Court of Appeals has since affirmed. *See* Exhibits 3-4.
[16] *See* Exhibit 5, Supreme Court Orders, October 18, 2019.

### 3. No Preemption Defense

Finally, McKesson claims that it has a colorable federal preemption defense "to the extent that Plaintiff's claims conflict with McKesson's duties under the CSA and its implementing regulations." However, the CSA contains a provision that expressly permits state law claims:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together. 21 U.S.C. § 903.

Because it has not identified any potential conflict between the CSA and Texas law, McKesson has failed to assert a plausible federal preemption defense.

Moreover, courts have repeatedly rejected attempts by pharmaceutical companies to evade liability under state laws that may impose requirements more stringent than, or different (but not in conflict) with, those imposed by federal regulatory schemes. *See, e.g., Wyeth v. Levine*, 555 U.S. 555 (2009) (state law claims concerning labeling not preempted); *In re Opioid Litigation*, 2018 N.Y. Slip Op 31228(U) (Sup. Ct. Suffolk Co., N.Y. June 18, 2018) (state law claims arising from opioid crisis not preempted). McKesson's asserted preemption defense is not colorable.

## III. PLAINTIFF EXPRESSLY DISCLAIMED ANY THEORY OF RECOVERY ARISING UNDER FEDERAL LAW.

Federal courts have consistently granted motions to remand where the plaintiff disclaims the claims upon which the federal officer removal was based. *Dougherty v. A.O. Smith Corp.*, 2014 U.S. Dist. LEXIS 125302 (D.Del. Sept. 8, 2014). *See also Schulz v. Crane Co.*, No.2:13-CV-02370-KJM, 2014 U.S. Dist. LEXIS 9198, at *4-5 (E.D. Cal. Jan. 23, 2014) (waiver filed in federal court after removal); *Lara v. CBS Corp.*, No. CV 13-5569 ABC (MANx), 2013 U.S. Dist. LEXIS

18

128265, at *3-5 (C.D. Cal. Sep. 6, 2013) (remanding, holding that waiver contained in plaintiff's moving papers sufficient to waive federal claims).

Plaintiff has asserted Texas state law claims against McKesson based on McKesson's actions as a private corporation. *See* ECF No. 1-5, at pp. 397-523. In its First Amended Petition, Plaintiff states:

> 37. Plaintiff's claims for damages against any Defendant are exclusively for causes of action arising under Texas state law. Plaintiff expressly disclaims any claim for damages that would invoke federal subject matter jurisdiction. ECF No. 1-5 at p. 412, ¶ 37.

Plaintiff is "master" of its complaint, and McKesson cannot force Plaintiff to make claims it expressly disclaimed. *Uzee v. Huntington Ingalls Inc.*, No. 18-6856, 2018 U.S. Dist. LEXIS 164059, at *13 (E.D. La. 2018). Plaintiff disclaims any claims against McKesson for actions it may have taken pursuant to the PPV. "To deny remand of this case would affirm [McKesson's] right to assert a defense against a claim that does not exist." *Siders v. 20th Century Glove Corp.*, 2016 U.S. Dist. LEXIS 57210, at *29-31 (quoting *Kelleher v. A.W. Chesterton Co.*, 2015 U.S. Dist. LEXIS 159783, at *2).

Because Plaintiff disclaims any right to recovery for any actions undertaken by McKesson pursuant to the PPV, this Court should remand the case to State Court.

## IV.    THE MDL'S ORDER ON THE CASES BROUGHT BY THE INDIAN TRIBES IS INAPPOSITE.

McKesson relies heavily – almost exclusively – on the MDL Court's decision in *In re National Prescription Opiate Litig.*, 327 F.Supp.3d 1064 (N.D. Ohio 2018). That decision is distinguishable and holds no precedential value.

In *In re National Opiate Prescription Litig.*, the Cherokee Nation and Lac Courte Oreilles Band of Lake Superior Chippewa Indians (collectively, "the Tribes") filed suits against opioid distributors, manufacturers and pharmacies in state courts. McKesson removed both cases,

alleging as its grounds the federal officer removal statute, and the cases were transferred to the Federal MDL. The Tribes filed motions to remand, which were denied by United States District Judge Dan Aaron Polster.

Judge Polster emphasized that the claims presented by the Indian tribes were "a close case" and that it "*construe[d] McKesson's removal arguments very narrowly as applicable only to the specific facts of these two case*s." 327 F.Supp.3d at 1078 (emphasis added). For example, the MDL Court found the unusual circumstances pertaining to the provision of medical services and supplies to Native American populations persuasive, noting that McKesson "helps the VA (and Indian Health Service) carry out their duties of providing prescription drugs to the Cherokee Nation and the Lac Courte Oreilles Bank of Lake Superior Chippewa Indians." *Id.* at 1071. Broad segments of the Native American population, particularly those residing on tribal lands or otherwise active in tribal affairs, are entitled to healthcare services provided by IHS, a party to the PPV.

