# Exhibit 14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| COUNTY OF ANGELINA, | |
| | |
| *Plaintiff,* | |
| | |
| v. | |
| | Civil Action No. 4:19-cv-03590 |
| PURDUE PHARMA, L.P.; PURDUE PHARMA INC.; PURDUE FREDERICK COMPANY; JOHNSON & JOHNSON; JANSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC; ALLERGAN PLC f/k/a ACTAVIS, PLC; ACTAVIS, LLC; ACTAVIS PHARMA, INC., f/k/a WATSON PHARMA, INC.; AMERISOURCEBERGEN CORPORATION; AMERISOURCEBERGEN DRUG CORPORATION; PAR PHARMACEUTICAL, INC. d/b/a PAR PHARMACEUTICAL; PAR PHARMACEUTICAL COMPANIES, INC.; MCKESSON CORPORATION; CARDINAL HEALTH, INC.; CVS HEALTH CORPORATION; WALGREEN CO.; WALGREENS BOOTS ALLIANCE, INC.; MORRIS & DICKSON CO., LLC; SPECGX LLC; AMNEAL PHARMACEUTICALS LLC; AMNEAL PHARMACEUTICALS, INC. f/k/a ATLAS HOLDINGS, INC.; WAL-MART INC. f/k/a WALMART STORES, INC.; DOES 1 - 100 | |
| | |
| *Defendants.* | |

## SUPPLEMENTAL NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1331, 1332(d), 1441, 1446, 1453, and 1367 with full reservation of defenses, including but not limited to its continuing objection to personal jurisdiction, Defendant CVS Health Corporation ("CVS") gives notice of the removal of this action originally filed in the District Court for Angelina County, Texas, 152nd Judicial District, and now pending in the Texas Opioid MDL in the 152nd Judicial District Court of Harris County, Texas, under Cause No. 2018-63587, to the United States District Court for the Southern District of Texas. In support of this supplemental notice of removal, CVS provides the required "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC* v. *Owens*, 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

## I.  NATURE OF REMOVED ACTION

1.     On August 23, 2019, Plaintiff, County of Angelina, Texas, filed an Amended Petition in the Texas Opioid MDL in the 152nd Judicial District of Harris County, Texas under cause number 2018-63587. Plaintiff brings claims for negligent and intentional creation of a public nuisance; common law fraud; negligence; gross negligence; claims under the Texas Controlled Substances Act; unjust enrichment; and civil conspiracy. Plaintiff seeks damages and equitable relief for alleged injuries to itself and its residents as a result of its residents' abuse of prescription opioid medications.

2

2.     This action is one of more than 2,000 prescription opioid lawsuits filed by government entities against manufacturers and distributors of prescription opioid medications. Plaintiffs in these cases allege that Defendants are liable for the economic and non-economic injuries suffered by resident doctors, health care payors, and opioid-addicted individuals, as well as for the costs incurred in addressing an epidemic of prescription opioid abuse.

3.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multidistrict Litigation in the Northern District of Ohio ("Opiate MDL") for all of these cases—cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017). To date, more than 2,000 actions have been transferred to the Opiate MDL.

4.     The allegations set forth in Plaintiff's Amended Petition resemble those asserted in nearly all of the complaints pending in the Opiate MDL. The bulk of the allegations in these complaints have been levied by cities and counties against the manufacturers for alleged deceptive marketing of prescription opioids from approximately the 1990s to present. In fact, the allegations are nearly identical to those asserted in *The County of Summit, Ohio, et. al.* v. *Purdue Pharma*

6985035.1

*L.P., et al.*, MDL No. 17-md-2804, Case No. 1:18-op-45090, a bellwether case that is currently being litigated in the Opiate MDL.

5.     The thrust of Plaintiff's Amended Petition is that "Defendants' misconduct—including the "Manufacturing Defendants" alleged marketing campaign of misinformation to physicians and patients, and "Distributor Defendants" disbursement and distribution of prescription opioids even though suspicion for diversionary purposes existed—caused damages to the County. According to Plaintiff, "[t]he Manufacturing Defendants and Distributor Defendants worked hand and glove to glut Angelina County with more opioids than could possibly be consumed for therapeutic purposes, resulting in an opioid prescription rate in Angelina County that remains well above the already insupportable national rate." Am. Pet. ¶ 24.

6.     Plaintiff also contends that the "Retailer Defendants . . . failed to properly report all evidence of diversion, thereby causing [improper] and invalid opioid distribution and related damages to Plaintiff." *Id.* at ¶ 265.

7.     Based on these allegations, Plaintiff alleges injuries to itself and its residents stemming from the abuse of prescription opioids by its residents. These include alleged damages in the form of expenses expended for medical insurance claims for opioids that were not medically necessary, as well as increased costs of social services, emergency services, health systems, law enforcement, and treatment facilities. *E.g., id. at* ¶ 346.

## II.    BASIS OF REMOVAL

### A.  FEDERAL QUESTION

8.    Removal jurisdiction exists under 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a substantial federal question under the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801, et seq.