The same cannot be said for the general population of the County of Angelina. Unlike the Indian tribes or IHS, Plaintiff is not a party to the PPV, and it does not purchase any pharmaceuticals through the PPV. It is not a "federal customer" that McKesson contracted with through the PPV method. Rather, Plaintiff's injuries are derived from the broad distribution of opioids into the general population, with no particular relationship to the VA, IHS or any other specific federal agency.

Furthermore, the MDL Court has stated that it does not have jurisdiction over State Attorneys Generals bringing state-based claims in state court. *Id.* at 1078. But, if the MDL Court's reasoning is extended here as requested by McKesson, that is precisely what will happen—the sale by McKesson of any quantity of opioids through federal/PPV sales channels will render McKesson

a "government agent" so that it can and will remove *any* action arising out of the opioid crisis. Since the State Attorneys General's claims, like Plaintiff's, arise from the totality of McKesson's conduct, which likely includes sales to the federal government, they would be equally susceptible to removal of their cases despite the MDL court's statement to the contrary.

The MDL court also specifically noted and found significant that there were already 51 actions brought by Indian tribes pending before it, but that remand was only being sought in two of those actions. *Id.* at 1079. The other actions were either originated in federal court or removal was not contested. Conversely, Texas counties have universally filed suit in Texas state courts and have fought Defendants' repeated attempts at removal.

Furthermore, Plaintiff notes that, unlike in the present case, there is no indication that the Indian tribes disclaimed any right to recovery for actions compelled by the federal government pursuant to the PPV. Here, McKesson is attempting to assert a federal defense against a claim that Plaintiff disclaims. *Siders v. 20th Century Glove Corp.*, 2016 U.S. Dist. LEXIS 57210, at *29-31 (quoting *Kelleher v. A.W. Chesterton Co.*, 2015 U.S. Dist. LEXIS 159783, at *2). That was not the situation in the case considered by the MDL court.

Finally, Plaintiff contends that the MDL court erred in its decision. Specifically, the court looked at what the government may have had the power to control as opposed to what the government *actually did* exert control over. Only the latter is relevant to § 1442(a)(1) removals.

## V. FEDERAL JURISDICTION UNDER § 1442 WOULD BE CONTRARY TO THE STATUTE'S PURPOSE.

The Supreme Court has stated that the federal officer's removal statute's "basic purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting … within the scope of

their authority." *Watson*, 551 U.S. at 150. "The fact that a federal agency directs, supervises, and monitors a company's activities in considerable detail does not bring that company within § 1442(a)(1)'s scope and thereby permit removal." *Id.* Section 1442(a)(1) does not support removal to federal court in contexts where "[a] state-court suit brought against … a company is not likely to disable federal officials from taking necessary action designed to enforce federal law, … or deny a federal forum to an individual entitled to assert a federal immunity claim." *Id.* at 152.

"A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson*, 551 U.S. at 153. This is true even if the regulation is highly detailed. "A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion." *Id.* (internal citation omitted). McKesson's responsibilities under the PPV contract should not be conflated with its duties under state and federal law. Plaintiff's state law claims against McKesson do not affect federal officials' ability to enforce federal law. *Id.* at 2307-08.

Allowing Plaintiff to sue McKesson in state court for its failure to monitor for suspicious orders and prevent diversion would not interfere with the operations of the federal government or its ability to enforce federal law.

## CONCLUSION

McKesson has failed to demonstrate that removal was proper under 28 U.S.C. § 1442(a)(1). Specifically, McKesson has failed to establish that it acted pursuant to a federal officer's directions, that a causal nexus exists between its actions under color of federal office and Plaintiff's claims, and that it has a colorable federal defense. For these reasons, Plaintiff respectfully requests that this Court remand this case to the District Court of Harris County.

Dated: October 21, 2019

Respectfully submitted,
SIMON GREENSTONE PANATIER, P.C.

/s/ JoDee Neil_____
JoDee Neil
TX Bar No.  24039848
Jeffrey Simon
TX Bar No.  00788420
SIMON GREENSTONE PANATIER, P.C.
1201 Elm Street, Suite 3400
Dallas, Texas 75270
Telephone:  (214) 276-7680
Facsimile:   (214) 276-7699
jneil@sgptrial.com
jsimon@sgptrial.com

Attorneys for Plaintiff

## CERTIFICATE OF CONFERENCE

Plaintiffs' counsel conferred with Craig Smyser, Lead Counsel for McKesson, on October 16, 2019, and have made a reasonable effort to reach an agreement about Plaintiffs' Motion to Remand.  Counsel opposes the motion.

Therefore, this matter is presented to the Court for determination.

/s/ JoDee Neil_____
JoDee Neil

23

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document was electronically served on all parties of record through the Court's Electronic Case Filing system.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of October, 2019.

*/s/ JoDee Neil*_____
JoDee Neil