9.    The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

10.    "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc.* v. *Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

11.    Even when state law creates the causes of action, a petition may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc.,* v. *Thompson*, 478 U.S. 804, 808-09 (1986) (quoting *Franchise Tax Bd.* v. *Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see Gully* v. *First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[1]

---

[1] CVS need not overcome any artificial presumptions against removal or in favor of

5

12.　"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

---

remand. In *Breuer* v. *Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior holdings in *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100 (1941), and its antecedents that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims* v. *Arrow Financial Services, LLC* held: "'Divestment of district court jurisdiction' should be found 'no more readily than 'divestment of state court jurisdiction,' given 'the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331.'" 565 U.S. 368, 379 (2012) (alterations omitted) (quoting *ErieNet, Inc.* v. *Velocity Net, Inc.*, 156 F.3d 513, 523 (3d Cir. 1998) (Alito, J., dissenting)).

6

13.    When a purported state law claim is premised on violations of duty contained in a federal statute, a federal court has jurisdiction over that claim. *See Bd. of Commissioners of Se. La. Flood Protection Authority-East* v. *Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017) (concluding that federal question jurisdiction exists because claims were premised on the failure to satisfy a standard of care established in by a federal statute). Federal jurisdiction is established if there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," because the absence of any such state source "means that the duty would have to be drawn from federal law." *Id.* at 723. A claim premised on the breach of such a duty "cannot be resolved without a determination whether . . . federal statutes create [such] a duty," and therefore necessarily raises a federal question. *Id.*; *see also Hughes* v. *Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (plaintiff's state law claims gave rise to federal question jurisdiction because the resolution of claims relied on the existence of a duty created by federal law).

14.    As set forth below, Plaintiff's tort claims meet all four requirements.

15.    Although Plaintiff ostensibly pleads some of its theories of recovery against CVS as state law claims, it bases the underlying theory of liability on CVS's alleged violations of federal law or alleged duties arising exclusively out of the CSA.[2]

---

[2] Specifically, Plaintiff cites to Texas Controlled Substances Act §§ 481.128(a)(1) and 481.071. Am. Pet. ¶ 379. Section 481.128(a)(1) provides that "[a] registrant or dispenser

7

16.    Specifically, Plaintiff contends that CVS and the other Distributor Defendants violated federal law, alleging that:

a. "Defendants . . . failed to monitor for, report, and prevent suspicious orders of opioids." Am. Pet. ¶ 397.

b. "Retailer Defendants . . . failed to properly report all evidence of diversion." *Id.* at ¶ 265.

c. "But for Defendants' . . . failure to report and halt suspicious orders . . . the number of opioids would not have tripled or quadrupled thereby directly giving rise to the opioid epidemic . . . ." *Id.* at ¶ 28.

d. "[E]ach Defendant acted directly against their commercial interests in not reporting the unlawful distribution practices of their competitors to the authorities, which they had a legal duty to do." *Id.* at ¶ 402.

e. "Distributor Defendants undertook the responsibility to prevent opioids from being dispensed or disbursed for diversionary purposes— with a multi-faceted system to monitor and prevent they developed long ago . . . and breached that duty." *Id.* at ¶ 321.

f. "Defendants knowingly . . . distributed . . . opioids even though each Defendant had reason to suspect that the opioids were being diverted, or suspicion for diversionary purposes." *Id.* at ¶ 383.

g. "Defendant . . . breached its duty by failing to track and halt the overwhelming supply of opioids into Angelina County despite its layers of oversight and commitment to provide a safe and secure channel to deliver medications, including opioids." *Id.* at ¶ 386.

h. "With regard to opioids, however, Distributor Defendants continuously evade their gatekeeping duties, including but not limited to, in Angelina County." *Id.* at ¶ 314.

---

commits an offense if the registrant or dispenser knowingly…distributes, delivers, administers or dispenses a controlled substance in violation of Sections 481.070-481.075," and section 481.071, in relevant part, provides that "a practitioner … may not prescribe, dispense, deliver, or administer a controlled substance or cause a controlled substance to be administered under the practitioner's direction and supervision except for a valid medical purpose and in the course of medical practice."

8

17. The source of the asserted legal duties to prevent diversion and to monitor, investigate, and report suspicious orders of controlled substances is the CSA and its implementing regulations. *See* 21 U.S.C. § 823(b), (e); *id.* § 832; *id.* § 842(c)(1)(B); 21 C.F.R. §§ 1301.71, .74(b).

18. The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. Specifically, the DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc.* v. *DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement").

19. Plaintiff's theories of liability against CVS and the other Defendants, as pleaded in the Petition, are thus predicated on allegations that they breached alleged duties under the CSA to implement effective controls against diversion and to detect and report "suspicious" orders for prescription opioids.

20. The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

9

21.    ***First***, Plaintiff's state law claims "necessarily raise" a federal question because the asserted right to relief under state law necessarily requires resolution of a federal question. *See Bd. of Commissioners*, 850 F.3d at 722-23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty of care contained in federal law); *Hughes*, 478 F. App'x at 170-71; *see also N. Carolina ex rel. N. Carolina Dep't of Admin.* v. *Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *NASDAQ OMX Grp., Inc.* v. *UBS Securities, LLC*, 770 F.3d 1010, 1021-23 (2d Cir. 2014) (a duty derived from the Exchange Act to operate a fair and orderly market underpinned plaintiff's contract and tort claims and therefore necessarily raised a federal question); *Virgin Islands Hous. Auth.* v. *Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

22.    Plaintiff's claims against CVS and the other Distributor/Retailer Defendants require Plaintiff to establish that Defendants breached duties established exclusively under federal law by failing to monitor, investigate, and

10

report shipments of otherwise lawful orders of controlled substances or by otherwise failing to maintain controls against diversion.

23.     Similarly, Plaintiff's Texas CSA claim entirely fails to cite any state law source for Distributor Defendants' alleged duties to "monitor" prescription opioid orders, halt suspicious orders, and prevent diversion. The Texas CSA merely requires distributors to comply with their reporting obligations under federal law. *See* Tex. Health & Safety Code §§ 481.067(a) ("A [registrant] . . . shall keep records and maintain inventories in compliance with recordkeeping and inventory requirements of federal law. . . ."); .0766(a) (requiring a distributor to report "the information that the distributor is required to report to [ARCOS] and the [DEA]."). Plaintiffs do not allege how either the state statute or its implementing regulations imposes independent duties relating to suspicious orders or diversion. Rather, it is federal regulation that requires distributors to develop a monitoring system to "provide effective controls and procedures to guard against theft and diversion of controlled substances." *See* 21 C.F.R. § 1301.71(a).

24.     While plaintiffs are masters of their petitions, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc.* v. *Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff relies on violations of federal law as the basis for its state-law claims.[3] Plaintiff moreover "may not defeat

---

[3] Furthermore, it is not necessary for federal jurisdiction that CVS establish that *all* of Plaintiff's counts against it raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue

removal by omitting to plead necessary federal questions in a complaint." *Hughes*, 478 F. App'x at 171 (quoting *Franchise Tax Bd.*, 463 U.S. at 22).

25. In sum, despite Plaintiff's attempt to artfully avoid federal jurisdiction, the Petition necessarily raises a federal issue—namely, whether the Distributor Defendants violated the CSA.

26. **Second**, this federal issue is "actually disputed." As shown by litigation record in the Opiate MDL, the parties disagree sharply about the existence and scope of alleged duties arising under the CSA and whether the Defendants violated any duties arising under the CSA. Indeed, in all prescription opioid litigation, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

27. **Third**, this federal question is "substantial."[4] "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a

---

of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997). Because the Court has original jurisdiction over at least some counts against CVS, it has supplemental jurisdiction over Plaintiff's remaining counts against CVS, and other Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a); *see Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 283 (5th Cir. 1994).

[4] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the underlying merits of Plaintiff's claims and has no bearing on the strength of those claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

uniform body of [federal] law.'" *Id.* at 260-61 (quoting *Grable*, 545 U.S. at 315; *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.* 489 U.S. 141, 162 (1989)).   As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312; *see also Willis of Tex., Inc.* v. *Stevenson*, No. H-09-cv- 0404, 2009 WL 7809247, at *5 (S.D. Tex. May 26, 2009) ("The Fifth Circuit has held that a claim is substantial enough to support federal question jurisdiction if the issue raised is not wholly insubstantial, obviously frivolous, plainly insubstantial, or obviously without merit.").

28.    It is vital that the federal courts address the duties owed under the CSA with one voice. Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong., 2nd Sess. (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

29.    The text of the CSA makes clear that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of

13

the interstate incidents of such traffic." 21 U.S.C. § 801. Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa* v. *Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

30.     Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and convert[] a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g., Ranck* v. *Mt. Hood Cable Reg. Comm'n,* No. 3:16-cv-02409-AA, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

31.     Removal is especially appropriate here because Plaintiff's action is one of thousands of similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio. Indeed, Plaintiff claims that both the "opioid epidemic" and Defendants' alleged misconduct occurred on a national scale. *E.g.* Am. Pet. ¶ 177. And Plaintiff relies on enforcement actions and settlements in

14

jurisdictions outside of Texas to establish wrongful conduct. *E.g., id.* at ¶¶ 221, 295, 316. The MDL bellwether proceedings have substantially advanced and are set for trial in October 2019.

32.    ***Fourth***, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA— applies them. Federal jurisdiction is therefore properly exercised under § 1331 to resolve "disputed issues of federal law" under the CSA.

33.    In sum, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also See Bd. of Commissioners*, 850 F.3d at 722-23; *Hughes*, 478 F. App'x at 170-71; *Gilmore* v. *Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (quoting *Nicodemus* v. *Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006))).

15

34. To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## B. THE CLASS ACTION FAIRNESS ACT ("CAFA")

35. Removal jurisdiction also exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b), because: (1) litigation of this case in federal court raises factual and legal issues of national importance that would further CAFA's overall purpose; and (2) each of CAFA's statutory requirements is satisfied. This Court must assess jurisdiction under CAFA at the time of removal. 28 U.S.C. § 1332(d); *see Louisiana* v. *American Nat. Property Cas. Co.*, 746 F.3d 633 (5th Cir. 2014) ("Jurisdictional facts are determined at the time of removal, not by subsequent events.").

### 1. This Is an Interstate Case of National Importance

37. First, this lawsuit is precisely the type of case that Congress intended to be litigated in federal court. Through CAFA, Congress expressed its intent "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34; *see also Standard Fire Ins. Co.* v. *Knowles*, 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to "ensur[e] Federal court consideration of interstate cases of national importance.") (citations and quotes omitted); *accord Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554.

16

38.     This case is one of hundreds of cases filed across the country in which government entities have sued prescription opioid manufacturers, distributors, and others for harms arising from the abuse of these drugs. The Opiate MDL alone has more than 2,000 cases that are part of a national opioid "crisis" and epidemic allegedly besieging certain counties in Texas and the rest of the country. Plaintiff has scripted its Petition from complaints in cases already being litigated in the Opiate MDL. For example, Plaintiff asserts that its claims touch upon issues of national importance. *See, e.g.,* Am. Pet. ¶ 306 ("[T]he opioid epidemic could strike as many as 650,000 Americans over the next decade"); *id.* at ¶ 1 ("Americans 'consume 85% of all the opioids in the world . . . .'") (quoting Substance Abuse and Mental Health Services Administration, National Survey on Drug Use and Health, 2014); *id.* at ¶ 4 ("Almost 2 million Americans were addicted to opioids in 2014."); *id.* at ¶ 7 ("[A]ccidental drug overdose deaths, of which reportedly at least two-thirds are opioid overdoses, are the leading cause of death for Americans under the age of 50."); *id.* at ¶ 8 ("The economic burden caused by opioid abuse in the United States is at least $78.5 billion, including lost productivity and increased social services . . . ."); *id.* at ¶ 1 ("On October 26, 2017, President Donald Trump 'declared a nationwide public health emergency to combat the opioid crisis.'") (quoting Dan Merica, *What Trump's Opioid Announcement Means – and Doesn't Mean*, CNN, Oct. 26, 2017, *available at* http://www.cnn.com/2017/10/26/politics/national-health-emergency-national-disaster/index.html.).

39.     As Plaintiff avers, the issues in this case implicate factual and legal issues that span well beyond State lines and, as a result, should be litigated in federal court along with the other lawsuits in the Opiate MDL. In denying remand in another opioid case in the diversity context, the U.S. District Court for the Southern District of West Virginia observed the following:

> Here, where the opioid epidemic is pervasive and egregious, there is at least a possibility of prejudice to the defendants at the hands of a jury drawn exclusively from the very county that is the plaintiff in this suit. A federal jury casts a wider net and is drawn from a division that comprises several counties. All may have an opioid problem, but not one that is specific to the plaintiff county.

*City of Huntington* v. *AmerisourceBergen Drug Corp.*, 2017 WL 3317300, at *2 (S.D.W. Va. Aug. 3, 2017).

40.     In short, jurisdiction in this matter is consistent with and promotes the purpose of CAFA.

### 2.  CAFA's Statutory Requirements Are Met

41.     To be removed under CAFA, this suit must qualify as a class action, there must be 100 members of the proposed class, the amount in controversy must exceed $5 million, and there must be minimum diversity between the parties. 28 U.S.C. § 1332(d); 28 U.S.C. § 1453. All these requirements are met here.

### a.  The members of the class are Plaintiff's residents

42.     The omission of a class definition does not prevent removal under CAFA. CAFA applies here because this case essentially is a class action.  While

18

Plaintiff has not alleged a putative class action on the face of its Complaint, in reality, this lawsuit is "in substance a class action." *Addison Automatics, Inc.* v. *Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013); *see also Badeaux* v. *Goodell*, 358 F. Supp. 3d 562 (E.D. La., Jan. 31, 2019) ("Plaintiffs' state court petition unmistakably resembles a class action despite its omission of the words 'class action' . . . .").

43.     CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); *see also Robertson* v. *Exxon Mobil Corp.*, 814 F.3d 236, 239 (5th Cir. 2015) (recognizing that CAFA jurisdiction exists when "there is minimal diversity and the *aggregate* amount in controversy exceeds $5 million") (emphasis added). CAFA "calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name." *West Virginia ex rel. McGraw* v. *Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010) (holding defendant properly removed action brought by the State of West Virginia against Comcast under CAFA because subscribers were the real parties in interest); *see also Bullard* v. *Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("[L]itigation counts as a class action if it is either filed as a representative suit or becomes a 'mass action' at any time.").

19

44. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Consistent with Congress's overall objective in favoring federal diversity jurisdiction over class actions with interstate ramifications, "the definition of 'class action' is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labelled 'class actions' . . . . *Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions*." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34 (emphasis added).

45. Thus, where a lawsuit "resembl[es] a class action" by asserting claims both individually and on behalf of others, CAFA removal has been found proper. *Badeaux*, 358 F. Supp. 3d at 567. Courts have refused to "prioritize a complaint's use of magic words over its factual allegations," and have held that CAFA jurisdiction exists even where the complaint "does not seek class certification" or "omits reference to" a state statute "analogous to Rule 23." *Williams* v. *Employers Mut. Cas. Co.*, 845 F.3d 891, 900–01 (8th Cir. 2017); *see also Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554 ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"); *In re Whole Foods Market, Inc. Greek Yogurt Marketing and Sales Practice Litigation*, 2015 WL 5737692, at *7 (W.D. Tex., Sept. 30, 2015)

20

("Indeed, contrary to the general rule strictly construing the removal statute against jurisdiction . . . no 'antiremoval presumption attends cases invoking CAFA . . . .'") (quoting *Dart Cherokee*, 135 S. Ct. at 554); *Badeaux*, 358 F. Supp. 3d at 567 ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.").

46.     Here, Plaintiff is acting as a representative for a class of residents who were allegedly harmed, either directly or indirectly, by Defendants' purported misconduct. Plaintiff alleges that Defendants have inflicted both economic and non-economic injuries on its individual residents. *See, e.g.,* Am. Pet. ¶ 371 ("Angelina County and its residents are therefore entitled to actual and punitive damages."); *id.* at ¶ 376 ("Each Defendants' actions and omissions as described herein, singularly or in combination with each other, were malicious resulting in damages and injuries to Angelina County and its residents."); *id.* at ¶ 377 ("At every stage, Defendants knew . . . that their conduct would create an unreasonable risk of physical harm to others, including Angelina county and its residents . . . ."); *id.* at ¶ 381 ("Defendants' failure to rein in the endless supply of opioids was reasonably calculated to deceive practitioners treating Angelina County residents into prescribing opioids without any valid medical purpose . . . ."); *id.* at ¶ 390 ("Defendants have profited have and benefited from opioid purchases made by Angelina County and its residents."); *id.* at ¶ 391 ("When Angelina County and its residents purchased opioids, they expected that Defendants had provided necessary

21

and accurate information regarding those risks."); *id.* at ¶ 20 (alleging a misleading marketing campaign launched to target "Angelina County physicians and residents").

47.    In addition to Plaintiff's attempt to recover for its residents' alleged injuries, Plaintiff seeks to recover for its own injuries. But Plaintiff's alleged injuries derive from its residents' injuries and cannot be separated from those injuries. Plaintiff seeks to recover costs in providing law enforcement, medical, and social services for opioid addiction, emergencies, and overdose deaths, all of which stem from its residents' alleged opioid abuse. *E.g., id.* ¶¶ 29, 34, 293. Any damages would be a calculation of aggregate damages resulting from individual instances of opioid addiction and death.

### b.    CAFA's 100-member requirement is met

48.    The Complaint satisfies CAFA's 100-member requirement because the putative class consists of thousands of residents and at least hundreds alleged to be injured. *See* 28 U.S.C. § 1332(d)(5)(B). In determining whether this requirement is met, United States District Courts in Texas have considered the number of people who may have been potentially affected by the defendant's alleged misconduct, rather than the number of people who have been actually affected by such conduct. *See, e.g., Moore* v. *Payson Petroleum Grayson, LLC*, 2018 WL 3845193, *4 (N.D. Tex., Aug. 13, 2018) ("To show numerosity, a plaintiff must demonstrate 'some evidence' or a 'reasonable estimate' of the number of purported class members . . . ."); *Stephenson* v. *Standard Ins. Co.*, 2013 WL 3146977, at *7 (W.D.

22

Tex., June, 18, 2013) (finding that a Plaintiffs allegation in her petition "that the proposed class members 'number in the tens to hundreds of thousands' and that the members are so numerous that joiner would be impracticable" was sufficient to satisfy CAFA's 100-member requirement).

49. According to Plaintiff, "[i]n 2015, Texas 'had the second highest total healthcare costs from opioid abuse in the nation at $1.96 billion.'" Am. Pet. ¶ 4 (quoting Kerry Craig, *Opioid Addiction Results in one Woman's Daily Struggle*, Sulphur Springs News-Telegram, Oct. 7, 2017, *available at* https://www.ssnewstelegram.com/news/opioid-addiction-results-in-one-woman-s-daily-struggle/article_bded4eoa-ab80-11e7-a252-d3f304e26628.html.). The Texas Legislature has found deaths from opioids constitute a public health crisis. *Id.* In 2015, Texas had the second highest total healthcare costs from opioid abuse in the nation at $1.96 billion. *Id.* Consequently, the potential number of people who have been or may be affected thus well exceeds the 100-member requirement under CAFA.

### c. CAFA's minimal diversity requirements are met

50. There is minimal diversity between Plaintiff and Defendant. District courts have original jurisdiction of "any civil action in which the controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA eliminates the requirement of complete diversity. Instead, CAFA requires only minimal diversity—meaning that

the parties are diverse if the plaintiff's citizenship differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

51.     For purposes of diversity jurisdiction, a political subdivision is a citizen of the state. *See Moor* v. *Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State . . . is a citizen of the State for diversity purposes."). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For purposes of CAFA, the citizenship of any unincorporated association, such as limited partnerships and limited liability companies, is also determined by the entity's State of incorporation and principal place of business. 28 U.S.C. § 1332(d)(10).

52.     Applying these principles, there is minimal diversity between the parties. Plaintiff Angelina County is a political subdivision of Texas. And many of the Defendants are citizens of States other than Texas. Am. Pet. ¶¶ 26-48. To name a few:

      a.    Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. are both corporations organized under the laws of Delaware and both maintain their principal places of business in Malvern, Pennsylvania. They are, accordingly, citizens of Delaware and Pennsylvania.

      b.    Defendant Purdue Pharma L.P. is a limited partnership organized under the laws of Delaware and maintains its principal place of business in Stamford, Connecticut. It is, accordingly, a citizen of Delaware and Connecticut.

c.  Defendant Actavis LLC is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey. Actavis LLC's sole member is Actavis US Holding LLC, a limited liability company organized under the laws of Delaware. Actavis US Holding LLC's sole member is Watson Laboratories, Inc., a Nevada corporation with its principal place of business in Parsippany, New Jersey. Accordingly, Actavis LLC is a citizen of New Jersey and Nevada.

d.  Walgreens Co. is a corporation organized under the laws of Illinois with its principal place of business in Deerfield, Illinois. Accordingly, it is a citizen of Illinois.

53.  Because there is diversity of citizenship between at least one plaintiff and at least one defendant, this action meets the minimal diversity requirement under Section 1332(d)(2)(A).

### d.  The amount in controversy exceeds the jurisdictional limit

54.  The amount in controversy exceeds the jurisdictional threshold under CAFA. When a plaintiff alleges no specific amount of damages, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554; *see also In re Whole Foods Market, Inc. Greek Yogurt Marketing and Sales Practice Litigation*, 2015 WL 5737692, at *7 ("The Supreme Court held that a removing 'defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold' and does not require extrinsic evidence.") (quoting *Dart Cherokee Operating Basin Co., LLC*, 135

6985035.1

S. Ct. at 554). And, in making such determinations, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

55.     Here, Plaintiff alleges injuries resulting from opioid abuse and addiction that has allegedly afflicted Plaintiff and its residents, with allegations extending as far back as the 1990s. *See, e.g.*, Am. Pet. ¶ 2 ("In 1997, each person in the United States, on average, consumed 96 mg morphine equivalents."). Given the extent of the alleged injuries and time period, the alleged amount in controversy easily exceeds $5 million.[5]

## III.     COMPLIANCE WITH PROCEDURAL REQUIREMENTS

56.     CVS has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446, and this Court's Local Rules.

57.     CVS is filing this Notice of Removal in the United States District Court for the Southern District of Texas, because the state court in which the action is pending, the 152nd Judicial District Court, in Harris County, is within this federal judicial district. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

58.     Plaintiff has not yet served CVS with the Complaint. Therefore, this removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 356 (1999).

---

[5] The amount in controversy represents only what Plaintiff requests at this stage in the proceeding. This is not an admission that Plaintiff is entitled to recover this amount. *See In re Whole Foods Market, Inc. Greek Yogurt Marketing and Sales Practice Litigation*, 2015 WL 5737692, at *7 ("A removing defendant need not confess liability in order to show that the controversy exceeds the threshold.") (quoting *Berniard* v. *Dow Chemical Company*, 481 Fed. Appx. 859, 862 (5th Cir. 2010)).

59. Under CAFA, "[a] class action may be removed . . . by any defendant *without* the consent of all defendants." 28 U.S.C. § 1453(b) (emphasis added).

60. In accordance with 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served in this action must join in or consent to this removal under 28 U.S.C. § 1331. To date, only Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company (collectively "Purdue")[6]; Endo Health Solutions Inc., Endo Pharmaceuticals Inc. (collectively "Endo"); Johnson & Johnson; Jansen Pharmaceuticals, Inc.; Orth-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc. (collectively "Janssen"); Teva Pharmaceuticals USA, Inc.; Teva Pharmaceuticals Industries Ltd. (collectively "Teva");[7] and Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; (collectively "Actavis") have been properly served. Purdue, Endo, Janssen, Teva, and Actavis consent to this removal.

61. The remaining identified Defendants have not been properly served, and thus their consent to removal is not required. Nevertheless, out of an

---

[6] On September 15, 2019, Purdue Pharma L.P. and its affiliated debtors filed voluntary petitions for relief under chapter 11 of United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York and is docketed as *In re Purdue Pharma L.P.*, No. 19-23649. Also, on September 18, 2019, Purdue Pharma L.P. and its affiliated debtors filed a motion for preliminary injunction seeking an order staying certain active cases to the extent not already stayed by the automatic stay. Plaintiff moved to sever the Purdue entities from its case, and on September 20, 2019, the Court granted that motion and the Purdue entities were severed into a separate case, Cause No. 2018-87846. Accordingly, the consent of the Purdue entities to this removal is not required, however, to otherwise preserve and without waiving any rights, and out of an abundance of caution, Purdue consents to removal.

[7] Teva Pharmaceutical Industries Ltd. ("Teva Ltd") is a foreign company and it is not subject to personal jurisdiction in the United States. Teva Ltd. expressly reserves all defenses, including those related to personal jurisdiction and service of process.

abundance of caution, Watson Laboratories, Inc.;[8] Actavis LLC; and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Amerisourcebergen Drug Corporation (ABDC); Abbott Laboratories, Walmart Inc.[9]; Walgreen Co., and Walgreens Boots Alliance, Inc.; Par Pharmaceutical, Inc. d/b/a Par Pharmaceutical; Par Pharmaceutical Companies; McKesson Corporation, Cardinal Health, Inc.; and SpecGX LLC consent to removal. The Defendants listed in this paragraph expressly reserve, and do not waive, all defenses related to service of process and personal jurisdiction.

62.    After filing this Notice, in accordance with 28 U.S.C. § 1446(d), CVS will serve a copy of this Notice upon the Plaintiff and will file a copy of the Notice with the Clerk of the 152d Judicial District Court, in Harris County, Texas.

63.    Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of any Defendant's right to assert any and all defenses or objections to the Complaint, including lack of personal jurisdiction. If there are any questions that arise as to the propriety of removal of this action, Defendant CVS respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal, without waiver of its objection to personal jurisdiction.

---

[8] Watson Laboratories, Inc. is not listed in the Complaint's caption but is referenced in the body of the Complaint. Watson Laboratories, Inc. contests and does not concede that is a party to this action and consents to removal only out of an abundance of caution.

[9] Plaintiff named Wal-Mart Stores, Inc. as a defendant to this action; as of February 1, 2018, Wal-Mart Stores, Inc. became known as Walmart Inc.

## IV.    CONCLUSION

WHEREFORE, CVS removes this action to this Court for further proceedings according to law.

Dated:   October 14, 2019

Respectfully submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

By:  */s/ Mark E. Torian*
**MARK E. TORIAN**
**Attorney in Charge**
Texas Bar No. 24028051
mtorian@bradley.com
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 939-8700 (Telephone)
(214) 939-8787 (Facsimile)

Conor B. O'Croinin*
**ZUCKERMAN SPAEDER LLP**
100 East Pratt Street, Suite 2440
Baltimore, MD 21202–1031
(410) 949–1160
cocroinin@zuckerman.com

**ATTORNEYS FOR DEFENDANT**
**CVS PHARMACY, INC.**

29

* denotes counsel who will seek pro hac vice admission

**Consent to Removal:**
By: */s/Jeffrey R. Parsons*
Jeffrey R. Parsons
Texas Bar No. 15547200
jparsons@pmmlaw.com
Roger L. McCleary
Texas Bar No. 13393700
rmcleary@pmmlaw.com
James C. Burnett
Texas Bar No. 24094025
jburnett@pmmlaw.com
**PARSONS MCENTIRE MCCLEARY PLLC**
One Riverway, Suite 1800
Houston, Texas 77056
(713) 960-7315

Rocky C. Tsai*
rocky.tsai@ropesgray.com
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, California 94111
(415) 315-6300

Erin R. Macgowan*
erin.macgowan@ropesgray.com
Mark S. Gaioni*
mark.gaioni@ropesgray.com
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
(617) 951-7000

**ATTORNEYS FOR DEFENDANT SPECGX LLC**

* denotes counsel who will seek pro hac vice admission

30

6985035.1

**Consent to Removal:**
By: /s/ Nancy l. Patterson
Nancy L. Patterson
Texas Bar No. 15603520
S.D. Tex. No.
nancy.patterson@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 890-5000
Facsimile: (713) 890-5001

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5603
steven.reed@morganlewis.com

Brian M. Ercole*
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131
Telephone: (305) 415-3416
brian.ercole@morganlewis.com

*denotes national counsel who will seek pro hac vice admission

**ATTORNEYS FOR ACTAVIS LLC, ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC., AND WATSON LABORATORIES, INC.**

**Consent to Removal:**
By: /s/ Elizabeth W. Scofield
Elizabeth W. Scofield (Attorney-in-charge)
Texas Bar No.: 24079555
SDOT AD ID# 2227083
**JONES DAY**
717 Texas, Suite 3300
Houston, TX 77002-2712
Telephone: (832) 239-3789
Facsimile: (832) 239-3600
Email: escofield@jonesday.com

31

Christopher Lovrien*
Sarah Conway*
**JONES DAY**
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 243-2567
Facsimile: (213) 243-2539
Email: cjlovrien@jonesday.com
Email: sgconway@jonesday.com

*denotes national counsel who will seek pro hac vice admission*

**ATTORNEYS FOR WALMART INC.**

**Consent to Removal:**
By: */s/ Hannah D. Sibiski*
Hannah D. Sibiski
Texas State Bar No. 24041373
S.D. Texas No. 559957
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street | Suite 4000
Houston, TX 77002-2755
(713) 576-2416
hannah.sibiski@arnoldporter.com

John D. Lombardo*
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
john.lombardo@arnoldporter.com

*denotes national counsel who will seek pro hac vice admission*

**ATTORNEYS FOR ENDO HEALTH SOLUTIONS INC., ENDO PHARMACEUTICALS, INC; PAR PHARMACEUTICAL, INC. d/b/a PAR PHARMACEUTICAL; PAR PHARMACEUTICAL COMPANIES, INC.**

32

**Consent to Removal:**
By: */s/ Stan Perry*
Stan Perry
State Bar No. 15799920
sperry@reedsmith.com
Curtis Waldo
State Bar No. 24090452
Michael H. Bernick
State Bar No. 24078227
mbernick@reedsmith.com
Mary M. Balaster
State Bar No. 24084054
mbalaster@reedsmith.com
cwaldo@reedsmith.com
REED SMITH LLP
811 Main Street, Suite 1700
Houston, Texas 77002-6110
Telephone:     713.469.3800
Facsimile:     713.469.3899

**ATTORNEYS FOR AMERISOURCEBERGEN DRUG CORPORATION**

**Consent to Removal:**
By: */s/ Lindsey B. Cohan*
Lindsey B. Cohan
S.D. Texas Bar No. 2319985
DECHERT LLP
500 W. 6th Street, Suite 2010
Austin, Texas 78701

**ATTORNEYS FOR PURDUE PHARMA L.P., PHARMA INC., AND THE PURDUE FREDERICK COMPANY**

**Consent to Removal:**

By: /s/ Michael W. Mengis

Michael W. Mengis
mmengis@bakerlaw.com
State Bar No. 13941040
Matt R. Raley
mraley@bakerlaw.com
State Bar No. 24051224
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, Texas 77002
Phone: 713.751.1600
Fax: 713.751.1717

Enu Mainigi*
emainigi@wc.com
F. Lane Heard*
lheard@wc.com
Steven M. Pyser*
spyser@wc.com
Ashley W. Hardin*
ahardin@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone: 202.434.5000
Fax: 202.434.5029

*denotes national counsel who will seek pro hac vice admission*

**ATTORNEYS FOR DEFENDANTS CARDINAL HEALTH, INC. AND CARDINAL HEALTH 110, LLC**

6985035.1

**Consent to Removal:**

By: */s/ Craig Smyser*
Craig Smyser (SBN 18777575)
Tyler G. Doyle (SBN 24072075)
David Isaak (SBN 24012887)
Razvan Ungureanu (SBN 24085630)
Kristin Adler (SBN 793233)
Michelle S. Stratton (SBN 24085606)
Crystal Robles (SBN 24083754)
SMYSER KAPLAN & VESELKA L.L.P.
717 Texas, Suite 2800
Houston, TX 77002
Phone: 713-221-2300
Fax: 713-221-2320
csmyser@skv.com
tydoyle@skv.com
disaak@skv.com
razvan@skv.com
kadler@skv.com
mstratton@skv.com
crobles@skv.com

## Counsel for McKesson Corporation

**Consent to Removal:**
By: */s/ Joel C. Simon*
Joel C. Simon
State Bar No. 24046850
Joel.simon@trialattorneytx.com
Stephen M. Fernelius
State Bar No. 06934340
Steve.fernelius@trialattorneytx.com
1221 McKinney, Suite 3200
Houston, Texas 77010
Telephone: 719-654-1200
Telecopier: 713-654-4039

Lester C. Houtz*
Alex J. Harris*
BARTLIT BECK LLP
1801 Wewatta Street
Denver, CO 80202
Tel: (303) 592-3177
Fax: (303) 592-3140
les.houtz@bartlitbeck.com
alex.harris@bartlitbeck.com

*denotes national counsel who will seek pro hac vice admission

**ATTORNEYS FOR WALGREENS BOOTS ALLIANCE, INC.**

**Consent to Removal:**
By: *s/ Stephen E. McConnico*
Stephen E. McConnico
Asher B. Griffin
John W. Ellis
SCOTT DOUGLAS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300
(512) 495-6399 (fax)
smcconnico@scottdoug.com
agriffin@scottdoug.com
jellis@scottdoug.com

Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000
clifland@omm.com

*denotes national counsel who will seek pro hac vice admission

36

**ATTORNEYS FOR JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. N/K/A JANSSEN PHARMACEUTICALS, INC.; AND JANSSEN PHARMACEUTICA, INC. N/K/A JANSSEN PHARMACEUTICALS, INC.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Notice of Removal was served on the parties below on October 14, 2019, via electric mail, pursuant to the Federal Rules of Civil Procedure.

*/s/ Mark E. Torian*
Mark E. Torian

6985035.1